UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OLDE MONMOUTH STOCK
TRANSFER CO., INC.,
                          Plaintiff,

            vs.                                        07 CV 0990 (CSH)

DEPOSITORY TRUST & CLEARING
CORPORATION and DEPOSITORY
TRUST COMPANY,

                          Defendants.
------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER


PROSKAUER ROSE LLP
Gregg M. Mashberg (GM-4022)
Karen D. Coombs (KC-3538)
Dolores DiBella (awaiting admission)
1585 Broadway
New York, NY 10036
(212) 969-3000
Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................4

ARGUMENT ...........................................................................................................4

I.    PLAINTIFF CANNOT MEET THE HIGH BURDEN REQUIRED FOR ITS REQUESTED AFFIRMATIVE, ULTIMATE, INJUNCTIVE RELIEF ...........................................................................................................4

II.   PLAINTIFF HAS NOT DEMONSTRATED HARM THAT IS EITHER IMMINENT OR IRREPARABLE ...............................................................6

III.  PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS ........................................................................................................8

    A.    The Sherman Act Claims Do Not Allege the Sort of Conduct That Is Actionable Under Antitrust Law .................................................................9

        1.    OMST's Admission that DTC Is Not A Competitor, Its Failure to Recognize That DTC Can Choose Those With Whom It Does Business and Its Inability to Demonstrate Antitrust Injury Are All Fatal to Its Antitrust Claims .........................9

        2.    OMST's Attempted Monopolization Claim Pursuant to Section 2 of the Sherman Act Is Further Deficient for Its Failure to Demonstrate a "Dangerous Probability of Success" .........14

        3.    OMST's Claim Under Section 1 of the Sherman Act is Further Deficient Because No Agreement Is Alleged .........15

    B.    The Supplemental State Law Antitrust Claims Are Similarly Defective .........16

    C.    OMST's Supplemental State Common Law Claim Fails As A Matter of Law .........17

CONCLUSION .........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Pages(s)

*A.I.B. Express, Inc. v. FedEx Corp.,*
358 F. Supp. 2d 239 (S.D.N.Y. 2004)...................................................................11

*Abcor Corp. v. AM Inter'l, Inc.,*
916 F.2d 924 (4th Cir. 1990) .............................................................................9

*Ahmad v. Long Island Univ.,*
18 F. Supp. 2d 245 (E.D.N.Y. 1998) ...................................................................5

*Alpha Shoe Serv. v. Fleming Cos.,*
849 F.2d 352 (8th Cir. 1988) ...........................................................................11

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
909 F. Supp. 162 (S.D.N.Y. 1995) ...................................................................11

*Berlent v. Focus Features, LLC,*
2006 U.S. Dist. LEXIS 41095 (S.D.N.Y. June 8, 2006)...........................................5, 7

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993)........................................................................................9

*Brunson Commc'ns v. Arbitron, Inc.,*
239 F. Supp. 2d 550 (E.D. Pa. 2002) .................................................................16

*Brunswick Corp. v. Riegel Textile Corp.,*
752 F.2d 261 (7th Cir. 1984) ...........................................................................9

*Carvel Corp. v. Noonan,*
3 N.Y.3d 182 (2004) .................................................................................18, 19

*CCBN.Com, Inc. v. Tomson Fin., Inc.,*
270 F. Supp. 2d 146 (D. Mass. 2003) ................................................................14

*Collagenex Pharms., Inc. v. IVAX Corp.,*
375 F. Supp. 2d 120 (E.D.N.Y. 2005) .................................................................7

*Cont'l Orthopedic Appliances v. Health Ins. Plan,*
956 F. Supp. 367 (E.D.N.Y. 1997) ...................................................................11

*Datapak Assocs. v. Hoynash,*

2004 U.S. Dist. LEXIS 20408 (S.D.N.Y. Oct. 8, 2004) ...............................................7

*Doe v. Nat'l Bd. of Podiatric Med. Exam'rs,*
    2003 U.S. Dist. LEXIS 10281 (S.D.N.Y. June 19, 2003)................................5

*Fisher v. Berkeley,*
    475 U.S. 260 (1986)...............................................................................................15

*Floors-N-More, Inc. v. Freight Liquidators,*
    142 F. Supp. 2d 496 (S.D.N.Y. 2001)..................................................................13

*Ford Piano Supply Co. v. Steinway & Sons,*
    1988 WL 3488 (S.D.N.Y. Jan. 13, 1988) ............................................................13

*Forest City Daly Hous., Inc. v. Town of N. Hempstead,*
    175 F.3d 144 (2d Cir. 1999)................................................................................5, 6

*George Haug Co. v. Rolls Royce Motor Cars,*
    148 F.3d 136 (2d Cir. 1998)..................................................................................13

*Gianna Enters. v. Miss World (Jersey,) Ltd.,*
    551 F. Supp. 1348 (S.D.N.Y. 1982)......................................................................10

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,*
    50 N.Y.2d 183 (1980) ............................................................................................18

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.,*
    879 F.2d 1005 (2d Cir. 1989)................................................................................14

*Hanson Trust PLC v. ML SCM Acquisition, Inc.,*
    781 F.2d 264 (2d Cir. 1986)................................................................................4,5

*Hickerson v. City of New York,*
    146 F.3d 99 (2d Cir. 1998).....................................................................................5

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.,*
    659 A.2d 904 (N.J. App. Div.), *certif. denied,* 660 A.2d 904 (1995) .........................18

*Intergraph Corp. v. Intel Corp.,*
    195 F.3d 1346 (Fed. Cir. 1999)............................................................................12

*Line Commc'ns Corp. v. Reppert,*
    265 F. Supp. 2d 353 (S.D.N.Y. 2003)................................................................5, 6

*Litho Prestige, Division of Unimedia Group, Inc. v. News Am. Publ'g, Inc.,*
    652 F. Supp. 804 (S.D.N.Y. 1986) ........................................................................6

ii

*Maas v. Cornell Univ.*,
    245 A.D.2d 728 (3d Dep't 1997) ............................................................................18

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
    838 F.2d 360 (9th Cir. 1988) ..............................................................................9

*Patel v. Soriano*,
    848 A.2d 803 (N.J. App. Div.) , *certif. denied*, 861 A.2d 845 (2004) .................16, 17

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
    563 A.2d 31 (N.J. 1989)................................................................................18, 19

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*,
    23 A.D.3d 162 (1st Dep't 2005) ............................................................................18

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)....................................................................................13

*Spencer Trask Software & Information Servs., LLC v. RPost Inter'l, Ltd.*, 190 F.
    Supp. 2d 577 (S.D.N.Y. 2002)..........................................................................5

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)....................................................................................13

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    277 F.3d 253 (2d Cir. 2002)..............................................................................7

*United Magazine Co. v Murdoch Magazines Distrib., Inc.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001)..................................................................10

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919)....................................................................................12

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1996)....................................................................................10

*Urdinaran v. Aarons*,
    115 F. Supp. 2d 484 (D.N.J. 2000) ......................................................................17

*Vantico Holdings S.A. v. Apollo Mgmt.*,
    247 F. Supp. 2d 437 (S.D.N.Y. 2003)....................................................................5

*Verizon Comm'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)....................................................................10, 11, 12, 13, 14

iii

## STATUTES

15 U.S.C. § 1 ....................................................................................................................15

15 U.S.C. § 2 ....................................................................................................................15

N.J.S.A. § 56:9 *et seq*...................................................................................................16

## OTHER AUTHORITIES

3 P. Areeda & D. Turner, Antitrust Law ¶ 835 (1978) ......................................................14

Restatement (Second) of Torts §§ 767, 768 ) ..................................................................19

## PRELIMINARY STATEMENT

Defendants The Depository Trust & Clearing Corporation and The Depository Trust Company ("DTC") submit this memorandum of law in opposition to the application by plaintiff Olde Monmouth Stock Transfer Co., Inc. ("OMST") for a temporary restraining order, seeking to have this Court, on an expedited basis, alter the status quo and grant OMST the affirmative ultimate relief on the merits of its action.[1]  The application should be denied.

After having failed to strong-arm DTC into appointing OMST as its agent to perform functions that DTC undertakes as the nation's principal securities depository, OMST has filed an ill-conceived, thinly-pled "antitrust" action.  Under the guise of claims under the Sherman Act and related New Jersey antitrust statutes, OMST asks this Court to compel DTC to do business with it – under terms to which OMST is by no means entitled.  Plaintiff labels these garden-variety business complaints as "antitrust" despite the fact that DTC indisputably *does not compete* in what Plaintiff has defined as the "relevant market," despite the fact that Plaintiff has failed to address the basic elements of the market definition, and despite the fact that Plaintiff has not shown any harm to competition, which is the *sine qua non* of antitrust injury.  Plaintiff's theories, if accepted by this Court, would require a buyer to accept as suppliers any and all comers.  Such a result is antithetical to the free market system, and is particularly inappropriate where, as here, the buyer (DTC) is subject to stringent regulatory supervision, and has a duty to ensure that the suppliers with which it chooses to do business meet those standards as well.

    *    *    *    *

OMST is a transfer agent, merely one of many hundreds of such firms that are retained by public companies to maintain the stock ledger books and handle the issuance and cancellation

---

[1]  In violation of Local Rule 7.1, OMST has not included a memorandum of law as part of its application for injunctive relief.

1

of the companies' securities certificates. DTC is a clearing agency registered with the U.S. Securities and Exchange Commission ("DTC"), and a central component of the nation's system for the clearance and settlement of securities transactions. DTC does not compete in the business of transfer agent services; rather, it is a consumer of those services. Securities certificates deposited at DTC by the major brokerage firms and banks that constitute DTC's "Participants," are reregistered into the name of DTC's nominee, Cede & Co., and "immobilized" at DTC. Transactions in those securities are thereafter settled at DTC by book-entry (computerized) adjustments to the Participants' DTC accounts, thereby eliminating what would otherwise be the impossible burden of physically transferring certificates representing daily transactions approximating two billion shares.

For those situations where the exchange of certificates remains necessary, DTC utilizes the services of the transfer agents retained by issuers to issue new certificates and cancel old. DTC pays the transfer agents a fee for the services supplied. In addition, a number of transfer agents are approved to serve as DTC's agents to maintain custody of securities that are eligible for DTC's Fast Automated Securities Transfer Program ("FAST"). By maintaining custody of the securities, these agents, known as "FAST agents" are able to facilitate certain activities without the need to transfer physical certificates between DTC and the transfer agent. As of year-end 2006, approximately 90 transfer agents were also approved to act as FAST agents.

In 2006, DTC declined OMST's application to become a FAST Agent. OMST continued to urge DTC to consider its application and (although under no obligation to do so), DTC agreed. By its own admission, however, OMST attempted to coerce DTC into approving its application, continually increasing the fees it charged to DTC (while secretly charging other customers at its original fee levels). OMST's fees reached astonishing levels, until what had been a simple

service that in Spring 2006 cost $35 now costs $700. DTC paid OMST approximately $1.1 million in excessive fees. OMST promised DTC that it would return its excessive fees in the event that its FAST agent application was approved -- and then reneged even on this deal -- refusing to return those fees and seeking approval as a FAST agent under terms that are not available to any FAST agent. When DTC did not capitulate, OMST filed this ill-conceived litigation.

OMST cannot possibly satisfy the standards for obtaining emergency relief. In the first instance, it has failed to establish that DTC's determination not to approve its FAST agent application has or could cause it irreparable injury. OMST's claims are that it has lost and will lose customers as a result of DTC's decision. This claim, even if viable, would be fully compensable by money damages and therefore not irreparable. Any notion that somehow OMST is being run out of business is belied by the fact that the overwhelming number of transfer agents are not FAST agents and relatively few transfer agents have applied to become FAST agents in the last year. Moreover, DTC's records demonstrate that since the time OMST unsuccessfully applied to become a FAST agent, the number of issues for which it serves as the transfer agent has actually *increased*, and it currently acts as the transfer agent for 10% more issuers than it did when it first made its application. As recently as this month, OMST added another issuer.

As to the substance of OMST's purported antitrust claims, it cannot demonstrate a likelihood of success on the merits or even fair grounds for litigation. There is no antitrust claim here. In broad strokes:

> Nothing in the antitrust laws requires DTC to appoint OMST to be its agent.

> DTC is not a transfer agent, does not provide transfer agent services and has made no attempt to seek SEC registration to act as a transfer agent. Simply put, DTC does not compete with OMST

3

in the alleged relevant market ("the market for stock transfer agent services" (Compl. ¶43)).

> There is not even a hint of antitrust injury. OMST is one of many hundreds of transfer agents, and DTC has appointed 90 of them to be FAST Agents. Whatever harm allegedly has befallen OMST (and if there is any, it is purely of its own makings), there is no possible harm to competition.

Because OMST's claims, on their face, demonstrate their lack of merit, OMST has certainly not met this standard for injunctive relief.

Finally, the application should be denied because it is inconceivable that OMST has satisfied its enormous burden to obtain *mandatory* emergency relief, constituting the very relief requested on the ultimate merits of this action; *i.e.,* that DTC "immediately" approve OMST as a FAST agent.

OMST has profoundly overplayed its hand. Whatever its complaints as to the speed at which DTC considered its application and subsequent appeal, it has exhibited terribly flawed judgment in attempting to strong-arm DTC in to granting its application and has, in the process, called into question its business integrity. It fails to meet any of the standards for emergency injunctive relief and its application should be denied.

## FACTUAL BACKGROUND

The pertinent facts of this case are set forth in the accompanying declarations of Michael J. Tulaney ("Tulaney Decl.") and Susan Geigel ("Geigel Decl.") and accompanying exhibits. We respectfully refer the Court to those declarations, which we incorporate herein by reference.

## ARGUMENT

I.    **PLAINTIFF CANNOT MEET THE HIGH BURDEN REQUIRED FOR ITS REQUESTED AFFIRMATIVE, ULTIMATE, INJUNCTIVE RELIEF**

The granting of preliminary injunctive relief at the outset of a litigation is "one of the most drastic tools in the arsenal of judicial remedies" *Hanson Trust PLC v. ML SCM Acquisition,*

4

*Inc.*, 781 F.2d 264, 273 (2d Cir. 1986). Accordingly, this "extraordinary remedy . . . should not be granted as a routine matter." *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998); *see also, Berlent v. Focus Features*, LLC, 2006 U.S. Dist. LEXIS 41095 (S.D.N.Y. June 8, 2006). Rather, the party seeking such extreme relief must establish both that, (1) absent such relief, it will suffer an irreparable injury; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping in the moving party's favor. *Hickerson v. City of New York*, 146 F.3d 99, 103 (2d Cir. 1998); *see also Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (applying identical standards in denying plaintiffs' application for a temporary restraining order).

        OMST's burden here is even greater. Because the relief it seeks – approval of its already-denied application to act as a FAST agent – is a mandatory injunction that would alter the status quo, this Court must apply a heightened standard of review. Mandatory injunctive relief is not proper unless the movant has made a "clear or substantial showing" of likelihood of success. *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 149-150 (2d Cir. 1999) (internal quotation omitted). Courts in this District have routinely declined to impose mandatory preliminary injunctive relief. *See, e.g., Line Commc'ns Corp. v. Reppert*, 265 F. Supp. 2d 353, 357 (S.D.N.Y. 2003) (denying application to compel the release of escrowed funds); *Vantico Holdings S.A. v. Apollo Mgmt.*, 247 F. Supp. 2d 437, 451 (S.D.N.Y. 2003) (denying request to enjoin shareholder to vote a particular way; such an injunction alters the status quo and "should be granted only if it satisfies the heightened standard"); *Doe v. Nat'l Bd. of Podiatric Med. Exam'rs*, 2003 U.S. Dist. LEXIS 10281, at *5-6, *9 (S.D.N.Y. June 19, 2003)

(denying application to compel testing board to release scores; plaintiffs failed to make "a clear showing" of entitlement to relief).

Moreover, OMST seeks, in this temporary application, to have this Court impose the ultimate relief it seeks on the merits. This, too requires OMST to meet a heightened standard of proof. *Forest City Daly Hous.*, 175 F.3d at 150;. *Line Commc'ns Corp.*, 265 F. Supp. 2d at 357. Because, as shown below, OMST can show neither imminent and irreparable harm, nor any likelihood of success on the merits (much less the required "clear and convincing" showing), its ill-considered application should be denied.

## II.    PLAINTIFF HAS NOT DEMONSTRATED HARM THAT IS EITHER IMMINENT OR IRREPARABLE

Temporary injunctive relief should not issue unless the movant has established that it is in imminent danger of suffering an irreparable injury absent the relief requested. OMST cannot meet this standard.

OMST makes only conclusory assertions that it will suffer irreparable harm if it is not permitted to join the FAST Program, alleging that it will be "unable to retain existing clients or to attract new customers." Compl. ¶ 24. This Court is not required to, and should not, accept speculation as fact. "Conclusory statements of loss represent an insufficient basis for a finding of irreparable harm." *Litho Prestige, Div. of Unimedia Group, Inc. v. News Am. Publ'g, Inc.*, 652 F. Supp. 804, 809 (S.D.N.Y. 1986). This is particularly so where, as here, DTC's records show that OMST has actually *increased* the number of issuers it represents over the time period alleged in its complaint. *See* Tulaney Decl., ¶ 24 . In any event, there are many hundreds and hundreds of transfer agents that remain in business who have neither sought to become nor are FAST agents. *Id.* ¶  .

6

Nor has OMST shown that any alleged injury is "irreparable." Clearly, when an alleged harm is compensable by money damages it cannot be "irreparable." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 258 (2d Cir. 2002) ("when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted"). OMST's alleged injury is a financial loss—and "financial loss is not of itself sufficient to establish irreparable harm, particularly when the defendants are apparently financially capable of satisfying any judgment . . . ." *Collagenex Pharms., Inc. v. IVAX Corp.*, 375 F. Supp. 2d 120, 139 (E.D.N.Y. 2005) (denying motion for a temporary restraining order and preliminary injunctive relief and noting that plaintiff did not sustain its burden of demonstrating irreparable harm).

OMST has further failed to allege any harm that is imminent. The claimed injury must be "neither remote nor speculative, but actual and imminent." *Datapak Assocs. v. Hoynash*, 2004 U.S. Dist. LEXIS 20408, at *5 (S.D.N.Y. Oct. 8, 2004). OMST contends only that it may have lost business from unspecified issuers and potentially will continue to lose business. *See generally* Compl. ¶ 50. Even if OMST had met its burden to shown a loss of business however, such loss would have happened as of the time of the denial of the FAST application in June of last year. As recognized in *Berlent v. Focus Features, LLC,* where the plaintiff's allegations show that it has already suffered the allegedly irreparable harm, and fails to demonstrate additional harm he will suffer absent the requested relief, a preliminary injunction is not appropriate. 2006 U.S. Dist. LEXIS 41095 at *9-10. Thus, there is no "imminent" harm here.

## III.    PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

OMST has asserted claims for actual and attempted monopolization pursuant to Section 2 of the Sherman Act (Plaintiff's First and Second Causes of Action), attempted monopolization pursuant to Section 1 of the Sherman Act (Third Cause of Action), companion claims pursuant to the New Jersey antitrust statutes (Fourth, Fifth and Sixth Causes of Action) and a common law claim for tortious interference with OMST's purported prospective advantage (Seventh Cause of Action).

All claims are premised on the same mishmash of allegations: OMST contends that it competes in a market for transfer agent services (as well as in a purported market for "New Jersey transfer agent services' with respect to its state statutory claims). No allegations are provided regarding the definition of the relevant market, the substitutability and interchangeability of the products and services it provides, or the portion of Plaintiffs' market share.[2] OMST concedes that DTC is not a competitor in this relevant market, but nonetheless contends that DTC possesses some unspecified level of influence over that market. OMST then alleges that DTC's rejection of its FAST application somehow impairs OMST's ability to compete in the Relevant market. OMST further alleges that DTC "coerced and/or attempted to coerce" unspecified actual and potential customers into forming a conspiracy for unspecified purposes, presumably, to not do business with Plaintiff, although Plaintiff does not allege that any third party actually entered into any agreement with DTC. As a result of this conclusorily-pleaded conduct, OMST claims, its own business has or will suffer damages. However, OMST provides no facts alleging *any harm to competition* in the relevant market itself (a market, again, in which DTC does not compete).

---

[2]      Plaintiff also alleges that it provides "Relevant Services" within the relevant market, a term it defines in a circular fashion as "services within that market." Compl. ¶ 44.

These allegations are wholly insufficient even to state a claim for relief, much less to show a "clear and convincing" entitlement to such relief.

### A.    The Sherman Act Claims Do Not Allege the Sort of Conduct That Is Actionable Under Antitrust Law

The antitrust laws were not designed to serve as a remedy for every businesses grievance, and courts have repeatedly warned against the dangers of using those laws to litigate business tort disputes. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'"); *see also Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 931 (4th Cir. 1990) ("courts should be circumspect in converting ordinary business torts into violations of antitrust laws") (internal quotes omitted); *Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360, 370 (9th Cir. 1988) ("[t]he goal of the antitrust laws, . . . unlike that of business tort or unfair competition laws, is to safeguard general competitive conditions, rather than to protect specific competitors."); *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 267 (7th Cir. 1984) ("[i]f injury to a competitor, caused by wrongful conduct, were enough to bring the antitrust laws into play, the whole state tort law of unfair competition would be absorbed into federal antitrust law."). In flagrant disregard of these cautions, OMST's Complaint attempts to elevate to antitrust status a complaint relating to nothing more than an ordinary business dispute.

> 1.    OMST's Admission that DTC Is Not A Competitor, Its Failure to Recognize That DTC Can Choose Those With Whom It Does Business and Its Inability to Demonstrate Antitrust Injury Are All Fatal to Its Antitrust Claims

Because the antitrust laws are designed to protect harm to competition, rather than harm to competitors, a plaintiff seeking to bring claims under the Sherman Act must demonstrate

anticompetitive conduct causing harm to competition as a whole in the relevant market. OMST has not done so. Rather, OMST apparently contends that, because DTC allegedly possesses "influence" in a market in which it admittedly does not compete, that DTC should therefore be required to do business with any and all participants in that market, and that its declining to do so as to a single firm somehow violates antitrust laws. This contention suffers from at least three fatal flaws: (a) because DTC is not a competitor in the market alleged by OMST, any contentions of monopolization by DTC in that market are not plausible; (b) because DTC indisputably has the right to choose those suppliers whom it will appoint as agents, its determination to select or not select a particular entity cannot, as a matter of law, constitute anticompetitive conduct; and (c) no harm to competition is (or could be) alleged here and thus, OMST cannot establish antitrust injury. Each of these fatal flaws doom OMST's complaint in its entirety.

*First*, any claims premised on monopolization require that the defendant both possess monopoly power, and maintain or acquire such power through anticompetitive conduct. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *accord Verizon Comm'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Here, the monopoly that OMST alleges DTC possesses is "over the entire securities depository industry." Compl. ¶ 42. But the "securities depository industry" (presumably referring to DTC's functions as a securities depository) *is an entirely separate market* from the stock transfer agent industry, in which OMST competes.[3] Accordingly, because OMST does not compete in the sole market in which

---

[3]    OMST utterly fails to define its so-called relevant market, except to state that it is made up of the market for transfer agent services. This vague and conclusory allegation is insufficient as a matter of law. To allege a relevant market – an essential element for any claim of monopolization – a plaintiff must set forth basic elements of market definition such as the substitutability of products or services, on either the demand or the supply side of an alleged market. Failure to do so can warrant dismissal even at the initial pleading stage. *See, e.g., United Magazine Co. v Murdoch Magazines Distrib., Inc.*, 146 F. Supp. 2d 385, 389 (S.D.N.Y. 2001) (complaint was insufficient, among other things, for failing to define terms used in market definition and to make allegations regarding interchangeability of various services); *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982) (alleged market must relate to the accepted methodology, including "analysis of the

DTC is alleged to have monopoly power, its monopolization claims fail as matter of law. *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 249 (S.D.N.Y. 2004) (dismissing antitrust claim because plaintiff did not compete in market alleged to be monopolized and thus "the anticompetitive conduct alleged by [plaintiff] is not relevant . . ."); *Alpha Shoe Serv. v. Fleming Cos.,* 849 F.2d 352 (8th Cir. 1988) (dismissing antitrust complaint where plaintiff and defendant did not compete in the same market); *Cont'l Orthopedic Appliances v. Health Ins. Plan*, 956 F. Supp. 367, 372 (E.D.N.Y. 1997) (same).

Nor can OMST escape this conclusion by pressing an (unpled) claim for monopoly leveraging. As recognized by the Supreme Court in *Trinko*, such a claim would require the plaintiff to plead and prove that the defendant had monopoly power in one market, which it attempted to use to achieve monopoly power in another. 540 U.S. at 415, n.4. No such allegations are or could be pled here. DTC is not seeking to monopolize the so-called relevant market of transfer agent services – indeed, it admittedly does not compete in that market at all. This is dispositive of both of Plaintiff's claims under Section 2 of the Sherman Act – because DTC does not compete in the relevant market defined by OMST, as a mater of law, DTC neither monopolizes, nor is attempting to monopolize, that market. The flaw is not cured by OMST's bare allegations that DTC somehow has "influence" over that market (*see, e.g.,* Compl. ¶ 47) because DTC is not a participant in it. OMST's allegation of "influence" is not a concept recognized in antitrust jurisprudence.

This undisputed fact highlights the *second* fatal flaw in OMST's antitrust complaint. The gravamen of OMST's claims is that DTC has declined to appoint OMST as a FAST agent. That

---

interchangeability of use or the cross-elasticity of demand"); *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995) (similar). Here, OMST seeks to lump all transfer agent services (without even defining what those services are) into a single Relevant market, and then to argue that it is being excluded from the market because DTC did not approve it to act as one of its FAST agents. On its face, OMST's market definition reveals the implausibility of its claims.

is, the alleged "anticompetitive conduct" of DTC is nothing more or less than DTC's determination not to enter into a particular business relationship with OMST.[4] But OMST's desire to act as a FAST agent is simply not the type of limited situation which could give rise to an actionable "refusal to deal" claim. *Trinko*, 540 U.S. at 409. Even if DTC were a monopolist in a relevant market, as a matter of law, it has no general duty under the antitrust laws to deal with potential suppliers. *See, e.g., Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1359 (Fed. Cir. 1999) (rejecting refusal to deal theory premised on defendant's withdrawal of plaintiff's special benefits as a customer of defendant) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919), among other cases); *see also Trinko*, 540 U.S. at 408 (the Sherman Act does not restrict the right of an alleged monopolist "freely to exercise . . . independent discretion as to parties with whom he will deal.").

FAST agents perform certain services (which involve, among other things, maintaining custody of potentially billions of dollars worth of securities) on DTC's behalf. Tulaney Decl. ¶¶ 12-16. DTC is free to determine the entities to whom it wishes to grant this responsibility. This is particularly true where, as here, DTC is subject to strict regulatory supervision by the Securities and Exchange Commission (Tulaney Decl. ¶ 7). Certainly, DTC cannot, under the guise of the antitrust laws, be compelled to delegate duties and responsibilities to all comers, regardless of whether it believes those comers can meet the standards to which DTC itself is subject.

*Third*, OMST's Complaint is fatally flawed because it does not, and could not, allege the requisite antitrust injury. An antitrust plaintiff must demonstrate harm to competition itself, not

---

[4] As explained in the Tulaney Declaration, appointment as a FAST agent is entirely unnecessary in order to compete in the relevant market, as demonstrated by the fact that the vast majority of transfer agents are not FAST agents. Accordingly, even if DTC's determination was wrongful (and it is not), that determination could not, as a matter of law, affect either competition or this competitor with respect to the market as OMST has defined it.

merely harm to the alleged monopolist's competitors. *Trinko*, 540 U.S. at 407 ("[t]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*."); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("[t]he law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself"); *George Haug Co. v. Rolls Royce Motor Cars*, 148 F.3d 136, 139 (2d Cir. 1998) (plaintiff must demonstrate at the threshold that defendants' acts had an actual adverse effect on competition as a whole). Thus, as a "threshold matter," OMST is required to allege a "substantial foreclosure of competition in an area of effective competition, that is, in a relevant market." *Ford Piano Supply Co. v. Steinway & Sons*, 1988 WL 3488, at *1 (S.D.N.Y. Jan. 13, 1988); *see also Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961) (competition foreclosed must "constitute a substantial share of the relevant market"). The Complaint contains no such allegations.

OMST has not alleged any foreclosure of competition in its alleged relevant market of transfer agent services, much less a "substantial foreclosure." Indeed, because there are hundreds of transfer agents in the relevant market defined by OMST, it would be absurd to suggest that OMST's inability to act as a FAST agent could in any way affect competition in that alleged relevant market. Tulaney Decl. ¶ 14. Moreover, even if OMST could show its own business were being impaired, the sheer number of transfer agents clearly show that there could be no harm to competition even were OMST to be driven entirely out of the market. *Id.* Accordingly, OMST cannot state a claim under the Sherman Act. *See, e.g., Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 501-02 (S.D.N.Y. 2001) (claim dismissed because, among other things, allegation that defendants cut off plaintiff retailer's supply through threats and other unfair conduct did not sufficiently allege an adverse effect on competition).

13

Any one of these fatal flaws supports the outright dismissal of OMST's First, Second and Third Causes of Action. Certainly, the presence of all three of them is a compelling indication that OMST has not met the high burden for its requested injunctive relief.

> 2. OMST's Attempted Monopolization Claim Pursuant to Section 2 of the Sherman Act Is Further Deficient for Its Failure to Demonstrate a "Dangerous Probability of Success"

In addition to the fatal flaws detailed above, OMST's failure to demonstrate a "dangerous probability of success" that DTC can monopolize the relevant market also dooms its application for injunctive relief on the Second Cause of Action. As noted by the Supreme Court in *Trinko*, 540 U.S. at 415, n.4, this requirement is an essential one for any claim of attempted monopolization. The probability that a defendant can successfully monopolize a market is usually assessed by market share. *See H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1017 (2d Cir. 1989) (40% market share between two alleged conspirators, in the context of a widely diversified and competitive market, insufficient to demonstrate "dangerous probability of success"); *see also* 3 P. Areeda & D. Turner, ANTITRUST LAW ¶ 835 at 350 (1978) (noting that claims for attempted monopolization should presumptively be rejected where defendant holds market share of 30% or less). Here, OMST has not and could not demonstrate any market share by DTC in the transfer agent market. Its mere lip service to the phraseology (*see, e.g.,* Compl. ¶ 53) should be rejected. *See CCBN.Com, Inc. v. Tomson Fin., Inc.*, 270 F. Supp. 2d 146, 157 (D. Mass. 2003) (dismissing attempted monopolization claim at the pleadings stage where plaintiff's allegations regarding defendant's market share were deficient). DTC is not a transfer agent, is not registered with the SEC to function as a transfer agent (*see* Tulaney Decl. ¶ ¶ 5, 9) and is not alleged to have any intent to become a transfer agent. Certainly, OMST has not shown the "clear and convincing" likelihood required to obtain its requested injunctive relief at this stage.

3.     OMST's Claim Under Section 1 of the Sherman Act is Further Deficient Because No Agreement Is Alleged

OMST's Third Cause of Action is styled as a claim for "attempted monopolization" pursuant to Section 1 of the Sherman Act. Compl. at p. 31. This claim is nonsensical – Section 1 does not recognize "attempt" claims. *Compare* 15 U.S.C. § 1 (prohibiting only the actual making of a combination or conspiracy in restraint of trade) *with* 15 U.S.C. § 2 (prohibiting monopolization *or* attempted monopolization). Rather, a claim under Section 1 requires the plaintiff to plead and prove the existence of a combination, contract or conspiracy to unreasonably restrain trade in the relevant market. OMST's allegations, on their face, fail to do so.

OMST argues that DTC "coerced and/or attempted to coerce . . . third parties into forming a combination, contract or conspiracy with DTC." Compl. ¶ 57. Leaving aside that OMST has utterly failed to allege the nature or purpose of this alleged combination, contract or conspiracy in more than the most conclusory terms, OMST's own allegations show that there was no agreement between DTC and any third party. The Cause of Action itself does not identify the alleged third parties, or DTC's alleged coercion. Presumably, OMST means to refer to the customer communications set forth in paragraphs 34 through 40 of its Complaint. However, nothing in any of those paragraphs indicates any agreement by any third party to any alleged proposal, coercion or other alleged conduct by DTC.

At most, OMST's allegations are that DTC attempted to convince customers to enter into an agreement to OMST's detriment. DTC, of course, vigorously disputes that it did so, but even if those allegations were accepted as true they do not, as a matter of law, state a Section 1 claim. It is well-settled law that absent an actual agreement, no claim will lie. "[T]here can be no liability under § 1 in the absence of agreement." *Fisher v. Berkeley*, 475 U.S. 260, 266 (1986)

(recognizing that the Court has always limited the reach of section 1 to concerted efforts by more than one entity); *see also, e.g., Brunson Commc'ns v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 559 (E.D. Pa. 2002) ("The very essence of a Section 1 claim is the existence of an agreement.") (citations and internal quotations omitted). Because there is no agreement here by OMST's own admissions, OMST cannot succeed on its Third Cause of Action.

### B.    The Supplemental State Law Antitrust Claims Are Similarly Defective

OMST's Fourth through Sixth Causes of Action merely parrot the allegations of its First through Third Causes of Action, and allege violations of the companion provisions of the New Jersey Antitrust Act, N.J.S.A. § 56:9 *et seq.*.[5] New Jersey courts have recognized that those State statutes "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes . . . to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it." *Patel v. Soriano*, 848 A.2d 803, 826 (N.J. App. Div.), *certif. denied*, 861 A.2d 845 (2004) (citations omitted). Accordingly, New Jersey "look[s] to federal jurisprudence to guide our interpretation of the Act." *Id.* Thus, each of the Fourth through Sixth Causes of Action fail at the outset for the reasons set forth above.

Moreover, OMST cannot demonstrate a likelihood of success on the merits of its Fourth through Sixth Causes of Action for the separate reasons that it has utterly failed to allege any sort of economically meaningful market with respect to these Causes of Action. OMST asserts that these claims are made with respect to "the market for stock transfer agent services in New Jersey." Compl. ¶ 61. But OMST provides not a single allegation to show that there is, in fact, a market for stock transfer agent services in New Jersey, distinct from a national or other geographic market for such services. In *Patel*, the court explained, "[t]he relevant geographic

---

[5]    DTC does not concede that New Jersey law is applicable here.

16

market is the area in which potential buyers may rationally look for the goods or services they seek. It is the area where customers look to buy products, not the area where the seller attempts to sell its product." *Id.* at 830 (rejecting plaintiff's attempt to limit relevant market for medical services to a single hospital) (citations omitted). *See also, e.g., Urdinaran v. Aarons,* 115 F. Supp. 2d 484, 490 (D.N.J. 2000) ("the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product,;" further, any alleged market "must take into account the realities of competition").

OMST provides no reason why an issuer would require a New Jersey transfer agent to handle the sales and transfers of its stock between buyers and seller located potentially anywhere in the world. Indeed, there is no such reason, and New Jersey itself is not a relevant market for purposes of OMST's claims of harm to competition in the stock transfer agent service business. Thus, the state law claims are deficient on this basis as well.

**C.    OMST's Supplemental State Common Law Claim Fails As A Matter of Law**

Finally, OMST attempts to state a claim for tortious interference with prospective advantage (its Seventh Cause of Action), apparently based on (1) DTC's alleged statements to issuers currently using OMST that DTC might be compelled to "chill" the issue and (2) vague and conclusory allegations of "disparagement," which seem to be premised on even vaguer and more conclusory claims that DTC may have publicized the fact that OMST was not a FAST agent. *See* Compl. ¶¶ 35-40, 80. OMST is not likely to prevail on the tortious interference claim.

Tortious interference requires a plaintiff to specifically plead (and prove) both (1) that defendant's conduct was motivated *solely* by malice or effectuated by unlawful means, and (2)

that but for defendant's interference, the plaintiff would have consummated a contract. *Maas v. Cornell Univ.*, 245 A.D.2d 728, 731 (3d Dep't 1997) (affirming dismissal of complaint at preanswer stage); *see also Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*, 23 A.D.3d 162, 163 (1st Dep't 2005) (affirming dismissal of tortious interference with prospective advantage for failure to include the "necessary allegation that defendant's conduct was motivated solely by malice . . ."). New Jersey law is in accord. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989) (a claim for tortious interference requires a reasonable expectation of prospective advantage but for defendant's interference, and a showing that the interference was intentional and without justification or excuse) (collecting cases).[6]

Acts motivated by normal economic self-interest do not amount to tortious interference. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004); *see Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196 (1980) (finding no liability for interference where no contract was involved, and competitor's interference did not use wrongful means); *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933-34 (N.J. App. Div.), *certif. denied*, 660 A.2d 904 (1995) (even though evidence demonstrated that competitor dairy farmer specifically targeted plaintiff's customers, and undercut prices to lure those customers to competitor, such conduct was not tortious, but was "the very essence of competition").. DTC's consideration of the possibility of "chilling" OMST issues was based on just such normal economic self-interest. OMST's admittedly coercive conduct had increased the price of a $35 service to $700 over a brief period. In keeping with its obligations to ensure efficient means of clearance and settlement, it was well within DTC's legitimate interests to consider no longer processing physical transfers of certificates under such outrageous conditions. And it was entirely

---

[6]     OMST does not specify whether its Seventh Cause of Action is brought under New York or New Jersey common law; in any event, it is equally deficient under either.

appropriate that, as the registered owner of the securities and the nation's principal depository, DTC advise issuers of the problem created by their transfer agent. (*See* Geigel Decl. ¶ 4; Tulaney Decl. ¶ 8.). It is ironic indeed that OMST – which admittedly increased its fees to coerce DTC and forced DTC to pay these gouging fees for several months– should now claim that DTC's response to that conduct (particularly after OMST reneged on its agreement to return the funds if appointed a FAST agent, Tulaney Decl. ¶ ¶ 41-43 and Ex. O) was "motivated solely by malice."

Nor can OMST demonstrate the necessary element of "wrongful means." This term requires conduct such as physical violence, fraud, and criminal prosecutions. *Carvel Corp.*, 3 N.Y. 3d at 191 (quoting Restatement (Second) of Torts §§ 767, 768); *see Printing Mart*, 563 A.2d at 39-40 (line of fair competition is drawn where interference is through conduct that is fraudulent, dishonest or illegal). The prospective advantage claim is not likely to succeed.[7]

---

[7]    The complaint further fails to allege adequately that "but for" DTC's alleged interference, plaintiff would have entered into any prospective business relationship. *Maas,* 245 A.D.2d at 731.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny

OMST's application for temporary injunctive relief.

Dated: February 20, 2007

PROSKAUER ROSE LLP

By: _____
Gregg M. Mashberg (GM-4022)
Karen D. Coombs (KC-3538)
Dolores DiBella (awaiting admission)

1585 Broadway
New York, NY 10036
(212) 969-3000
*Attorneys for Defendants*

20