**EXHIBIT C**

**Exhibit I**

## BALANCE CERTIFICATE AGREEMENT

AGREEMENT dated as of _____ by and between _____ (Transfer Agent) and The Depository Trust Company (DTC).

Transfer Agent and DTC desire to improve the mechanisms for the registration of transfer of certificates registered in the name of DTC's nominee, Cede & Co., for which Transfer Agent acts as transfer agent.

In consideration of the premises and the mutual covenants herein contained, the parties agree as follows:

1. For all purposes of this Agreement:

(a) The term "Balance Certificate" shall mean a certificate registered in the name of Cede & Co. which evidences (i) record ownership by Cede & Co. of the number of shares or units of the issue shown from time to time on the records of the issuer thereof or (ii) the duties of the issuer thereof to perform the obligations shown from time to time on the records of the issuer thereof, which records are maintained by Transfer Agent, as being evidenced by such certificate, which certificate shall be retained by Transfer Agent. Each Balance Certificate shall be registered:

(I) If it is an equity security as follows: "Cede & Co. for the number of [insert description of interests represented by certificate] shown from time to time on the records of the issuer hereof as represented by this certificate."

(II) If it is a debt security, in a manner which obligates the issuer to make payment to Cede & Co. (e.g. "●●● hereby promises to pay Cede & Co.●●●") and which describes the sum to be to Cede & Co. as the "sum shown from time to time on the records of the issuer hereof as represented by this [insert description of instrument as used in the actual instrument e.g. this debenture or this bond]".

(b) The term "issue" shall mean a class or series of (i) equity security issued by a person which evidences a share, participation or other interest in property or in an enterprise or (ii) instruments issued by a person which evidence the duties of that person to perform obligations, for which Transfer Agent acts as transfer agent and which is listed on Exhibit A, as it may be amended in writing from time to time by the parties.

(c) The term "transfer agent" shall mean a person who engages on behalf of an issuer in, among other things, registering the transfer of certificates, including, but not limited to, an authenticating trustee or authenticating agent.

(d) The term "registrar" shall mean a person who engages on behalf of an issuer in monitoring the issuance of securities with a view to preventing unauthorized issuance.

WC-NC (Rev. 1/80) 5637                                   1

(e) The terms "security" and "issuer" shall have the meanings specified in the New York Uniform Commercial Code.

(f) The term "certificate" shall mean a security.

(g) The term "nominee certificate" shall mean a security of an issue registered in the name of Cede & Co.

(h) The term "non-nominee certificate" shall mean a security of an issue registered in a name other than Cede & Co.

2. From time to time DTC will deliver to Transfer Agent nominee certificates or non-nominee certificates. Transfer Agent shall accept delivery of such certificates and shall register the transfer thereof and otherwise act in respect thereof as provided herein.

3. (a) Immediately following execution of this Agreement or as soon thereafter as may be agreed for the convenience of the parties, DTC shall deliver to Transfer Agent nominee certificates and/or non-nominee certificates for each issue. Transfer Agent shall cancel all such certificates and issue in place of such certificates of each issue one or more Balance Certificates for such issue. All such Balance Certificates shall be retained by Transfer Agent. Transfer Agent shall confirm to DTC the number of shares or units or the amount of obligations evidenced by each Balance Certificate in the manner described in paragraph 4. Transfer Agent shall furnish DTC with a sample Balance Certificate for each issue if requested by the Corporation.

(b) On each day on which Transfer Agent is open for business and on which it receives from DTC (i) non-nominee certificates with instructions to register the transfer thereof into the name of Cede & Co. or nominee certificates and instructions to include the shares, units or obligations evidenced by such non-nominee certificates or nominee certificates in the Balance Certificate for the issue represented by such certificates or (ii) instructions to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. or to issue a certificate in the name of Cede & Co. evidencing shares, units or obligations then evidenced by a Balance Certificate, Transfer Agent shall

(1) increase or reduce the number of shares or units or the amount of obligations evidenced by the Balance Certificate as required so that it shall thereafter evidence a number of shares or units or amount of obligations equal to:

(x) the number of shares or units or amount of obligations evidenced by the balance Certificate prior to receipt of such instructions,

*plus*

(y) the number of shares or units or amount of obligations evidenced by the certificates received from DTC,

*less*

(z) the number of shares or units or amount of obligations subject to the instructions referred to in clause (ii) above; and

WC-NC (Rev. 1/80) 5637                          2

(2) register the transfer of shares, units or obligations and issue certificates registered in the name of Cede & Co. pursuant to any instructions referred to in clause (ii) above and deliver to or make available for pick-up by DTC certificates for such shares, units or obligations within the time from time agreed to by the parties hereto.

(c) Transfer agent shall cause all Balance Certificates to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

Transfer Agent agrees that the foregoing provisions of this subparagraph constitute as to the Transfer Agent a timely written notice of an adverse claim by DTC as to each such certificate regardless of whether the legend actually appears thereon.

Transfer Agent shall, from time to time at DTC's request, cause one or more certificates prepared for delivery to or pick-up by DTC which are registered in the name of Cede & Co. to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

4. Transfer Agent shall confirm to DTC in writing the number of shares or units or the amount of obligations evidenced by each Balance Certificate, on a daily or other periodic basis, as DTC may reasonably request.

5. As between DTC and Transfer Agent (including, without limitation, its creditors, lien holders and pledgees), all shares or units or the amount of any obligations evidenced by a Balance Certificate or any other certificate which comes into the possession of Transfer Agent pursuant to the provisions hereof shall be deemed to be the sole property of DTC. Transfer agent shall not by reason of any provision of this Agreement or the delivery to it of certificates in accordance with the provisions hereof obtain any legal or equitable right, title or interest in or to such certificates or the shares, units or obligations evidenced by such certificates.

6. Transfer Agent shall at all times hold all Balance Certificates in its secured area at

7. (a) Notwithstanding any event whatsoever, other than an event described in subparagraph (b) of this paragraph, in the proviso to paragraph 9 hereof or in paragraph 10 hereof, Transfer Agent shall, upon the request of DTC, deliver to or make available for pick-up by DTC a certificate or certificates evidencing all the shares, units or obligations evidenced by any Balance Certificate within 24 hours after receipt of such request, provided, however, that such certificate, or certificates shall not include the Balance Certificate, shall be registered in the name of Cede & Co. and shall specify the number of shares or units or the amount of obligations evidenced thereby without reference to any other document or record.

(b) Transfer Agent shall notify DTC immediately after it determines that any security received by it from DTC, deliverable by it to DTC or held by it pursuant to the provisions of this Agreement has been lost, apparently destroyed or wrongfully taken or is unaccounted for by Transfer Agent ("Missing Security"). In such event if the Missing Security is a Balance Certificate, Transfer Agent shall immediately reduce the number of shares or units or the amount of obligations attributable to the Missing Security to zero and issue in replacement thereof a new Balance Certificate; if the Missing Security is other than a Balance Certificate, Transfer Agent shall not be obligated to deliver the Missing Security or the equivalent thereof within the time limitations agreed upon pursuant to paragraphs 3(b) (2), 7(a) and/or 15 and DTC and Transfer Agent shall seek to obtain the replacement thereof in accordance with the custom and usage of the financial industry.

8. Transfer Agent represents and warrants that it is insured under an insurance policy in the form of Bankers Blanket Bond Standard Form 24, or similar coverage, in the maximum amount of $              which insurance covers any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent has delivered to DTC a writing signed by its insurance underwriter(s) which evidences, to DTC's satisfaction, the effectiveness of such insurance coverage in such amount, and Transfer Agent covenants and agrees to maintain at its expense such insurance (or a comparable plan of insurance) in no less amount and with like coverage during the term of this Agreement, subject to its right to cancel, decrease or limit the same after giving written notice to DTC of any such cancellation, decrease or limitation at least 30 days prior to the effective date thereof. Transfer Agent shall prior to the first anniversary of the date of this Agreement and prior to each succeeding anniversary of this Agreement during its term deliver to DTC a writing signed by its insurance underwriter(s) which shall evidence the amount and coverage of Transfer Agent's insurance and shall state, to DTC's satisfaction, whether or not such insurance covers, in a manner equivalent to Bankers Blanket Bond Standard Form 24, any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent agrees that whenever Transfer Agent is responsible pursuant to the terms of this Agreement for the shipment of securities, Transfer Agent will either provide adequate insurance coverage or require such coverage from the carrier of the securities, such coverage to cover losses of securities while in transit to DTC and until received by DTC, and that the amount of such coverage shall equal or exceed 110 per cent of the fair market value of securities so shipped by Transfer Agent. Transfer Agent shall, at DTC's request furnish DTC with documentation evidencing the amount of coverage of the insurance provided by Transfer Agent for any such shipment of securities.

9. Transfer Agent agrees that it shall not for any reason, including the assertion of any claim, right or lien of any kind refuse or refrain from delivering any certificates to or as directed by DTC in accordance with the terms of this Agreement; provided, however, that if Transfer Agent shall be served with a notice of levy, seizure or similar notice, or order or judgment, issued or directed by a governmental agency or court, or an officer thereof, having jurisdiction over Transfer Agent, which on its face affects a Balance Certificate or other certificate in the

possession of Transfer Agent pursuant to the provisions hereof, Transfer Agent may, pending further direction of such governmental agency or court, refuse or refrain from delivering or making available to DTC in contravention of such notice of levy, seizure or similar notice or order or judgment certificates evidencing shares, units or obligations not greater in number or amount than the shares, units or obligations which are affected by such notice of levy, seizure or similar notice, or order or judgment on the face thereof.

10. If Transfer Agent shall be obligated to deliver to or make available for pick-up by DTC certificates pursuant to the provisions of paragraph 3(b) (2), paragraph 7(a) and/or paragraph 15 hereof which certificates shall in the aggregate have a current market value in excess of the maximum amount of the Bankers Blanket Bond specified in paragraph 8 hereof, Transfer Agent shall not be obligated to meet the time requirements specified in said paragraphs 3(b) (2), 7(a) and 15 but shall instead deliver or make available such certificates as promptly as possible without creating and maintaining prior to delivery to DTC certificates, other than any Balance Certificate, having a value in excess of said amount.

11. If Transfer Agent shall receive instructions from DTC to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co., the receipt of such instructions shall constitute a presentation by DTC of the Balance Certificate to Transfer Agent under applicable law and DTC shall thereby be deemed to have made the same warranties as it would have made under applicable law if it had physically presented the Balance Certificate to Transfer Agent. DTC indemnifies and holds Transfer Agent harmless against all damages, losses, costs and expenses (including counsel fees) suffered or incurred by Transfer Agent by reason of Transfer Agent's registering a transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. pursuant to instructions received from DTC by Transfer Agent provided such instructions conform to the procedures in accordance with which DTC from time to time authorizes Transfer Agent to act.

12. Except as specifically provided herein, or otherwise agreed by the parties hereto, the provisions of applicable law shall govern all registrations of transfer of securities pursuant hereto and pursuant to the instructions of DTC.

13. Transfer Agent may act relative to this Agreement in reliance upon advice of counsel in reference to any matters connected with its duties under this Agreement, and shall not be liable for any mistake of fact or error of judgment, or for any acts or omissions to act of any kind, unless caused by its own negligence.

14. Transfer Agent may at any time, without any resulting liability to itself, act under this Agreement in reliance upon the signature of any person which it believes in good faith to have authority to act for DTC with respect to this Agreement, but Transfer Agent shall not be required so to act, and may in its discretion at any time require such evidence of the authenticity of such signature and of the authority of the person acting for DTC as may be satisfactory to the Transfer Agent.

15. This Agreement (i) may be terminated by either party upon ten business days' written notice to the other party; (ii) shall terminate with respect to any issue upon Transfer Agent's ceasing to be a transfer agent therefor, in which event Transfer Agent shall give DTC prompt written notice thereof; (iii) may be terminated by Transfer Agent with respect to any issue for which Transfer Agent is the registrar and for which Transfer Agent ceases to be a registrar upon its giving written notice thereof to DTC, unless the issuer thereof shall not require that there be a registrar therefor or (iv) may be terminated by Transfer Agent with respect to any issue in

respect of which Transfer Agent has entered into a special agreement with any registrar or co-registrar or co-transfer agent therefor, upon termination of such special agreement upon its giving written notice thereof to DTC. In the event of the termination of this Agreement or termination of this Agreement as to any issue by reason of the foregoing provisions of this paragraph or the amendment of Exhibit A. it shall be deemed that Transfer Agent has received as of the time of such termination a request by DTC within the meaning of paragraph 7(a) with regard to (i) all Balance Certificates subject hereto if this Agreement is terminated or (ii) the Balance Certificate for any issue in respect of which this Agreement shall terminate.

16. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

17. All notices, instructions, requests and other communications required or contemplated by this Agreement shall be in writing, shall be delivered by hand or sent, postage prepaid, by certified or registered mail, return receipt requested, and shall be addressed to Transfer Agent at                              and to DTC at 55 Water Street New York, New York 10041. Notice given as aforesaid shall be deemed given upon the receipt thereof. Either of the parties may change the address to which notices shall be sent upon notice to the other in the manner hereinabove provided.

18. (a) Transfer Agent agrees to indemnify and hold harmless DTC from and against any and all losses, liabilities, claims, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against DTC by reason of Transfer Agent's negligent action or negligent failure to act; provided, however, that should Transfer Agent be held to be negligent hereunder and should DTC be held to have been contributorily negligent in connection therewith, then the aforementioned liability shall be shared between Transfer Agent and DTC in such proportion as maybe set forth in any decision of a court or other tribunal having jurisdiction, unless Transfer Agent and DTC shall agree in writing to share such liability in a different proportion.

(b) DTC agrees to indemnify and hold harmless Transfer Agent from and against any and all losses, liabilities, claims, taxes, assessments, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against Transfer Agent as a result of any action taken pursuant to this Agreement or following the instructions of DTC in connection with the performance of its duties under this Agreement where Transfer Agent has acted in good faith without negligence.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_____  THE DEPOSITORY TRUST COMPANY

By:_____   By: _____

_____   _____
                NAME                                      NAME

_____   _____
                TITLE                                     TITLE

_____   _____
                DATE                                      DATE

_____   _____
               ATTEST                                    ATTEST

_____   _____
                NAME                                      NAME

WC-NC (Rev. 1/80) 5637                          7