# EXHIBIT D

SECURITIES AND EXCHANGE COMMISSION
(Release No. 34-54289; File No. SR-NYSE-2006-29)

August 8, 2006

Self-Regulatory Organizations; New York Stock Exchange LLC; Order Granting Approval of a Proposed Rule Change Amending the Listed Company Manual to Mandate Listed Companies Become Eligible to Participate in a Direct Registration System

I.      Introduction

On May 6, 2006, the New York Stock Exchange LLC ("NYSE") filed with the Securities and Exchange Commission ("Commission") proposed rule change SR-NYSE-2006-29 pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act").[1]  Notice of the proposal was published in the Federal Register on June 7, 2006.[2]  Two comment letters were received.[3]  For the reasons discussed below, the Commission is granting approval of the proposed rule change.[4]

II.     Description

The Direct Registration System ("DRS") allows an investor to establish either through the issuer's transfer agent or through the investor's broker-dealer a book-entry position on the books of the issuer and to electronically transfer her position between the transfer agent and the

---

[1]      15 U.S.C. 78s(b)(1).

[2]      Securities Exchange Act Release No. 53912 (May 31, 2006), 71 FR 33030 (June 7, 2006) [File No. SR-NYSE-2006-29].

[3]      Letters from Noland Cheng, Chairman, SIA Operations Committee, Securities Industry Association (June 27, 2006) and Paul Conn, President, Global Capital Markets, Computershare Limited, and Charlie Rossi, Executive Vice President, Computershare Investor Services (July 28, 2006).

[4]      Concurrent with the Commission's approval of NYSE's rule change, the Commission is also approving in separate orders similar rule changes proposed by the American Stock Exchange LLC ("Amex") and The NASDAQ Stock Market LLC ("Nasdaq"). Securities Exchange Act Release Nos. 54290 (August 8, 2006) [File No. SR-Amex-2006-40] and 54288 (August 8, 2006) [File No. SR-NASDAQ-2006-008]. The Commission has also published notice of a similar rule changed proposed by NYSE Arca, Inc. Securities Exchange Act Release No. 54126 (July 11, 2006), 71 FR 40768 (July 18, 2006) [File No. SR-NYSEArca-2006-31].

2

broker-dealer of her choice through a facility currently administered by The Depository Trust Company ("DTC").[5]  DRS, therefore, enables an investor to have securities registered in her name without having a securities certificate issued to her and to electronically transfer her securities to her broker-dealer in order to effect a transaction without the risk and delays associated with the use of securities certificates.

Investors holding their securities in DRS retain the rights associated with securities certificates, including such rights as control of ownership and voting rights, without having the responsibility of holding and safeguarding securities certificates.  In addition, in corporate actions such as reverse stock splits and mergers, cancellation of old shares and issuance of new shares are handled electronically with no securities certificates to be returned to or received from the transfer agent.

In order to reduce the number of transactions in securities for which settlement is effected by the physical delivery of securities certificates and thereby reduce the risks, costs, and delays associated with the physical delivery of securities certificates, the NYSE will impose its DRS eligibility requirement pursuant to proposed new Section 501.00 of the NYSE Listed Company Manual ("Manual").[6]  Proposed Section 501.00 does not specifically require that securities must

---

[5]     Currently, the only registered clearing agency operating a DRS is DTC.  For a detailed description of DRS and the DRS facilities administered by DTC, see Securities Exchange Act Release Nos. 37931 (November 7, 1996), 61 FR 58600 (November 15, 1996), [File No. SR-DTC-96-15] (order granting approval to establish DRS) and 41862 (September 10, 1999), 64 FR 51162 (September 21, 1999), [File No. SR-DTC-99-16] (order approving implementation of the Profile Modification System).

[6]     The exact text of the NYSE proposed rule change is set forth in its filing, which can be found at www.nyse.com/RegulationFrameset.

3

be eligible for the DRS operated by DTC. Rather it requires listed companies' securities to be

eligible for a direct registration system operated by a clearing agency, as defined in Section

$3(a)(23)$ of the Act,[7] that is registered with the Commission pursuant to Section 17A(b)(2) of the

Act.[8]  Therefore, while the DRS currently operated by DTC is currently the only DRS facility

meeting the definition, Section 501.00 will provide issuers with the option of using another

qualified DRS if one should exist in the future.

In order to make a security DRS-eligible in the DRS currently operated by DTC, the

issuer must have a transfer agent which is a DTC DRS Limited Participant.[9]  While some

transfer agents currently acting for NYSE listed companies are already eligible to participate in

DRS, other transfer agents may need to take steps to become eligible to participate in DRS.  In

addition, some issuers may need to amend their certificates of incorporation or by-laws to

become DRS eligible.

To allow sufficient time for any such necessary actions, NYSE will impose the DRS

eligibility requirement in two steps.  Because companies listing for the first time should have

greater flexibility to conform to the eligibility requirements, proposed Section 501.00 will

require all securities initially listing on NYSE on or after January 1, 2007, to be eligible for DRS

---

[7]      15 U.S.C. 78c(a)(23)(A).

[8]      15 U.S.C. 78q-1(b)(2).

[9]      DTC's rules require that a transfer agent (including an issuer acting as its own transfer
agent) acting for a company issuing securities in DRS must be a DRS Limited Participant.
Securities Exchange Act Release No. 37931 (November 7, 1996), 61 FR 58600 (November 15,
1996), [File No. SR-DTC-96-15].

4

at the time of listing. This provision does not extend to securities of companies (i) which already have securities listed on the NYSE, (ii) which immediately prior to such listing had securities listed on another registered securities exchange in the U.S., or (iii) which are specifically permitted under NYSE's rules to be and which are book-entry only.[10]  On and after January 1, 2008, all securities listed on the NYSE will be required to be eligible for DRS, again excepting those securities which are specifically permitted under NYSE rules to be and which are book-entry only.

NYSE is also amending Section 601.01 o f the Manual ("Exchange Approval of Transfer Agents and Registrars") to require that any issuer required to make a listed security eligible for DRS pursuant to proposed Section 501.00 must maintain a transfer agent for that security which is eligible either for DRS operated by DTC or by another registered clearing agency.  In addition, the NYSE is amending the transfer agent agreements in Section 906 of the Manual to require transfer agents for securities subject to proposed Section 501.00 to agree that they will at all times be eligible either for the DRS operated by DTC or by another registered clearing agency.

III.    Comment Letters

The Commission received two comment letters in support of the proposed rule change.[11] The SIA Operations Committee ("SIA"), an industry organization representing broker-dealers, stated that the effect of the proposed rule change will be to reduce significantly the number of

---

[10]     Securities which the NYSE permits to be book-entry-only include all debt securities, securities issued pursuant to Section 703.19 of the Manual and nonconvertible preferred stock.

[11]     Supra note 3. The SIA and Computershare's comment letters were written in support of the three similar proposed rule changes filed by Amex, Nasdaq, and NYSE. Supra note 4. The NYSE Arca's proposed rule change was noticed by the Commission subsequent to the date the commenters submitted their comment letters.

5

transactions in securities for which settlement is effected by the physical delivery of securities certificates thereby reducing costs, risks, and delays associated with physical settlement. The SIA also contended that by increasing the number of DRS-eligible securities, the proposed rule change is an important step in reducing the number physical certificates, a goal the SIA has long supported in its efforts to promote immobilization and dematerialization.

Computershare, a registered transfer agent, stated that the proposed rule change will help immobilize and eventually dematerialize certificates in the U.S. market, which it believes will result in benefits such as cost savings, increased efficiency, more accurate and timely trade settlements, and reduced risk of loss for investors. Computershare noted however that some challenges remain to be overcome in the broker-dealer community before these benefits can be realized. For example, Computershare contended, among other things, that broker-dealers are not sufficiently educating their employees or their customers about the inherent risks associated with owning certificates or the benefits of owning in DRS. In addition, Computershare stated that certain current industry processing practices also need to be changed. Specifically, it believes that the industry should "default to DRS," a process whereby customers of broker-dealers would obtain only a statement of their positions held on the issuer's records rather than a certificate unless the customer contacted the issuer's transfer agent directly to obtain a certificate. Computershare urged the Commission to review and modify current regulation to address these issues.

IV.    Discussion

Section 6(b)(5) of the Act requires, among other things, that the rules of an exchange be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating,

6

clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest.[12] For the reasons described below, the Commission finds that the rule change is consistent with Section 6(b)(5) of the Act.

The use of securities certificates has long been identified as an inefficient and risk-laden mechanism by which to hold and transfer ownership.[13] Because securities certificates require manual processing, their use can result in significant delays and expenses in processing securities transactions and present the risk of certificates being lost, stolen, or forged. Many of these costs and risks are ultimately borne by investors.[14] Congress has recognized the problems and dangers that the use of certificates presents to the safe and efficient operation of the U.S. clearance and settlement system and has given the Commission responsibility and authority to address these issues.[15]

Consistent with its Congressional directives, in its efforts to improve efficiencies and decrease risks associated with processing securities transactions, the Commission has long advocated a reduction in the use of certificates in the trading environment by immobilizing or

---

[12]     15 U.S.C. 78f(b)(5).

[13]     Securities Exchange Act Release No. 49405 (March 11, 2004), 69 FR 12922 (March 18, 2004), [File No. S7-13-04] (Securities Transaction Settlement Concept Release).

[14]     Id.

[15]     15 U.S.C. 78q-1(a)(2)(A). Congress expressly envisioned the Commission's authority to extend to all aspects of the securities handling process involving securities transactions within

7

dematerializing securities and has encouraged the use of alternatives to holding securities in

certificated form. Among other things, the Commission has approved the rule filings of self-

regulatory organizations that require their members to use the facilities of a securities depository

for the book-entry settlement of all transactions in depository-eligible securities[16] and that

require any security listed for trading must be depository eligible if possible.[17] More recently the

Commission has approved the implementation and expansion of DRS.[18]

---

the United States, including activities by clearing agencies, depositories, corporate issuers, and
transfer agents. See S. Rep. No. 75, 94th Cong., 1st Sess. at 55 (1975).

[16]    Securities Exchange Act Release No. 32455 (June 11, 1993), 58 FR 33679 (June 18,
1993)(order approving rules requiring members, member organizations, and affiliated members
of the New York Stock Exchange, National Association of Securities Dealers, American Stock
Exchange, Midwest Stock Exchange, Boston Stock Exchange, Pacific Stock Exchange, and
Philadelphia Stock Exchange to use the facilities of a securities depository for the book-entry
settlement of all transactions in depository-eligible securities with another financial
intermediary).

[17]    Securities Exchange Act Release No. 35798 (June 1, 1995), 60 FR 30909 (June 12,
1995), [File Nos. SR-Amex-95-17; SR-BSE-95-09; SR-CHX-95-12; SR-NASD-95-24; SR-
NYSE-95-19; SR-PSE-95-14; SR-PHLX-95-34] (order approving rules setting forth depository
eligibility requirements for issuers seeking to have their shares listed on the exchange).

[18]    In 1996, the NYSE modified its listing criteria to permit listed companies to issue
securities in book entry form provided that the issue is included in DRS. Securities Exchange
Act Release No. 37937 (November 8, 1996), 61 FR 58728 (November 18, 1996), [File No. SR-
NYSE-96-29]. Similarly, the NASD modified its rule to require that if an issuer establishes a
direct registration program, it must participate in an electronic link with a securities depository in
order to facilitate the electronic transfer of the issue. Securities Exchange Act Release No.
39369 (November 26, 1997), 62 FR 64034 (December 3, 1997), [File No. SR-97-51]. On July
30, 2002, the Commission approved a rule change proposed by the NYSE to amend NYSE
Section 501.01 of the NYSE Listed Company Manual to allow a listed company to issue
securities in a dematerialized or completely immobilized form and therefore not send stock
certificates to record holders provided the company's stock is issued pursuant to a dividend
reinvestment program, stock purchase plan, or is included in DRS. Securities Exchange Act
Release No. 46282 (July 30, 2002), 67 FR 50972 (August 6, 2002), [File No. SR-NYSE-2001-
33].

8

While the U.S. markets have made great progress in immobilization and dematerialization for institutional and broker-to-broker transactions, many industry representatives believe that the small percentage of securities held in certificated form (mostly by retail customers of broker-dealers) impose unnecessary risk and disproportionately large expense to the industry and to investors. In an attempt to address this issue, NYSE's rule change, along with those of Amex and Nasdaq, should help expand the use of DRS. As a result, risks, costs, and processing inefficiencies associated with the physical delivery of securities certificates should be reduced, and the perfection of the national market system should be promoted. Additionally, those investors holding securities in listed securities covered by the rule change that decide to hold their securities in DRS should realize the benefits of more accurate, quicker, and more cost-efficient transfers; faster distribution of sale proceeds; reduced number of lost or stolen certificates and a reduction in the associated certificate replacement costs; and consistency of owning in book-entry across asset classes.

The Commission realizes that some issuers and transfer agents may bear expenses related to complying with the rule change. In order to make a security DRS-eligible, issuers of listed companies must have a transfer agent which is a DRS Limited Participants.[19] In order to make an issue DRS-eligible, issuers may need to amend their corporate governing documents to permit the issuance of book-entry shares. The Commission believes, however, that the long-term benefits of increased efficiencies and reduced risks afforded by DRS outweigh the costs that

---

[19]     For a description of DTC's rules relating to DRS Limited Participants, see Securities Exchange Act Release Nos. 37931 and 41862. Supra note 5.

9

some issuers and transfer agents may incur. Furthermore, the time frames built into the proposal should allow issuers sufficient time to make any necessary changes to comply with the rule change.

While the propose rule change should significantly reduce the number of transactions in securities for which settlement is effected by the physical delivery of securities certificates, the proposed rule change will not eliminate the ability of investors to obtain securities certificates provided the issuer has chosen to issue certificates. Such investors can continue to contact the issuer's transfer agent, either directly or through their broker-dealer, to obtain a securities certificate.

Accordingly, for the reasons stated above the Commission finds that the rule change is consistent with NYSE's obligation under Section 6(b) of the Act to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest.

V.    Conclusion

On the basis of the foregoing, the Commission finds that the proposed rule change is consistent with the requirements of the Act and the rules and regulations thereunder applicable to a national securities exchange and, in particular, with the requirements of Section 6(b)(5) of the Act and the rules and regulations thereunder.

10

IT IS THEREFORE ORDERED, pursuant to Section 19(b)(2) of the Act, that the proposed rule change (File No. SR-NYSE-2006-29) be and hereby is approved.

For the Commission by the Division of Market Regulation, pursuant to delegated authority.[20]

Nancy M. Morris
Secretary

---

[20]    17 CFR 200.30-3(a)(12).