**EXHIBIT F**

# FOX LAW OFFICES, P.A.
2 VILLAGE HILL LANE, APT. #3
NATICK, MA 01760
Telephone (508) 647-4907
Facsimile: (508) 647-4907

**VIA FAX (212) 855-3215 and e-mail sgeigel@dtcc.com**

Susan Geigel, Director
The Depository Trust Company
55 Water Street
New York, NY 10041-0099

    In re: Olde Monmouth Stock Transfer Co., Inc.

Dear Ms. Geigel:

This office represents Olde Monmouth Stock Transfer Co., Inc. which received a letter from you, dated June 22, 2006, denying their application to the FAST Program. I am writing to you in that regard.

As I understand the situation, DTCC has **required** that all issuers join the FAST program. This, in turn, necessitates that the stock transfer agents for the issuers be FAST agents. Since an issuer must, by your requirements, be FAST eligible, it cannot have a stock transfer agent which is not in the program. Thus, by definition, a denial by you of FAST agent status for my client is tantamount to putting them out of business. Given that the requirement for using the FAST program is first mandated by DTCC, it would appear that some critical attention should be being given to the second step, the appointment of FAST agents, given the extreme seriousness of a negative decision. This is, of course, exacerbated by the time limitations being imposed by DTCC. At this point, several issuers have already moved their stock transfer service, and many more have threatened to do so within the next week or two. Incoming business has been terminated. Immediate remedial action is required.

In your letter, you reference the deficiencies noted by the SEC during the last three examinations, as the grounds for the denial. However, as a matter of law, it would be necessary for the deficiencies cited:
    1. to bear on and adversely impact the duties of a FAST agent; and
    2. Assuming that they do impact those duties, to remain

Susan Geigel, Director
July 5, 2006
Page 2

uncorrected.

We have carefully examined the deficiencies cited, as well as the responses by my client, and the speed with which the deficiencies were addressed and corrected. Attached is a comparative analysis of the deficiencies cited, the response measures taken together with the time within which those deficiencies were corrected, and, by inference, the fact that the deficiencies cited were, in fact corrected, since they were not re-cited in a subsequent examination.

I submit that none of the deficiencies cited bears on the duties of my client as a FAST agent. There was never any deficiency with respect to the security or safekeeping of tradeable securities; the superficially related deficiencies were as to:
    1. "blank certificates", only, not tradeable securities such as would be involved in the FAST program; and
    2. "written procedures" relating to the safekeeping, although the actual safekeeping (as opposed to the written procedures) was not found to be deficient, again indicating that the safekeeping of the FAST securities would meet requirements.
And, those deficienies (as well as all other deficiencies) were speedily and completely corrected.

I further submit that reliance upon examinations many years old, without determining whether those deficiencies have been corrected, and without reference to whether the deficiencies, if uncorrected, would have any bearing on my client's duties as a FAST agent, and without any physical examination of the premises with a view to the safekeeping security actually in place, constitutes an unreasonable basis for your decision, which is daily causing substantial financial harm to my client.

Given that the position in the securities market held by DTCC is so central, and given that the FAST Program is a DTCC initiative, it follows that DTCC must have appropriate procedures to obviate any improper restraint of trade inherent in its denying of FAST agent status. This is clearly not the case here.

Susan Geigel, Director
July 5, 2006
Page 3


It does not appear that Rule 22 applies to my client, a stock transfer agent, as it does not fall within the definition of those eligible to appeal. Notwithstanding that, however, an appeal is hereby demanded; please treat this letter as such an Appeal filing. And, given the deadlines being imposed by DTCC, as well as the mounting daily financial losses to my client, an immediate hearing is demanded.

Yours truly,
FOX LAW OFFICES, P.A.

By: Richard C. Fox

cc: Olde Monmouth Stock Transfer Co., Inc.

| SEC COMMENT LETTER DATED SEP 8, 1998 | & OMST RESPONSE LETTER DATED OCT 6, 1998 | |
|---|---|---|
| **COMMENTS** | **RESPONSE/CORRECTION** | **EFF DATE** |
| **Rule 17Ad-6(a)(2)** | | |
| (a) Record keeping - inaccurate counting of items received for transfer | Implemented computer software adjustment **Correction Complete** | 09/15/98 |
| (b) & (c) Did not show record of the number of Non-Routine items received during month, the number of items turned around and number of items remaining at the end of a month | Inaccurate comment - we forwarded hard copies of existing Logs accounting for same **No Correction Necessary** | 10/06/98 |
| Additional - under counted items received from DTC by not counting each line item | Implemented software adjustment to accurately count individual line items **Correction Complete** | 09/15/98 |
| **Rule 17f-1(c)** | | |
| Two instances of not reporting Lost/Stolen Securities | Implemented change in procedure by attaching Form X-17F-1A directly to Affidavit of Lost/Stolen certificates so that reporting is simultaneous **Correction Complete** | 09/15/98 |

| SEC COMMENT LETTER DATED JUL 31, 2001 | & OMST RESPONSE LETTER DATED AUG 21, 2001 | |
|---|---|---|
| **Rule 17Ad-12(a)** | | |
| Review of entire month's canceled certificates showed 27 canceled certificates were not stamped Canceled | New procedures implemented assigning separate individual to review all canceled certificates for proper stamping **Correction Complete** | 08/21/01 |
| **Rule 17f-2(a)** | | |
| Review showed two employees not fingerprinted | All employees are routinely fingerprinted submitted copies of fingerprint cards as part of response **No Correction Required** | 08/21/01 |

| SEC COMMENT LETTER DATED SEP 11, 2003 | & OMST RESPONSE LETTER DATED OCT 8, 2003 | |
|---|---|---|
| **Rule 17Ad-6(a)(6)** | | |
| Review showed eight written inquiries did not show date of the response | Implemented new procedure of stamping inquiries with pre-printed blocks for date and manner of response **No Correction Required** | 10/08/03 |
| **Rule 17Ad-12** | | |
| Failed to maintain adequate written procedures and internal controls in preventing the destruction, theft or any other loss of blank certificates stored in open unsecured area | Contacted local contractor to gate & lock blank certificates stored on racks | 10/08/03 |
| | Further improvements followed **Correction Complete** | 09/29/05 |

| Rule 17Ad-15(c) | | |
|---|---|---|
| Written procedures and guidelines did not specify reasons for rejections for Signature Guarantee or procedures to follow in the event a rejection is required | Procedures re-written and submitted to SEC as part of our response<br>**Correction Complete** | 10/08/03 |
| **Rule 17Ad6(a)(2)** | | |
| Inaccurate accounting of line item count on SCL's | Previous internally implemented software adjustment not accurate. Retained outside software to make appropriate adjustment<br>**Correction Complete** | 09/29/05 |
| **Rule 17Ad6(a)(6)** | | |
| Failed to maintain written response for two items in month | The two items were not identified in SEC comment Our policy covers proper handling<br>**No Correction Necessary** | 09/29/05 |
| Failed to maintain correspondence confirming date DTC notified of an assumption or termination of TA services | Review of notifications showed that all reports were dated - notification date is effective date<br>**No Correction Needed** | 09/29/05 |
| **Rule 17Ad-12** | | |
| Failed to maintain adequate written procedures with regard to safeguarding funds & securities | (a) procedures re-written and supplied to SEC<br>(b) acquired fire proof vault<br>(c) removed all blank certificates from wall racks and stored locked and bolted cabinets<br>**Correction Complete** | 09/29/05 |
| **Rule 17Ad-19** | | |
| Failed to maintain adequate written procedures with regard to cancellation & destruction of certificates | Procedures re-written and supplied to SEC<br>**Correction Complete** | 09/29/05 |
| **USA Patriot Act Sect 352** | | |
| Did not develop or implement procedures to check shareholder account names and addresses against OFAC list | Submitted SEC comment to our SEC Attorney who advised us that OMST is not, by definitions contained therein, subject to Sect 352 - however, we did additionally request guidelines from the SEC if we were required to comply<br>**No Response From SEC Indicates Non Violation** | 09/29/05 |

## FOX LAW OFFICES, P.A.
## 2 VILLAGE HILL LANE, #3
## NATICK, MASSACHUSETTS 01760

### FAX COVER SHEET

TO: SUSAN GEIGEL, DIRECTOR

COMPANY: DEPOSITORY TRUST COMPANY

RECEIVING FAX: (212) 855-3215

FROM: RICHARD C. FOX

OFFICE PHONE: (508) 647-4907

OFFICE FAX: (508) 647-4907

NUMBER OF PAGES, INCLUDING COVER SHEET: 6

REMARKS: