# EXHIBIT N

# Olde Monmouth Stock Transfer Co., Inc.

200 Memorial Parkway, Atlantic Highlands, NJ 07716
Tel. (732) 872-2727 - Fax (732) 872-2728

November 14, 2006

Isaac Montal
DTCC
55 Water Street
New York, NY 10044

Dear Mr. Montal,

Per the transmittal of our attorney, Richard Fox, of your request we are responding to the proposed Rule Change No. SR. 2006-16 relating to DTCC's Transfer Agent FAST eligibility requirements on an item by item basis. We understand that these are potential requirements and may be challenged or commented on by the STA and other bodies, however, we are able to abide by all of the proposed changes, although that may ultimately not be necessary.

1)   Olde Monmouth Stock Transfer Co., Inc. (OMST) is a Registered Transfer Agent with the Commission and has provided DTCC with evidence of such (Exhibit A). OMST does and will follow all applicable rules under The Securities Exchange Act of 1934 as well as all other applicable Federal and State Laws, Rules, and Regulations. In addition, OMST will provide DTCC with a written notification within three business days if its Regulator has taken any action against us with respect to an alleged violation of such Laws, Rules or Regulations.

2)   OMST has executed and fulfilled the requirements of the appropriate form of Balance Certificate Agreement with DTCC (Exhibit B).

3)   OMST represents and warrants to DTCC, among other things, that it is following the Rules and Procedures specified by OFAC and is in compliance with all Laws and Rules under the Exchange Act. OMST will provide

DTCC with a written notification within three business days if (a) our Regulator has notified us with respect to any issues of non-compliance or alleged violations in this regard, or (b) if we notify our Regulator with respect to any violations or issues of non-compliance in this regard.

4) OMST is providing the name and CUSIP of one issue it wishes to add to the FAST program immediately. It is Conversion Services International, Inc., CUSIP# 21254R 20 8. This issue trades on an exchange registered under Section 6 of the Exchange Act.

5) OMST has signed and fulfilled requirements of the Operational Criteria for the FAST Transfer Agent Processing (Exhibit C). OMST will comply with all applicable provisions of DTCC's Operational Arrangements as amended from time to time.

6) On being accepted as a FAST transfer agent, OMST will send no less than two employees, at least one of which will be a Corporate Officer, to complete training by DTCC on FAST functionality.

7) OMST has completed an application and provided DTCC with evidence of such (Exhibit D) that it will carry similar coverage to that of a Banker's Blanket Standard Form 24 in proportion to its transaction volume; Specifically, $10,000,000 of coverage with a deductible of no more than $50,000. As evidenced by Exhibit D, the insurance coverage shall identify DTCC as a Loss Payee whose rights shall not be invalidated by any act or neglect of the insured.

8) OMST has completed applications for (I) Errors and Omissions Insurance of $1,000,000 with a deductible of no more than $25,000 and has shown evidence of such (Exhibit H) and. (ii) "In Transit" Insurance of $10,000,000 (Exhibit I). The Errors and Omission coverage identifies DTCC as an additional insured. The "In Transit" coverage identifies DTCC as a loss payee and shall not be invalidated by any act or neglect of the insured.

9) OMST will notify DTCC immediately (within 5 business days) of notice of any threatened or actual lapse in insurance coverage or change in business practices, such as increasing volumes, or other business changes that would result in OMST requiring additional insurance coverage as outlined in paragraph 8 of DTCC's proposed rule change No. SR-2006-16. Such notice

shall be delivered to DTCC, Inventory Management 1SL, 55 Water ST, New York, NY 10041 and with a copy to DTCC, General Counsel's Office 55 Water St, 22nd FL, New York, NY 10041.

10) OMST will notify DTCC of the new or substitute policy for all required insurance at least 30 days prior to any expiration or change in insurance limits of a previous insurance policy.

11) OMST, in order to facilitate paragraph 9 of the proposed Rule change SR-2006-16 and as evidenced in exhibits D, H & I, states that the insurance coverage assures that the insurance provider must notify DTCC of notice of any threatened or actual lapse in any coverage requirements.

12) OMST will establish and maintain electronic communications with DTCC to balance FAST positions on a daily schedule. This will include direct connectivity with DTCC and in the manner required by DTCC.

13) OMST will provide, on an annual basis, within ten business days of filing with the SEC, an Accountants report certifying that we comply with all of DTCC's requirements.

14) OMST safeguards all the securities as stated under SEC Rule 17Ad-12, and with additional DTCC requirements:

    (1) OMST has a theft and fireproof safe of no less than 350 pounds and with a minimum anti-theft rating of UL 687 and a minimum fire rating of UL 72.

    (2) OMST has installed through a qualified contractor a centralized theft and fire monitoring system protecting the entire premises.

    (3) Certificates not in use are and will be maintained in the locked safe, locked files, or locked certificate vault.

    (4) Certificates are not and shall not be left unattended unless in a locked safe.

15) OMST's personnel with access to the safe and the codes for the centralized monitoring system are governed by SEC Rule 17f-2.

16) OMST has provided DTCC with copies of its two most recent examination reports as well as any follow up correspondence and copies of any additional examination reports (Exhibit G)

17) DTCC has the right to visit and inspect our facilities, books and records during regular business hours.

18) OMST has been coded as "Paperless" on DTCC's Transfer Agent Master File as of 10/24/06.

19) OMST will comply.

20) OMST will not leave any FAST out-of-balances for longer than a 24 hour period.

21) N/A

22) N/A

Sincerely,

John Christopher Troster
President





OFFICE OF
THE SECRETARY

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON. D.C. 20549

January 9, 1992

-------------------------------------

IN THE MATTER OF                        :
                                        :
                                        :
OLD MONMOUTH STOCK TRANSFER, INC.  :   ORDER GRANTING
22 Claridge Drive                       :   REGISTRATION PURSUANT
Middletown, NJ    07748                 :   TO SECTION 17A(c) OF
                                        :   THE SECURITIES EXCHANGE
                                        :   ACT OF 1934
FILE NO. 84-1986                        :
-------------------------------------

OLD MONMOUTH STOCK TRANSFER, INC., hereinafter referred to as the Applicant, having made application with the Commission for registration as a transfer agent pursuant to Section 17A(c) of the Securities Exchange Act of 1934 (the "Act") on January 3, 1992, and

The Commission having found that it is necessary and appropriate in the public interest and for the protection of investors to make Applicant's application for registration as a transfer agent effective sooner than the forty-fifth day after receipt of the application by the Commission, as provided in Section 17A(c) of the Act,

It is hereby ordered that the Applicant's registration be and hereby is granted this 9th day of January 1992.

FOR THE COMMISSION, by the Office of Filings, Information and Consumer Services pursuant to delegated authority.

Jonathan G. Katz
Secretary



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

Office of
Filings, Information &
Consumer Services

January 13, 1992

John Anthony Troster, President
Old Monmouth Stock Transfer, Inc.
22 Claridge Drive
Middletown, NJ  07748

Re:  TA-1 - Old Monmouth Stock Transfer, Inc.
     File No. 84-1986

Dear Registrant:

Your application for registration with the Commission as a transfer agent has been declared effective January 9, 1992, and assigned File Number 84-1986. You will receive a copy of the order within the next 3-4 weeks.

Amendments to correct inaccurate, incomplete or misleading information set forth in the application, as filed, must be filed in accordance with Rule 17Ac 2-1(c) (17 C.F.R. 240.17Ac 2-1(c)). It is important that you retain, in your own records for future reference, a copy of the application and all amendments.

Within ten days of the above effective date of your registration, please communicate with the Commission's New York Regional Office (address enclosed) to arrange a post-effective registration conference between yourself and the staff of that office.

Your name will be placed on our mailing list to receive all releases relating to rules, regulations and policy decisions of interest to transfer agents.

If we can be of further assistance, please do not hesitate to contact the undersigned on extension (202) 272-7272.

Sincerely,


Saundra P. Summers, Chief
Branch of Registrations and Examinations

Signed By: _____
                              , Examiner

SPS/jj81m13

Exhibit B

Exhibit 2(a)

[ CERTIFICATE AGREEMENT

by and between *Olde Monmouth* (Transfer Agent) and
[C).                *Stock Transfer Co; Inc*.

desire to improve the mechanisms for the registration of
the name of DTC's nominee, Cede & Co., for which Transfer
insideration of the premises and the mutual covenants herein
ws:

at:

(a) The term "Balance Certificate" shall mean a certificate registered in the name
of Cede & Co. which evidences: (i) record ownership by Cede & Co. of the number of shares or
units or the amount of obligations (such as face value for debt issues) of the issue shown from
time to time on the records of the issuer thereof, or (ii) the duties of the issuer thereof to perform
the obligations shown from time to time on the records of the issuer thereof, which records are
maintained by Transfer Agent, as being evidenced by such certificate, which certificate shall be
retained by Transfer Agent. Each Balance Certificate shall be registered:

(i)     If it is an equity security as follows: "Cede & Co. for the number of [insert
description of interests represented by certificate] shown from time to time on the
records of the issuer hereof as represented by this certificate."

(ii)    If it is a debt security, in a manner which obligates the issuer to make payment to
Cede & Co. (e.g. "***** hereby promises to pay Cede & Co. *****") and which
describes the sum to be to Cede & Co. as the "sum shown from time to time on the
records of the issuer hereof as represented by this [insert description of instrument as
used in the actual instrument e.g. this debenture or this bond]".

(b) The term "issue" shall mean a class or series of: (i) equity security issued by a person,
which evidences a share, participation or other interest in property or in an enterprise,
or (ii) instruments issued by a person which evidence the duties of that person to
perform obligations, for which Transfer Agent acts as transfer agent, and which is
listed on Exhibit A, as it may be amended in writing from time to time by the parties.

(c) The term "transfer agent" shall mean a person who engages on behalf of an issuer in,
among other things, registering the transfer of certificates, including, but not limited to, an
authenticating trustee or authenticating agent.

(d) The term "registrar" shall mean a person who engages on behalf of an issuer in
monitoring the issuance of securities with a view to preventing unauthorized issuance.

(e) The terms "security" and "issuer" shall have the meanings specified in the New York
Uniform Commercial Code.

(f) The term "certificate" shall mean a security.

(g) The term "nominee certificate" shall mean a security of an issue registered in the

name of Cede & Co.

(h) The term "non-nominee certificate" shall mean a security of an issue registered in a name other than Cede & Co.

2. From time to time DTC will deliver to Transfer Agent nominee certificates or non-nominee certificates. Transfer Agent shall accept delivery of such certificates and shall register the transfer thereof and otherwise act in respect thereof as provided herein.

3. (a) Immediately following execution of this Agreement or as soon thereafter as may be agreed for the convenience of the parties, DTC shall deliver to Transfer Agent nominee certificates and/or non-nominee certificates for each issue. Transfer Agent shall cancel all such certificates and issue in place of such certificates of each issue one or more Balance Certificates for such issue. All such Balance Certificates shall be retained by Transfer Agent. Transfer Agent shall confirm to DTC the number of shares or units or the amount of obligations evidenced by each Balance Certificate in the manner described in paragraph 4. Transfer Agent shall furnish DTC with a sample Balance Certificate for each issue if requested by the Corporation.

(b) On each day on which Transfer Agent is open for business and on which it receives from DTC (i) non-nominee certificates with instructions to register the transfer thereof into the name of Cede & Co. or nominee certificates and instructions to include the shares, units or obligations evidenced by such non-nominee certificates or nominee certificates in the Balance Certificate for the issue represented by such certificates, or (ii) instructions to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. or to issue a certificate in the name of Cede & Co. evidencing shares, units or obligations then evidenced by a Balance Certificate, Transfer Agent shall:

(1) increase or reduce the number of shares or units or the amount of obligations evidenced by the Balance Certificate as required so that it shall thereafter evidence a number of shares or units or amount of obligations equal to:

(x) the number of shares or units or amount of obligations evidenced by the balance Certificate prior to receipt of such instructions, *plus*

(y) the number of shares or units or amount of obligations evidenced by the certificates received from DTC, *less*

(z) the number of shares or units or amount of obligations subject to the instructions referred to in clause (ii) above; and

(2) register the transfer of shares, units or obligations and issue certificates registered in the name of Cede & Co. pursuant to any instructions referred to in clause (ii) above and deliver to or make available for pick-up by DTC certificates for such shares, units or obligations within the shorter of the period of time as either: (x) agreed to by the parties hereto, or (y) required by the rules of the U.S. Securities and Exchange Commission (the "Commission").

(c) Transfer agent shall cause all Balance Certificates to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for

registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

Transfer Agent agrees that the foregoing provisions of this subparagraph constitute as to the Transfer Agent a timely written notice of an adverse claim by DTC as to each such certificate regardless of whether the legend actually appears thereon.

Transfer Agent shall, from time to time at DTC's request, cause one or more certificates prepared for delivery to or pick-up by DTC which are registered in the name of Cede & Co. to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

4. Transfer Agent shall confirm to DTC via electronic means the number of shares or units or the amount of obligations evidenced by each Balance Certificate, on a daily or other periodic basis, as DTC may reasonably request.

5. As between DTC and Transfer Agent (including, without limitation, its creditors, lien holders and pledgees), all shares or units or the amount of any obligations evidenced by a Balance Certificate or any other certificate which comes into the possession of Transfer Agent pursuant to the provisions hereof shall be deemed to be the sole property of DTC. Transfer Agent shall not by reason of any provision of this Agreement or the delivery to it of certificates in accordance with the provisions hereof obtain any legal or equitable right, title or interest in or to such certificates or the shares, units or obligations evidenced by such certificates.

6. Transfer Agent shall at all times hold all Balance Certificates in its secured area at 200 Memorial Parkway Atlantic Highlands, NJ 07716

7. (a) Notwithstanding any event whatsoever, other than an event described in subparagraph (b) of this paragraph, in the proviso to paragraph 9 hereof or in paragraph 10 hereof, Transfer Agent shall, upon the request of DTC, deliver to or make available for pick-up by DTC a certificate or certificates evidencing all the shares, units or obligations evidenced by any Balance Certificate within 24 hours after receipt of such request, provided, however, that such certificate, or certificates shall not include the Balance Certificate, shall be registered in the name of Cede & Co. and shall specify the number of shares or units or the amount of obligations evidenced thereby without reference to any other document or record.

(b) Transfer Agent shall notify DTC immediately after it determines that any security received by it from DTC, deliverable by it to DTC or held by it pursuant to the provisions of this Agreement has been lost, apparently destroyed or wrongfully taken or is unaccounted for by

Page 30 of 36

Transfer Agent ("Missing Security"). In such event if the Missing Security is a Balance Certificate, Transfer Agent shall immediately reduce the number of shares or units or the amount of obligations attributable to the Missing Security to zero and issue in replacement thereof a new Balance Certificate; if the Missing Security is other than a Balance Certificate, Transfer Agent shall not be obligated to deliver the Missing Security or the equivalent thereof within the time limitations agreed upon pursuant to paragraphs 3(b)(2), 7(a) and/or 14 and DTC and Transfer Agent shall seek to obtain the replacement thereof in accordance with the custom and usage of the financial industry.

8. Transfer Agent represents and warrants that it is insured under an insurance policy in the form of Bankers Blanket Bond Standard Form 24, or similar coverage, in the minimum amount of $10,000,000, or such greater amount as required pursuant to DTC's minimum requirements for FAST transfer agents as such requirements are approved by the Commission (the "Minimum Requirements"), which insurance covers any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent has delivered to DTC a writing signed by its insurance underwriter(s) which evidences, to DTC's satisfaction, the effectiveness of such insurance coverage in such amount, and Transfer Agent covenants and agrees to maintain at its expense such insurance (or a comparable plan of insurance) in no less amount and with like coverage during the term of this Agreement, subject to its right to cancel, decrease or limit the same after giving written notice to DTC of any such cancellation, decrease or limitation at least 30 days prior to the effective date thereof. Transfer Agent shall prior to the first anniversary of the date of this Agreement and prior to each succeeding anniversary of this Agreement during its term deliver to DTC a writing signed by its insurance underwriter(s) which shall evidence the amount and coverage of Transfer Agent's insurance and shall state, to DTC's satisfaction, whether or not such insurance covers, in a manner equivalent to Bankers Blanket Bond Standard Form 24, any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent agrees that whenever Transfer Agent is responsible pursuant to the terms of this Agreement for the shipment of securities, Transfer Agent will either provide adequate insurance coverage or require such coverage from the carrier of the securities, such coverage to cover losses of securities while in transit to DTC and until received by DTC, and that the amount of such coverage shall equal or exceed 110 percent of the fair market value of securities so shipped by Transfer Agent. Transfer Agent shall, at DTC's request furnish DTC with documentation evidencing the amount of coverage of the insurance provided by Transfer Agent for any such shipment of securities. In addition, Transfer Agent represents and warrants that it is in compliance with all insurance requirements as set forth in pursuant to the Minimum Requirements.

9. Transfer Agent agrees that it shall not for any reason, including the assertion of any claim, right or lien of any kind refuse or refrain from delivering any certificates to or as directed by DTC in accordance with the terms of this Agreement; provided, however, that if Transfer Agent shall be served with a notice of levy, seizure or similar notice, or order or judgment, issued or directed by a governmental agency or court, or an officer thereof, having jurisdiction over Transfer Agent, which on its face affects a Balance Certificate or other certificate in the possession of Transfer Agent pursuant to the provisions hereof, Transfer Agent may, pending further direction of such governmental agency or court, refuse or refrain from delivering or making available to DTC in contravention of such notice of levy, seizure or similar notice or order or judgment certificates evidencing shares, units or obligations not greater in number or amount than the shares, units or obligations which are affected by such notice of levy, seizure or similar notice, or order or judgment on the face thereof.

10. If Transfer Agent shall be obligated to deliver to or make available for pick-up by

DTC certificates pursuant to the provisions of paragraph 3(b)(2), paragraph 7(a) and/or paragraph 14 hereof which certificates shall in the aggregate have a current market value in excess of the maximum amount of the Bankers Blanket Bond specified in paragraph 8 hereof, Transfer Agent shall not be obligated to meet the time requirements specified in said paragraphs 3(b)(2), 7(a) and 14 but shall instead deliver or make available such certificates as promptly as possible without creating and maintaining prior to delivery to DTC certificates, other than any Balance Certificate, having a value in excess of said amount.

11. If Transfer Agent shall receive instructions from DTC to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co., the receipt of such instructions shall constitute a presentation by DTC of the Balance Certificate to Transfer Agent under applicable law and DTC shall thereby be deemed to have made the same warranties as it would have made under applicable law if it had physically presented the Balance Certificate to Transfer Agent. DTC indemnifies and holds Transfer Agent harmless against all damages, losses, costs and expenses (including counsel fees) suffered or incurred by Transfer Agent by reason of Transfer Agent's registering a transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. pursuant to instructions received from DTC by Transfer Agent provided such instructions conform to the procedures in accordance with which DTC from time to time authorizes Transfer Agent to act.

12. Except as specifically provided herein, or otherwise agreed by the parties hereto, the provisions of applicable law shall govern all registrations of transfer of securities pursuant hereto and pursuant to the instructions of DTC.

13. Transfer Agent may at any time, without any resulting liability to itself, act under this Agreement in reliance upon the signature of any person which it believes in good faith to have authority to act for DTC with respect to this Agreement, but Transfer Agent shall not be required so to act, and may in its discretion at any time require such evidence of the authenticity of such signature and of the authority of the person acting for DTC as may be satisfactory to the Transfer Agent.

14. This Agreement (i) may be terminated by either party: (a) immediately, upon written notice to the other party of a breach of the terms of this Agreement, the Minimum Requirements, or any of the terms of the documents incorporated therein by reference, or (b) upon 30 business days' written notice to the other party without cause; (ii) shall terminate with respect to any issue upon Transfer Agent's ceasing to be a transfer agent therefor, in which event Transfer Agent shall give DTC prompt written notice thereof; (iii) may be terminated by Transfer Agent with respect to any issue for which Transfer Agent is the registrar and for which Transfer Agent ceases to be a registrar upon its giving written notice thereof to DTC, unless the issuer thereof shall not require that there be a registrar therefor or (iv) may be terminated by Transfer Agent with respect to any issue in respect of which Transfer Agent has entered into a special agreement with any registrar or co-registrar or co-transfer agent therefor, upon termination of such special agreement upon its giving written notice thereof to DTC.  In the event of the termination of this Agreement or termination of this Agreement as to any issue by reason of the foregoing provisions of this paragraph or the amendment of Exhibit A. it shall be deemed that Transfer Agent has received as of the time of such termination a request by DTC within the meaning of paragraph 7(a) with regard to (i) all Balance Certificates subject hereto if this Agreement is terminated or (ii) the Balance Certificate for any issue in respect of which this Agreement shall terminate.

15. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

16. All notices, instructions, requests and other communications required or contemplated by this Agreement shall be in writing, shall be delivered by hand or sent, postage prepaid, by certified or registered mail, return receipt requested, and shall be addressed to Transfer Agent at:

[Insert Transfer Agent's address for notice]    200 Memorial Parkway
Atlantic Highlands, NJ 07716

and to DTC at:

> DTC
> Inventory Management – 1SL
> 55 Water Street
> New York, New York 10041

And with a copy to:

> DTC
> General Counsel's Office – 22nd Floor
> 55 Water Street - 22nd Floor
> New York, New York 10041

Notice given as aforesaid shall be deemed given upon the receipt thereof. Either of the parties may change the address to which notices shall be sent upon notice to the other in the manner hereinabove provided.

17. (a) Transfer Agent agrees to indemnify and hold harmless DTC from and against any and all losses, liabilities, claims, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against DTC by reason of Transfer Agent's negligent action or negligent failure to act; provided, however, that should Transfer Agent be held to be negligent hereunder and should DTC be held to have been contributorily negligent in connection therewith, then the aforementioned liability shall be shared between Transfer Agent and DTC in such proportion as maybe set forth in any decision of a court or other tribunal having jurisdiction, unless Transfer Agent and DTC shall agree in writing to share such liability in a different proportion.

(b) DTC agrees to indemnify and hold harmless Transfer Agent from and against any and all losses, liabilities, claims, taxes, assessments, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against Transfer Agent as a result of following the instructions of DTC in connection with the performance of its duties under this Agreement where Transfer Agent has acted in good faith without negligence.

18. The Transfer Agent represents and warrants to DTC, among other things, that it is in compliance with: (a) all applicable provisions of the Securities Exchange Act of 1934, and the rules and regulations promulgated thereunder, and (b) with the rules and procedures specified by the Office of Foreign Asset Control (OFAC).

19. The Transfer Agent agrees to maintain full responsibility, and remain fully liable, for the actions of a processing agent, or others, employed by the Transfer Agent to act as agent for, and in the name of the Transfer Agent to perform the acts described herein, or in the Minimum Requirements (and such other requirements incorporated by reference thereto).

20. The Transfer Agent represents and warrants that it presently complies, and agrees that

Page 33 of 36

it shall maintain compliance, with all requirements as set forth pursuant to this Agreement and the Minimum Requirements, including such requirements that are incorporated by reference.  Unless otherwise specified in this Agreement, or the Minimum Requirements, Transfer Agent agrees to immediately notify DTC within two (2) calendar days of its failure to maintain such compliance.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Olde Monmouth Stock Transfer          THE DEPOSITORY TRUST COMPANY

By: _____          By: _____
Name:  John Christopher Trusto        Name: _____
Title:  Pres. Lot                     Title:
Date:  11-1-06                        Date:

Attest: _____          Attest: _____
Name:  MATTHEW TROSTER                Name:
       VICE PRES.
       11/1/06

**Exhibit C**

Exhibit 2(b)

:eria for FAST Transfer Agent Processing

²low are in addition to the requirements contained in the
between DTC and the FAST transfer agent.

wards a Deposit or Withdrawal Shipment Control List
:the FAST transfer agent for that issue, DTC expects the
those shares to or from DTC's balance position in due
reflect that the shares are "in transfer" until the agent

2.      Prior to confirming the SCL to DTC's balance, the transfer agent must
make certain that all transfer requirements pertaining to the shares being added or
removed to or from the balance have been met, including but not limited to
checking for "stops". If the agent has found some deposited shares are
unacceptable for transfer, the agent indicates via Fast Reject and Confirmation
("FRAC") which "line item(s)" is (are) unacceptable and adjusts the total share
quantity accordingly. The rejected certificates are then returned with the SCL to
DTC.

3.      Although agents are strongly urged not to confirm the SCL until all stops
and other transfer irregularities have been thoroughly reviewed and the SCL
adjusted if necessary, some agents indicate that a further review of deposited
certificates may reveal problems that were not identified by the agent prior to
returning the confirmation copy of the SCL. Therefore, DTC will accept late
adjustments to the confirmed balance but only under the following conditions:

a)      If, within 72 hours of confirmation (i.e. within 72 hours after DTC
receives the agent's on-line confirmation via FRAC), the agent returns the
physical certificates they now find unacceptable, or

b)      If, within 72 hours of confirmation the agent provides DTC with a FRAC
notification, and written documentation, for any confiscated deposit
certificate(s) clearly identifying the Participant involved, the certificate
number(s) and the reason for confiscation, or

c)      If both DTC and the agent mutually agree that a balance is incorrect and
should be adjusted.

Once a deposit or withdrawal SCL has been confirmed and the securities it
represents have been included by DTC on three consecutive Balance
Confirmation Summary Reports (which means that the agent has not notified
DTC of any adjustments described in subparagraphs a and b above), the issuance
by DTC of the fourth Balance Confirmation Summary Report reflecting those
deposited or withdrawn securities is deemed to be the equivalent of the delivery to
DTC of a certificate registered in the name of Cede & Co. upon original issue or

Page 35 of 36

registration of transfer by the issuer.

4.        The transfer agent must confirm the balance position for each FAST issue for which it is the agent by accessing the Fast Balance Confirmation System ("FBCS") and confirming the balance position via the Balance Confirmation Update option. An authorized individual must enter his/her name and job title. All differences should be clearly noted on FBCS. The specific SCL with which the agent disagrees must be identified by its SCL identification number, or by specific reference to the type of transaction that caused the discrepancy.

5.        The transfer agent must agree to provide record date protection on all SCL's dated record date or earlier. DTC uses this information to update its dividend and interest payment file to detect record date missed transfers which result in underpayments requiring research between the agent and DTC.

6.        If the transfer agent has an issue in the FAST program, but the agent is not the paying agent for that issue, the FAST agent acknowledges that DTC should receive the interest or dividend payment due on that issue based on DTC's confirmed FAST balance with the FAST agent, and will, upon notification by DTC of payment discrepancy, agree to actively pursue resolution of any discrepancy which exists between the record of DTC's FAST balance on its books and the records of the paying agent. If the FAST agent cannot agree to this criterion for certain issues, such issues must be removed from the FAST program.

7.        For Participants customer transfers (Withdrawals by Transfer – WTs), the transfer agent must agree to accept automated information from DTC in a DTC approved format and return automated information relating to completed transfers of customer securities in a DTC approved format. As part of the automation process DTC will no longer forward hard copy Transfer Assignment Control Forms (TACFs) to the agent. The agent must imprint on each transferred certificate the unique reference number assigned by each Participant to each transfer.

Please acknowledge your agreement to the above criteria by signing below.

_____
Signature

John Christopher Trosler
Print Name
Pres. / +
Title

Olde Monmouth Stock Transfer
Transfer Agent Name

Please print your name, your title, and the name of the FAST Transfer agent you represent.

05-20-05  16:15  FAX 305 936 9413          LEATHERNECK, INC.                    Ø02

**E-SURETY BROKERAGE, INC.**



21150 NE 38th Avenue, Suite 405
Aventura, FL  33180
(239)
Tel. (941) 405-7344
Fax (941) 405-9274

e-mail: JohnFink@e-surety.com

## APPLICATION

### Transfer/Registrar's Blanket Bond

Applicant Name  _OLDE MONMOUTH STOCK TRANSFER CO., INC._

Address  _200 MEMORIAL PKWY ATLANTIC HIGHLANDS NJ 07716_
    (No.)      (Street)       (City)      (State)    (Zip Code)

Effective Date:
12:01 a.m. on_____to 12:01 a.m. on_____In the Aggregate Limit of Liability of $ _10,000,000_

Date insured was established  _1992_  ☒Current Underwriter_____

1. Insured is a: Sole Proprietorship____ Partnership____ Corporation _X_ Other__

2. Are you a member of The Securities Transfer Association?..........................Yes _X_ No____

3. For all insureds, show the total number of:
   (a) Salaried officers and employees, retained, attorneys and persons provided by employment
       Contractors..........................................................................................  _8_
   (b) Locations (other than the Home Office of the first Named Insured) in the U.S., Canada,
       Puerto Rico, and Virgin Islands..................................................................  _0_
   (c) Locations outside the U.S., Canada, Puerto Rico and Virgin Islands, list below:

   _____
   _____  _0_

4. Complete the following:
                                                       **Total Assets**
   (a) As of latest Dec. 31., _2004_.........................................  $ _666,252_
   (b) As of latest June 30., _2005_.........................................  $ _595,755_

5. Complete the following for optional coverages desired:

   **Form of Coverage**
                                                        **Single Loss Limit**

   (a) Insuring Agreement (D) – Forgery or Alteration Coverage desired? Yes_X_No__ $ _10,000,000_
   (b) Insuring Agreement (E) – Securities Coverage desired?...................Yes_X_No__ $ _10,000,000_
   (c) Extortion – Threats to Persons Coverage desired?.....................Yes _X_ No__ $____
   (d) Is Extortion – Threats to Property Coverage desired?..................Yes__No_X_ $____
   (e) Computer Systems Fraud Coverage desired?...........................Yes_X_No__ $ _10,000,000_
       If "Yes", complete the following:
       (1) Insured's Computer System(s)
           For the Computer System(s) you operate, whether owned or leased, complete the following:
           (a) Number of independent software contractors authorized to design, implement or service
               programs for your System(s)  _(1)_ _____

           (b) Is access to your System(s) by customers or other outside parties permitted? Yes__No_X_
       (2) Other Computer Systems
           List below other Computer System(s) for which coverage is desired:

                                      _NONE_

05/20/05  10:15  FAX 505 856 9410          LEATHERNECK, INC.                    @05

(f) Is coverage desired on businesses engaged in the data processing of your checks or other accounting records?...................................................................................................................... Yes__ No☒
   If "Yes", list below the name and location of each data processor:

6. Are you a direct participant in a depository for the central handling of securities?............. Yes☒ No__
   If "Yes", list below the name and location of each depository:

   _DTC - NY_

7. Enter Deductible Amount:  $ 50,000

8. AUDIT PROCEDURES:
   (a) Is there an annual ☒  semi-annual __, audit by an independent CPA?......................... Yes☒ No__
   (b) If "Yes", is it a complete audit made in accordance with generally accepted standards and so certified?.............................................................................................................. Yes☒ No__
   (c) If the answer to (b) is "No", explain the scope of the CPA's examination

   (d) Is the Audit report rendered directly to all partners if a partnership or to the Board of Directors if a corporation?
   (e) Name and location of CPA  Michael Sciccca, CPA,  39 Court St., Freehold NJ  Yes☒ No__
                                                                                    07728
   (f) Date of completion of the last audit by CPA    6/30/05
   (g) Is there a continuous internal audit by an Internal Audit Department?........................ Yes__ No☒
   (h) If "Yes", are monthly reports rendered directly to all partners if a partnership or to the Board of Directors if a corporation?...................................... N/A .............. Yes__ No__
   (i) Are money and securities actually counted and verified?........................................... Yes__ No__
   (j) Are the ledger balances to the credit of customer's verified?...................................... Yes☒ No__

9. INTERNAL CONTROLS (OTHER THAN AUDIT PROCEDURES):
   (a) Do you require annual vacations of at least two consecutive weeks for all personnel?..... Yes☒ No__
       If "No", explain:

   (b) Are bank accounts reconciled by someone not authorized to deposit or withdraw?........ Yes☒ No__
       If "No", explain:

   (c) Is countersignature of checks required?.............................................................. Yes__ No☒
       If "No", explain:  ALL CHECKS ARE REVIEWED BY SECOND OFFICER
       PRIOR TO RELEASE

   (d) Are monthly statements (whether or not there was activity in the account) mailed directly to all customers?.............................................................................................................. Yes☒ No__
       If "No", explain:

10. Has there been any change in ownership or management within the past three years?..........Yes___ No_X_
    If "Yes", explain:_____
    _____
    _____

11. Has any insurance been declined or canceled during the past three years?......................Yes___ No_X_
    If "Yes", explain:_____
    _____
    _____
    _____

12. List all losses sustained during the past three years, whether pending paid:   Check if none___ _X_

| Date of Loss | Type of Loss | Amount of Loss | Amount Recovered from Insurance | Amount Recovered from other than Insurance | Amount of Loss Pending | If Loss occurred at other than Main Office, state location |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

The insured represents that the information furnished in this application is complete, true and correct. Any misrepresentation, omission, concealment or incorrect statement of a material fact, in this application or otherwise, shall be grounds for the rescission of any bond issued in reliance upon such information.

Dated at_____ this_____ day of_____ 20_____

OLDE MONMOUTH STOCK                    By _____
(Insured)                                      (Name and Title)

JOHN C. TROSTER
PRESIDENT



Special Risk Managers of America, Inc.
914 Mt. Kemble Avenue
Morristown, NJ 07960

## APPLICATION FOR TRANSFER AGENTS ERRORS AND OMISSIONS INSURANCE

1. Name of Company ___Olde Monmouth Stock Transfer Co., Inc.___

   Address ___200 Memorial Pkwy___
   ___Atlantic Highlands, NJ 07716___

2. Are you a member of the Securities Transfer Association? ....✓....Yes ..........No

3. Do you perform stock transfer functions? ...✓...Yes ..........No

    (a) Do you perform Registrar functions? ...✓...Yes ..........No

    (b) Do you act as a Dividend Disbursing Agent? ..........Yes ...✓...No

4. The approximate number of shareholders serviced? ___75,000___

    (a) How many corporations are serviced? ___132___

    (b) How many mutual funds are serviced? ___0___

5. The approximate number of annual transactions? ___7500___

    (a) The approximate number of new of new certificates issued last year? ___21,000___

    (b) The approximate number of book entries made last year? ___—0—___

    (c) The approximate number of actual transfers made last year? ___11,000___

6. What percentage of your activity is from:

    (a) Activity limited to your own issue ___0 %___

    (b) Certificates issued for other corporations ___100 %___

    (c) Certificates issued for mutual fund shareholders ___0 %___

7.  Do you provide a dividend reinvestment facility? ..........Yes ....✓...No

      (a) What percentage of you shareholders subscribe to the program?

            -for corporate issue __N/A__

            -for mutual funds __N/A__

8.  Number of employees performing stock or registrar functions: _____6_____

9.  What information management systems do you utilize? __SERVER (LOCAL AREA NETWORK)__

    Do you have an adequate data back up system in place? ____YES____

    Is the backed up data stored on-site or at an off-site location? __BOTH__

10. Representations:  Any affirmative answer must be fully explained in an attached signed statement.

    During the past five years and with respect to the type of insurance being applied for:

      (a) Has any similar insurance been declined, canceled or has renewal been refused by an insurance company? ..........Yes ....✓...No

      (b) Has a claim been made or is a claim pending against the applicant? ..........Yes ...✓.....No

      (c) Does the applicant have any knowledge of any prior incident, act, error or omission which the applicant believes could be a basis for claim under the insurance being applied for? ..........Yes ...✓...No

11. Do you have "umbrella" and/or blanket coverage? ..........Yes ...✓...No

      (a) If so, is it applicable to errors & omissions coverage? ........Yes ........No

      (b) Limit of coverage:_____

          Deductible:_____

12. What internal controls do you have that would lessen the probability of a claim situation?

__TWO PERSON REVIEW OF ALL TRANSACTIONS__

13.  What is the procedure for handling:

?  (a)  Routine Transfers __ADEQUATE CHECKS & BALANCES__

?  (b)  Non-Routine Transfers __ADEQUATE Checks & BALANCES__

14.  What is the "turnaround" time for:

(a)  Routine Transfers __1 DAY__

(b)  Non-Routine Transfers __VARIES  1-30 DAYS__

15.  Do you have any difficulty meeting the "turnaround" time? .......... Yes ...✗.....No

16.  What percentage of all transfers are non-routine? __20%__

### FRAUD WARNINGS

**NOTICE TO ARKANSAS APPLICANTS:**  Any person who knowingly presents a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO CALIFORNIA APPLICANTS:**  Pursuant to California Insurance Law, Sec. 1623, this application for insurance is being submitted by an insurance broker who is acting on behalf of an insured.

**NOTICE TO COLORADO APPLICANTS:**  It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO D.C. APPLICANTS: WARNING:**  It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO FLORIDA APPLICANTS:**  Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO HAWAII APPLICANTS:**  For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment or both.

**NOTICE TO TENNESSEE APPLICANTS:**  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO TEXAS APPLICANTS:**  Any person who makes an intentional misstatement that is material to the risk may be found guilty of insurance fraud by a court of law.

**NOTICE TO VIRGINIA APPLICANTS:**  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO ALL OTHER STATE APPLICANTS:**  Any person who knowingly includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**THE APPLICANT REPRESENTS THAT THE ABOVE STATEMENTS AND FACTS ARE TRUE AND THAT NO MATERIAL FACTS HAVE BEEN SUPPRESSED OR MISSTATED.**

**COMPLETION OF THIS FORM DOES NOT BIND COVERAGE.  APPLICANT'S ACCEPTANCE OF THE COMPANY'S QUOTATION IS REQUIRED PRIOR TO BINDING COVERAGE AND POLICY ISSUANCE.**

**ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.**

Applicant: _Olde Monmouth Stock Transfer Co., Inc._

Date: _Oct 26, '06_

By: _____

Name and Title: _John C. Troster, Pres._



## QUESTIONNAIRE FOR MAIL COVERAGE FOR ISSUERS/TRANSFER AGENTS

Name of Company: _Olde Monmouth Stock Transfer Co., Inc._
Address: _200 Memorial Pkwy, Atlantic Highlands, NJ 07716_
Name of Transfer Agent (if different): _____
Address: _____

1. Current Coverage (Limits and Carrier):
   A. First Class Mail: ____—0—____ Carrier: _____
   B. Certified Mail: ____—0—____ Carrier: _____
   C. Registered Mail: ____—0—____ Carrier: _____

2 Number of Mailings in last twelve months:
   A. First Class Mail: ____1,500____
   B. Certified Mail: ____0____
   C. Registered Mail: ____0____

3. Number of Mailings in the last twelve months by class of Securities:

| | Number | Total Value | Average Value/Item |
|---|---|---|---|
| Stocks (Non-Negotiable): | 0  1,500 | | |
| Stocks Negotiable: | 0 | 0 | |
| Bonds (Bearer): | 0 | | |
| Bonds (Non-Negotiable): | 0 | | |
| Coupons: | 0 | | |

4. Does the applicant presently have or use the following bonds or insurance?  NO
   A. Individual Lost Instrument Bonds: Open Penalty _____ Fixed Penalty _____
   B. Blanket Lost Instrument Bonds: _____
   C. Blanket Waiver of Probate Bonds: _____
   D. Securities Forgery: _____
   E. Mail: _____
   F. Other Surety Bonds (List): _____
   G. Other Transfer Agent Coverage (List): _____

5. Number of transactions last calendar year for each of the following:
   New Certificates: ____11,000____
   Cancelled Certificates: ____6,700____
   Maintenance (Name/Address, etc) ____1,000____
   Bookkeeping Entries: ____—0—____
   Dividends: ____—0—____

6. Number of lost security and waiver of administrative bonds filed with in last Calendar year:
   ____NONE____

7. Type of Accounts (Number of Issues):
   Stock: ____132____
   Corporate Debt: ____0____
   Mutual Fund: ____0____
   LP: ____0____
   Municipal Debt: ____0____
   Other: ____0____

11/15/2006  10:35    1-732-872-2728    OLDE MONMOUTH STOCK    PAGE  24

8. Description of Operations (Give a brief description of applicant's operation):

REGISTRAR & TRANSFER AGENT  (REGISTERED)

9. Accounts for which you act as Transfer:

| Number | Total Value | Total Shareholders |
|--------|-------------|--------------------|
| 132    |             | 75,000             |

10. Name of outside Courier Companies that are to be considered for coverage under Registered Mail Coverage:

| Largest Clients (Which you are Transfer Agent) | |
|-------------------------------------------------|---|
| Company | Number of Shareholder |
|  |  |
|  |  |
|  |  |
|  |  |

Date: OCT 16, '06

Applicant: OLDE MONMOUTH STOCK TRANSFER CO, INC.

By: _____
(Name and Title)

JOHN C. TROSTER, PRES:

Comcast Message Center                                                          Page 1 of 1

**From:** "Christopher J Fink" <cjfink@bellsouth.net>

**To:** "Matt Troster" <oldemonmouth@comcast.net>

**Cc:** "Stan Fink" <leatherneck1@earthlink.net>

**Subject:** Transfer Agent E&O and Mail Bond Applications

**Date:** Mon, 23 Oct 2006 14:20:16 +0000

Dear Matt, attached, please find an application for Transfer Agent Errors & Omissions coverage and Mail Bond coverage.  Once complete, please fax to either 239-403-9274 or 305-936-9413.

Thank you and please let us know if you have any questions.

Best regards,
Chris Fink
E-Surety Brokerage, Inc.

**Attachment 1:** Mail Application.doc (application/msword)

**Attachment 2:** Application for Transfer Agents EO Coverage.doc (application/msword)

[ Back ]

© 2006 Comcast Cable Communications, Inc. All rights reserved.

# OLDE MONMOUTH STOCK TRANSFER
## 200 MEMORIAL PARKWAY
### ATLANTIC HIGHLANDS, NJ 07716
TEL (732) 872-2727 - FAX (732) 872-2728

-------------------------------------------------------------

DATE: _10/27/06_

TO: _Christopher Fink_

FROM: _Matt Troster_

SUBJ: _Errors & Omissions Insurance_

-------------------------------------------------------------





**U.S. SECURITIES & EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
233 BROADWAY – SUITE 6000
NEW YORK, NEW YORK 10279

IN REPLYING PLEASE QUOTE
NERO-BD-RSS
(646) 428-1881

September 11, 2003

Mr. John Troster
Olde Monmouth Stock Transfer Co.
200 Memorial Parkway
Atlantic Highlands, New Jersey 07716

Dear Mr Troster:

A recent transfer agent ("TA") examination of *Olde Monmouth Stock Transfer Co.* ("Olde Monmouth") revealed the following infractions of the Rules promulgated under the Securities Exchange Act of 1934:

**Rule 17Ad-6(a)(6)** was violated in that Olde Monmouth failed to indicate the date of responses to all written inquiries subject to **Rule 17Ad-5**. The staff's review disclosed that eight out of 10 written inquiries received during the period January through June 30, 2003 did not indicate the date the responses were sent.

**Rule 17Ad-12** was violated in that Olde Monmouth failed to maintain adequate written procedures and internal controls in preventing the destruction, theft, or any other loss of securities. As we discussed, the storage of blank certificates in an open and unsecured area was considered an unsound business practice by the staff.

**Rule 17Ad-15(c)** was violated in that Olde Monmouth's written procedures and guidelines for rejection of signature guarantees were found to be inadequate. The staff's review disclosed that the written procedures did not specify reasons for rejections of signature guarantees or the procedures to follow in the event of a rejection, as required.

Notwithstanding whether the Commission takes any action with respect to the above violations, please advise the staff in writing as to the specific procedures which you have put into effect to guard against any further infractions of the above cited Rules. The staff requests that you submit your written response within 30 days of the date of this letter. A copy of your

reply should also be sent to:

*Mr. Eric Swanson*
*Office of Compliance Inspections and Examinations*
*U.S. Securities and Exchange Commission*
*450 Fifth Street, N.W.*
Washington, D.C. 20549

We are bringing the deficiencies and/or violations of law described above to your attention for immediate corrective action, without regard to any other action(s) that may result from the examination. You should not assume that Olde Monmouth's activities not discussed in this letter are in full compliance with the federal securities laws or other applicable rules and regulations. The above findings are based on the staff's examination and are not findings or conclusions of the Commission.

Sincerely,

Ronald S. Scaglione, Branch Chief
Broker-Dealer Inspection Program
Branch #4

*RSS/cej*

*file copy*

# Olde Monmouth Stock Transfer Co., Inc.

200 Memorial Parkway, Atlantic Highlands, NJ 07716
Tel. (732) 872-2727 · Fax (732) 872-2728

October 8, 2003

Ronald S. Scaglione, Branch Chief
Broker-Dealer Inspection Program
Branch #4
U.S. Securities & Exchange Commission
Northeast Regional Office
233 Broadway, Suite 6000
New York, NY 10279

RE: NERO-BD-RSS

Dear Mr. Scaglione:

In response to your comment letter dated September 11, 2003, relating to our annual audit we herein submit the following corrective actions:

**Rule 17Ad-6(a)(6)** - we have initiated the following procedure relating to all "written inquiries" as follows- (1) each inquiry shall be date stamped the date it is received and (2) the stamp will also include a space to fill in the date of response, the type of response (ie letter, fax, telephone, etc. and a space for the individual responding to initial. If other documents are needed other than just filling in blanks on the inquiry form, such copies of such documents will be attached to the request for future reference.

**Rule 17Ad-12** - we have contacted a local contractor who is designing a lockable cover system that can be closed & locked during non business hours for the working supply of certificates. In addition have installed a lock on the door to the room where the bulk blank certificates are stored. Both areas must be closed & locked at the end of each business day. Although it may take some time for the design and construction of the new set up, in the interim we do have the entire building under an alarm system audible and silent to the alarm company and local police along with motion sensors in all accessible areas.

**Rule 17Ad-15c** - although we have had a general policy relating to "signature guarantees" the following will become our current policy:

(1) all endorsements on certificates are required to have a medallion signature guarantee subject to the following exceptions

(i) the endorsement if from a corporate officer of one of our clients and such signature is on file with us as an authorized signor. In such instance signature guarantees may be waived by a corporate officer of Olde Monmouth.

(ii) medallion guarantee may be replaced with a non medallion bank guarantee in cases where such medallion is difficult to impossible to obtain such may be the case in some foreign countries. Such waiver must be made by an officer of Olde Monmouth Stock Transfer.

(iii) signature guarantees may be waived at the specific written request of the issuer which would include an indemnification for the transfer agent.

We appreciate your input and hope the above has adequately addressed the issues you raised.

Sincerely,

J. Christopher Troster
President



**U.S. SECURITIES & EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 WORLD FINANCIAL CENTER
SUITE 4300
NEW YORK, NEW YORK 10281

IN REPLYING, PLEASE QUOTE
NERO-BD-KAL
(212) 336-0476

September 8, 2005

Mr. John Troster
President
Olde Monmouth Stock Transfer Co., Inc.
200 Memorial Parkway
Atlantic Highlands, New Jersey 07716

Dear Mr. Troster:

A recent transfer agent ("TA") examination of Olde Monmouth Stock Transfer Co., Inc. ("Olde Monmouth") revealed the following infractions of the Rules promulgated under the Securities Exchange Act of 1934:

<u>Rule 17Ad-6(a)(2)</u> was violated in that Olde Monmouth's log of routine items received each month was inaccurate because Shipment Control Lists ("SCL") received from DTC were incorrectly accounted for as one item rather than each line of the SCL as an item, as defined by <u>Rule 17Ad-1(a)(1)(ii)</u>.

<u>Rule 17Ad-6(a)(6)</u> was violated in that:

- Olde Monmouth failed to maintain a copy of its written response for two out of ten written inquiries received within the most recent one year period.
- Olde Monmouth failed to maintain correspondence confirming the date that DTC was notified of an assumption or a termination of TA services by the registrant.

 <u>Rule 17Ad-12</u> was violated in that Olde Monmouth failed to maintain adequate written procedures with regard to the safeguarding of funds and securities.

<u>Rule 17Ad-19</u> was violated in that Olde Monmouth failed to maintain adequate written procedures with regard to the cancellation and destruction of securities certificates.

 USA Patriot Act Section 352 was violated in that Olde Monmouth has not developed or implemented procedures to check shareholder account names and addresses against the OFAC list of prohibited countries and "specially designated persons".

Notwithstanding whether the Commission takes any action with respect to the above violations, please advise the staff in writing as to the specific procedures which you have put into effect to guard against any further infractions of the above-cited Rules.  The staff requests that you submit your written response within 30 days of the date of this letter.  A copy of your reply should also be sent to:

*Mr. Eric Garvey*
*Office of Compliance Inspections and Examinations*
*U.S. Securities & Exchange Commission*
*450 Fifth Street, N.W.*
*Washington, D.C. 20549*

We are bringing the deficiencies and/or violations of law described above to your attention for immediate corrective action, without regard to any other action(s) that may result from the examination.  You should not assume that Old Monmouth's activi ties not discussed in this letter are in full compliance with the federal securities laws or other applicable rules and regulations.  The above findings are based on the staff's examination and  is not a finding or conclusion of the Commission.

Sincerely,

Kenneth A. Liebl, Chief
Broker Dealer Inspection Program
Branch #12

2

# Olde Monmouth Stock Transfer Co., Inc.

*file copy*

200 Memorial Parkway, Atlantic Highlands, NJ 07716
Tel: (732) 872-2727 - Fax (732) 872-2728

September 29, 2005

Kenneth A. Liebl, Chief
Broker Dealer Inspection Program, Branch #12
U.S. Securities & Exchange Commission
Northeast Regional Office
3 World Financial Center, Suite 4300
New York, NY 10281

RE: Transfer Agent Examination

Dear Mr. Liebl:

In response to your letter of September 8, 2005 we enclosing our reponses and actions taken as follows:

**Rule 17Ad-6(a)(2)** - we have made a computer software adjustment to our system whereby the DTC SLC's will accurately reflect the items received for transfer as accounted for by "line item" submission.

**Rule 17Ad-6(a)(6) -**

* we do not know which two written inquiry response items you indicate that did not maintain a copy, however, please be advised that it is certainly our policy to maintain such responses on all written inquiries.

* we reviewed our DTC Notification File and find that all such correspondence was dated with the effective date of such changes which <u>is the date we made such notification</u>. For the purpose of clarity we have added a line to the notification form that specifically reads "Date Notified" in addition to the "Effective Date" although both dates would be the same.

(3)    if canceled certificates are transported "off premises", for either storage or destruction, a log shall be maintained, including all pertinent identification information.

(4)    if canceled certificates are to be destroyed, such destruction shall by witnessed by authorized personnel of the Agent and a permanent log of such destruction shall be maintained.

(5)    if any canceled certificates are lost or stolen, a report of such shall be made in compliance with 240.17f-1 within 24 hours or in a reasonable time frame given circumstances.

## USA Patriot Act Section 352

We have not developed procedures pursuant to the above because we do not believe that we are subject to same. Accordingly, we contacted our SEC Attorney who, after reviewing Section 352 advises us that we are not, by the definitions contained therein, subject to Section 352 of the USA Patriot Act. In addition, we are unaware of a regulation that specifically requires that we comply. However, if we are subject to the Act for some reason that we are not aware of, we request that you give us some guidance as to our responsibilities and how to establish any required procedures if applicable.

Sincerely,

John C. Troster
President

CC: Richard S. Fox, Esq.
    (505) 757-6411

# Olde Monmouth Stock Transfer Co., Inc.

200 Memorial Parkway, Atlantic Highlands, NJ 07716
Tel. (732) 872-2727 - Fax (732) 872-2728
transferagent@oldemonmouth.com                              www.oldemonmouth.com

August 18, 2006

Mr. Kenneth A. Liebl, Chief
Broker Dealer Inspection Program, Branch #12
U.S. Securities & Exchange Commission
Northeast Regional Office
3 World Financial Center
New York, NY 10281

Dear Mr. Liebl:

We are writing to you in furtherance of our September 29, 2005 response letter to your letter of September 8, 2005 (copies of both are enclosed herewith). There are some issues which we believe are of some importance and bear further comment.

The first relates to the safeguarding of securities. We have acquired a small vault which is both fireproof and alarmed. Our procedure is that all "live" certificates be secured therein at the end of each business day and access to the vault is limited to designated personnel only. Previously, we kept a small working supply of blank certificates on racks in order to work more efficiently. We have since moved this working supply of blank certificates into locking cabinets, which are further secured by a system of locking metal bars over the face of the cabinet. The bulk supply of blank certificates are stored away from the general working area in a room secured by a dead bolt locking system and access to this area is limited to designated personnel only. In effect, all certificates, live and blank, are securely maintained under lock and key. As before, the entire building is equipped with an alarm system that is audible and notifies both the alarm company and the local police.

The second item relates to the USA Patriot ACT Section 352. Notwithstanding whether or not we are subject to this section, we have acquired "Bridger Insight" software which allows us to process all new issuances and transfers of securities as well as review all incoming and outgoing wire transfers, before they are effected, on a daily basis against multiple OFAC and other lists, which we are assured are updated on a continuing basis. We are also enclosing a copy of the lists that are checked by the software with the date last updated.

Sincerely,

John C. Troster
President

# RULE 17Ad-12 SAFEGUARDING OF FUNDS & SECURITIES PROCEDURES

## SAFEGUARDING OF FUNDS

From time to time Olde Monmouth may hold funds for limited purposes:

(1)  funds may be held for the purpose of facilitating a transaction between an issuer and investor

(2)  if funds are held, even if it is only "over night" such funds must be deposited with a Commercial Bank. At no time will cash/funds be held at the Agents facility.

(3)  funds held in a Commercial Bank must be held in a separate "escrow account".

(4)  at no time will such escrow funds be "mixed" with operating funds of the Agent

(5)  each transaction must have a separate and distinct non interest bearing escrow account

(6)  authority to sign on any escrow account is strictly limited to Officers of the Agent or under special circumstances an Officer of the Agent may appoint an individual who is not an officer to have such authority. Any such appointment must be in written form and any designated individual who must be in compliance with fingerprint requirements..

## SAFEGUARDING OF SECURITIES

(1)  bulk supplies of blank certificates are to be stored in a separate area under lock and key at all times, such area shall be separate from the general working area.

(2)  access to bulk supplies is limited to specific individuals

(3)  a working supply of blank certificates shall be maintained in the general working area and will be kept in secured filing cabinets that locked with iron rods and padlocks

(4)  in the event that active securities, other than those in process of transfer, are to be held at the Agents facility even if only over night, such instruments must be kept under lock in the alarmed fire proof safe and away from the general working area until such time as they are canceled or delivered

(5)  as overall security, at any time that the building is unoccupied which include normal non working hours, weekends, holidays or any other reason the building must be locked, secured and the alarm system must be set.

(6)  the building alarm system must include window and door security, an adequate array of motion sensors, an audible exterior alarm and an automatic notification feature to appropriate authorities.

*SAFEGUARD*

System                                                                    Page 1 of 1

**INSIGHT**™                                                              ChoicePoint

SYSTEM   ID VERIFICATION   CHECK NAMES   SCAN IDV FILES   SCAN FILES   REPORTS   ACCEPT LIST   DENY LI

Logoff   User   Options

## Data Files

| Available Files | Date | File Name |
|---|---|---|
| Bank of England Consolidated List | 08/11/2006 | BOE.BDF |
| Bureau of Industry and Security List | 08/15/2006 | BIS.BDF |
| Consolidated List - Australia | 08/14/2006 | DFAT.BDF |
| Consolidated List - Canada | 08/11/2006 | OSFI.BDF |
| DTC Debarred Parties | 02/21/2006 | DTC.BDF |
| European Union Consolidated List | 08/11/2006 | EUTL.BDF |
| FBI Hijack Suspects | 10/13/2005 | FBISUSPECTS.BDF |
| FBI Most Wanted | 07/18/2006 | FBIMW.BDF |
| FBI Most Wanted Terrorists | 02/28/2006 | FBIMWT.BDF |
| FBI Seeking Information | 07/18/2006 | FBISI.BDF |
| FBI Top Ten Most Wanted | 05/25/2006 | FBITOP10.BDF |
| Hong Kong Monetary Authority List | 07/05/2006 | HKMA.BDF |
| Interpol Most Wanted | 07/18/2006 | IMW.BDF |
| Monetary Authority of Singapore List | 08/08/2006 | MAS.BDF |
| Non-cooperative Countries and Territories | 06/23/2006 | NCCT.CDF |
| Nonproliferation Sanctions, U.S. Department of State, ISN | 08/10/2006 | NONPROLIFERATION.BDF |
| OFAC Non-SDN Entity List | 04/13/2006 | NON-SDN.BDF |
| OFAC Sanctions Programs. Requires further due diligence. | 03/23/2006 | COUNTRY.CDF |
| OFAC's Specially Designated Nationals & Blocked Persons | 08/15/2006 | SDN.BDF |
| Politically Exposed Persons | 07/18/2006 | PEP.BDF |
| Primary Money Laundering Concern | 07/12/2006 | PMLC.BDF |
| Primary Money Laundering Concern - Jurisdiction | 11/26/2004 | PMLCJ.CDF |
| Terrorist Exclusion List | 05/24/2005 | TEL.BDF |
| Unauthorized Banks | 07/21/2006 | UB.BDF |
| United Nations Consolidated List | 08/04/2006 | UNCL.BDF |
| World Bank Debarred Parties | 05/25/2006 | WB.BDF |

Sent By: FOX LAW OFFICES;                5088474907;        4-Aug-06 15:39;           Page 1

## FOX LAW OFFICES, P.A.
### 2 VILLAGE HILL LANE, APT. # 3
### NATICK, MA 01/60
Telephone (508) 647-4907
Facsimile: (508) 647-4907


**VIA FAX (212) 855-3215 and e-mail sgeigel@dtcc.com**

Susan Geigel, Director
The Depository Trust Company
55 Water Street
New York, NY 10041-0099

     In re: Olde Monmouth Stock Transfer Co., Inc.

Dear Ms. Geigel:

This office represents Olde Monmouth Stock Transfer Co., Inc.
which received a letter from you, dated June 22, 2006, denying
their application to the FAST Program.  I am writing to you in
that regard.


As I understand the situation, DTCC has required that all issuers
join the FAST program.  This, in turn, necessitates that the stock
transfer agents for the issuers be FAST agents.  Since an issuer
must, by your requirements, be FAST eligible, it cannot have a
stock transfer agent which is not in the program.    Thus, by
definition, a denial by you of FAST agent status for my client is
tantamount to putting them out of business.   Given that the
requirement for using the FAST program is first mandated by DTCC,
it would appear that some critical attention should be being given
to the second step, the appointment of FAST agents, given the
extreme seriousness of a negative decision.  This is, of course,
exacerbated by the time limitations being imposed by DTCC.  At
this point, several issuers have already moved their stock
transfer service, and many more have threatened to do so within
the next week or two.   Incoming business has been terminated.
Immediate remedial action is required.

In your letter, you reference the deficiencies noted by the SEC
during the last three examinations, as the grounds for the denial.
However, as a matter of law, it would be necessary for the
deficiencies cited:

    1.   to bear on and adversely impact the duties of a FAST
agent; and

    2.   Assuming that they do impact those duties, to remain

Sent By: FOX LAW OFFICES;            5086474907;        4-Aug-06 15:39;        Page 2/5


Susan  Geigel, Director
July 5, 2006
Page 2


uncorrected.

We have carefully examined the deficiencies cited, as well as the
responses by my client, and the speed with which the deficiencies
were addressed and corrected.  Attached is a comparative analysis
of the deficiencies cited, the response measures taken together
with the time within which those deficiencies were corrected, and,
by inference, the fact that the deficiencies cited were, in fact
corrected,  since  they  were  not  re-cited  in  a  subsequent
examination.

I submit that none of the deficiencies cited bears on the duties
of my client as a FAST agent.  There was never any deficiency with
respect to the security or safekeeping of tradeable securities;
the superficially related deficiencies were as to:
> 1.  "blank certificates", only, not tradeable securities such
> as would be involved in the FAST program; and
> 2.  "written  procedures"  relating  to  the  safekeeping,
> although the actual safekeeping (as opposed to the written
> procedures) was not found to be deficient, again indicating
> that the safekeeping of the FAST securities would meet
> requirements.
And, those deficienies (as well as all other deficiencies) were
speedily and completely corrected.

I further submit that reliance upon examinations many years old,
without  determining  whether  those  deficiencies  have  been
corrected, and without reference to whether the deficiencies, if
uncorrected, would have any bearing on my client's duties as a
FAST agent, and without any physical examination of the premises
with a view to the safekeeping security actually in place,
constitutes an unreasonable basis for your decision, which is
daily causing substantial financial harm to my client.

Given that the position in the securities market held by DTCC is
so central, and given that the FAST Program is a DTCC initiative,
it follows that DTCC must have appropriate procedures to obviate
any improper restraint of trade inherent in its denying of FAST
agent status.  This is clearly not the case here.

Susan  Geigel, Director
July 5, 2006
Page 3


It does not appear that Rule 22 applies to my client, a stock transfer agent, as it does not fall within the definition of those eligible to appeal.  Notwithstanding that, however, an appeal is hereby demanded; please treat this letter as such an Appeal filing.  And, given the deadlines being imposed by DTCC, as well as the mounting daily financial losses to my client, an immediate hearing is demanded.

Yours truly,
FOX LAW OFFICES, P.A.

By: Richard C. Fox

cc: Olde Monmouth Stock Transfer Co., Inc.

| SEC COMMENT LETTER DATED SEP 8, 1998 | & OMST RESPONSE LETTER DATED OCT 6, 1998 | | | |
|---|---|---|---|---|
| COMMENTS | RESPONSE/CORRECTION | EFF DATE | | |
| Rule 17Ad-8(a)(2) | | | | |
| (a) Record keeping - inaccurate counting of items received for transfer | Implemented computer software adjustment | 09/15/98 | | |
| | Correction Complete | | | |
| (b) & (c) Did not show record of the number of Non-Routine items received during month, the number of items turned around and number of items remaining at the end of a month | Inaccurate comment - we forwarded hard copies of existing Logs accounting for same | 10/06/98 | | |
| | No Correction Necessary | | | |
| Additional - under counted items received from DTC by not counting each line item | Implemented software adjustment to accurately count individual line items | 09/15/98 | | |
| | Correction Complete | | | |
| Rule 17f-1(c) | | | | |
| Two instances of not reporting Lost/Stolen Securities | Implemented change in procedure by attaching Form X-17F-1A directly to Affidavit of Lost/Stolen certificates so that reporting is simultaneous | 09/15/98 | | |
| | Correction Complete | | | |
| SEC COMMENT LETTER DATED JUL 31, 2001 | & OMST RESPONSE LETTER DATED AUG 21, 2001 | | | |
| Rule 17Ad-12(a) | | | | |
| Review of entire month's canceled certificates showed 27 canceled certificates were not stamped Canceled | New procedures implemented assigning separate individual to review all canceled certificates for proper stamping | 08/21/01 | | |
| | Correction Complete | | | |
| Rule 17f-2(a) | | | | |
| Review showed two employees not fingerprinted | All employees are routinely fingerprinted submitted copies of fingerprint cards as part of response | 08/21/01 | | |
| | No Correction Required | | | |
| SEC COMMENT LETTER DATED SEP 11, 2003 | & OMST RESPONSE LETTER DATED OCT 8, 2003 | | | |
| Rule 17Ad-6(a)(6) | | | | |
| Review showed eight written inquiries did not show date of the response | Implemented new procedure of stamping inquiries with pre-printed blocks for date and manner of response | 10/08/03 | | |
| | No Correction Required | | | |
| Rule 17Ad-12 | | | | |
| Failed to maintain adequate written procedures and internal controls in preventing the destruction, theft or any other loss of blank certificates stored in open unsecured area | Contacted local contractor to gate & lock blank certificates stored on racks | 10/08/03 | | |
| | Further improvements followed | 09/29/05 | | |
| | Correction Complete | | | |

| | | |
|---|---|---|
| **Rule 17Ad-15(c)** | | |
| | | |
| Written procedures and guidelines did not specify reasons for rejections for Signature Guarantee or procedures to follow in the event a rejection is required | Procedures re-written and submitted to SEC as part of our response | 10/08/03 |
| | **Correction Complete** | |
| | | |
| **Rule 17Ad8(a)(2)** | | |
| | | |
| Inaccurate accounting of line item count on SCL's | Previous internally implemented software adjustment not accurate. Retained outside software to make appropriate adjustment | 09/29/05 |
| | **Correction Complete** | |
| | | |
| | | |
| **Rule 17Ad6(a)(6)** | | |
| | | |
| Failed to maintain written response for two items in month | The two items were not identified in SEC comment Our policy covers proper handling | 09/29/05 |
| | **No Correction Necessary** | |
| | | |
| Failed to maintain correspondence confirming date DTC notified of an assumption or termination of TA services | Review of notifications showed that all reports were dated - notification date is effective date | 09/29/05 |
| | **No Correction Needed** | |
| | | |
| **Rule 17Ad-12** | | |
| | | |
| Failed to maintain adequate written procedures with regard to safeguarding funds & securities | (a) procedures re-written and supplied to SEC | 09/29/05 |
| | (b) acquired fire proof vault | |
| | (c) removed all blank certificates from wall racks and stored locked and bolted cabinets | |
| | **Correction Complete** | |
| | | |
| | | |
| **Rule 17Ad-19** | | |
| | | |
| Failed to maintain adequate written procedures with regard to cancellation & destruction of certificates | Procedures re-written and supplied to SEC | 09/29/05 |
| | **Correction Complete** | |
| | | |
| **USA Patriot Act Sect 352** | | |
| | | |
| Did not develop or implement procedures to check shareholder account names and addresses against OFAC list | Submitted SEC comment to our SEC Attorney who advised us that OMST is not, by definitions contained therein, subject to Sect 352 - however, we did additionally request guidelines from the SEC if we were required to comply | 09/29/05 |
| | **No Response From SEC** | |
| | **Indicates Non Violation** | |
| | | |

11/15/2006   10:35   1-732-872-2728         OLDE MONMOUTH STOCK              PAGE  43
FedEx | Ship Manager | Label 7980 4351 5008                                  Page 1 of 1

From:  Origin ID: (732)872-2727
Christine Knudsen
OLDE MONMOUTH STOCK TRANSFER
200 MEMORIAL PARKWAY

ATLANTIC HIGHLANDS, NJ 07716

**FedEx**
Express
**E**

Ship Date: 15NOV06
ActWgt: 1 LB
System#: 2517046/INET2500
Account#: S *********

REF: FAST

Delivery Address Bar Code

SHIP TO:  (212)855-3275        BILL SENDER
**Isaac Montal
DTCC
55 Water ST
Legal Dept.
New York, NY 100410099**

**PRIORITY OVERNIGHT**                          **THU**
Deliver By:
15NOV06

TRK#  **7980  4351  5008**    FORM
0201                                        **EWR**    A1

**10041**  -NY-US

**Z1 SXYA**

Shipping Label: Your shipment is complete
1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.