# EXHIBIT P

## Facsimile Cover Sheet



**The Depository Trust &
Clearing Corporation**
55 Water Street
New York, NY 10041-0099

**To:**        Richard C. Fox, Esq.

**Co./Dept.:**  Fox Law Offices, P.A.

**Subject:**   Proposed Rule Change No. SR-2006-16

**Fax:**        (508) 647-4907

**Date:**       October 19, 2006

**Comments:**

**Page(s):** 37

**From:**    Isaac Montal, Esq.

**Phone:**   (212) 855-3275

**Fax:**      (212) 855-3215

Richard –

Attached is Proposed Rule Change No. SR 2006-16.

Regards,

Isaac

OMB APPROVAL

OMB Number:         3235-0045
Expires:          June 30, 2007
Estimated average burden
hours per response............38

---

Page 1 of 36

**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549
Form 19b-4

File No. SR - 2006 - 16

Amendment No.

**Proposed Rule Change by  The Depository Trust Company**

**Pursuant to Rule 19b-4 under the Securities Exchange Act of 1934**

| Initial ☑ | Amendment ☐ | Withdrawal ☐ | Section 19(b)(2) ☑ | Section 19(b)(3)(A) ☐ | Section 19(b)(3)(B) ☐ |
|---|---|---|---|---|---|

Rule

| Pilot ☐ | Extension of Time Period for Commission Action ☐ | Date Expires | ☐ 19b-4(f)(1)   ☐ 19b-4(f)(4) |
|---|---|---|---|
| | | | ☐ 19b-4(f)(2)   ☐ 19b-4(f)(5) |
| | | | ☐ 19b-4(f)(3)   ☐ 19b-4(f)(6) |

Exhibit 2 Sent As Paper Document ☐     Exhibit 3 Sent As Paper Document ☐

---

**Description**

Provide a brief description of the proposed rule change (limit 250 characters).

Proposed Rule Filing to update the requirements pertaining to the FAST and DRS programs of DTC.

---

**Contact Information**

Provide the name, telephone number and e-mail address of the person on the staff of the self-regulatory organization prepared to respond to questions and comments on the proposed rule change.

| First Name | John | Last Name | Petrofsky |
|---|---|---|---|

| Title | Associate Counsel |
|---|---|

| E-mail | jpetrofsky@dtcc.com |
|---|---|

| Telephone | (212) 844-7634 | Fax | (212) 855-3215 |
|---|---|---|---|

---

**Signature**

Pursuant to the requirements of the Securities Exchange Act of 1934,

has duly caused this filing to be signed on its behalf by the undersigned thereunto duly authorized.

| Date | 10/12/2006 |
|---|---|

| By | Larry Thompson | General Counsel |
|---|---|---|
| | (Name) | (Title) |

NOTE: Clicking the button at right will digitally sign and lock this form.  A digital signature is as legally binding as a physical signature, and once signed, this form cannot be changed.

Larry Thompson, lthompson@dtcc.com

1.     Text of the Proposed Rule Change.

(a) By this filing, DTC is proposing to update, standardize, and restate the requirements for the Fast Automated Securities Transfer Program ("FAST"), restate the requirements for transfer agents participating in the direct registration system ("DRS")[1], and to delineate the responsibilities of DTC and the transfer agents with respect to the securities held by transfer agents as part of the FAST program.

Prior to the establishment of the FAST program, transfers of securities to or from the name of DTC's nominee, Cede & Co, occurred as follows: (a) in the case of securities deposited with DTC, DTC sent the certificates to the transfer agent for registration of transfer into the name of Cede & Co., and the transfer agent returned the re-registered certificates to DTC, or (b) in the case of a withdrawal of securities from DTC, DTC sent securities registered in the name of Cede & Co. to the transfer agent for registration and transfer into a name designated by the withdrawing Participant and the transfer agent returned the new security to DTC for delivery to such Participant. This process exposed securities to risk of loss during transit between DTC and transfer agents, and resulted in the expense of making physical deliveries of securities.

For securities that are part of the FAST program, the transfer agents hold the securities registered in the name of DTC's nominee, Cede & Co., in the form of balance certificates. As additional securities are deposited or withdrawn from DTC, the transfer agent adjusts the denomination of the certificate as appropriate, and electronically confirms theses changes with DTC. As such, the program reduces the movement of certificates between DTC and the

---

[1] Transfer agents participating in DRS are referred to as DRS Limited Participants.

transfer agents and therefore reduces the costs and risks associated with the creation, movement, and storing of certificates.[2]

The FAST program has grown substantially since first being introduced in 1975.[3] The Commission's recent approval of changes to the Rules of the major securities exchanges is expected to further accelerate this growth. Those Rules require, as a listing prerequisite, that issues become eligible for processing through DRS, and that becoming a FAST agent is a criterion for transfer agents' eligibility for participation in DRS.[4] We therefore anticipate significant growth in the FAST program as DRS becomes more widely used and/or becomes mandatory.

DRS allows investors to hold a security as the registered owner in electronic form on the books of the issuer rather than: (1) indirectly through a financial intermediary that holds the security in "street name" or in an account with a depository or (2) in the form of a certificate. Through the utilization of FAST, DRS also allows for the transfer of the position from the books of the issuer to a financial intermediary through the facilities of DTC. In the alternative, an investor may request a paper share certificate if certificates are available from the issuer.[5]

---

[2] For a description of DTC's current rules relating to FAST, see Securities Exchange Act Release Nos. 34-13342 (March 8, 1977) [File No. SR-DTC-76-3]; 34-14997 (July 26, 1978) [File No. SR-DTC-78-11]; 34-21401 (October 16, 1984) [File No. SR-DTC-84-8]; 34-31941 (March 3, 1993) [SR-DTC-92-15]; and 34-46956 (December 6, 2002) [File No. SR-DTC-2002-15].

[3] DTC introduced the FAST program in 1975 with 400 issues and 10 agents. Currently, there are over 930,000 issues and approximately 90 agents.

[4] On August 8, 2006, the Commission concurrently approved similar rule changes in this regard proposed by the New York Stock Exchange LLC (the "NYSE"), the American Stock Exchange LLC, and The NASDAQ Stock Market LLC. Securities Exchange Act Release Nos. 34-54289 (August 8, 2006) [File No. SR-NYSE-2006-29]; 34-54290 (August 8, 2006) [File No. SR-Amex-2006-40]; and 34-54288 (August 8, 2006) [File No. SR-NASDAQ-2006-008].

[5] For a description of DTC's rules relating to DRS, see Securities Exchange Act Release Nos. 34-37931 (November 7, 1996) [File No. SR-DTC-96-15]; 34-41862 (September 10, 1999) [File No. SR-DTC-99-16]; 34-42366 (January 28, 2000) [File No. SR-DTC-00-01]; 34-42704 (April 19, 2000) [File No. SR-DTC-00-04]; 34-43586 (November 17, 2000) [File No. SR-DTC-00-09]; 34-44969 (August 14, 2001) [File No. SR-DTC-2001-07]; 34-45232 (January 3, 2002) [SR-DTC-2001-18]; 34-45430 (February 11, 2002) [File No. SR-DTC-2002-01]; and 34-48885 (December 5, 2003) [File No. SR-DTC-2002-17]; 34-52422 (September 14, 2005) [File No. SR-DTC-2005-11].

Despite the FAST program's robust past growth and expected future growth, the transfer agent eligibility requirements for FAST have not substantially changed since its inception and do not: (i) take into account the increased volume and value of securities processed, (ii) reflect the current availability of improved technology and other safeguards which would enhance the safety and soundness of securities held in FAST in the name of Cede & Co. on behalf of participant accounts, and (iii) consider the availability of standardized audit reports to certify processes and controls.

As more fully described below, DTC has identified aspects of the program's requirements that need updating, including: (i) insurance requirements (to take into account transaction volumes and values conducted by agents), (ii) safekeeping requirements (to clarify and enhance security and fire protection standards and take into consideration technological advances that allow for economical security improvements), (iii) regulatory and bookkeeping requirements (to ensure compliance with applicable laws and regulations and utilize standardized audit reports certifying as to processes and controls), and (iv) fees (to clarify agents' responsibility in this regard). Taking the above into account, DTC proposes to amend and restate the requirements for FAST transfer agents as set forth below in order to: (1) improve the soundness and safety of securities assets held for DTC participant accounts, and (2) provide better defined requirements as more issuers and agents participate in the immobilization and dematerialization process. As a result, DTC proposes the following minimum requirements for transfer agents participating in FAST (note: the following requirements must be incorporated into the transfer agent's internal procedures, which are subject to SEC examination)[6]:

---

[6] Please note that in addition to the following, these minimum requirements incorporate by reference the Balance Certificate Agreement between the Transfer Agent and DTC, the Operational Criteria for FAST Transfer Agent Processing, and all applicable terms in DTC's Operational Arrangements.

Page 5 of 36

1. Transfer agent must be registered with the Commission (and provide DTC with evidence of such), and follow all applicable rules under the Securities Exchange Act of 1934 (the "Exchange Act") as well as all other applicable Federal and state laws, rules, and regulations. In addition, the transfer agent must provide DTC with a written notification within three (3) business days if its regulator has taken any action against the transfer agent with respect to an alleged violation of such laws, rules, or regulations.

2. The transfer agent must execute and fulfill the requirements of the appropriate form of Balance Certificate Agreement with DTC (in the appropriate form as set forth in Exhibit 2).[7]

3. By signing the Balance Certificate Agreement, the transfer agent represents and warrants to DTC, among other things, that it is following the rules and procedures specified by Office of Foreign Asset Control (OFAC) and is in compliance with all applicable laws and rules under the Exchange Act. The transfer agent must provide DTC with a written notification within three (3) business days if: (a) its regulator has notified the transfer agent with respect to any issues of non-compliance or alleged violations in this regard, or (b) if the transfer agent notifies its regulator with respect to any violations or issues of non-compliance in this regard.

4. When applying for FAST status, the transfer agent must include the name and CUSIP of a minimum of one issue it wishes to add to the FAST program. Issues eligible for the FAST program must be: (i) traded on an exchange registered under Section 6 of the Exchange Act, (ii) municipal securities, or (iii) transferred

---

[7] DTC currently maintains three forms of Balance Certificate Agreement: one for transfer agents, one for issuers acting as their own agent, and the third for parties using a processing agent. DTC is consolidating these forms into a single form as attached in Exhibit 2.

by a transfer agent that already acts as a FAST transfer agent for at least five (5)

other issues that are traded on an exchange. The above provisions

notwithstanding, DTC reserves the complete discretion to include or exclude any

particular issue in the FAST program.

5. The transfer agent must sign and fulfill requirements of the Operational Criteria

for the FAST Transfer Agent Processing (as set forth in Exhibit 2(b)) and must

comply with all applicable provisions of DTC's Operational Arrangements (OA)[8],

as amended from time to time.

6. In order to provide for the operational proficiency and efficiency of the program,

on being accepted as a FAST transfer agent, the transfer agent must complete

training by DTC on FAST functionality.

7. In order to protect against a risk of loss, the transfer agent must carry and provide

evidence of a minimum of the following Bankers Blanket Bond Standard Form

24, or similar coverage, in proportion to transaction volume the agent processes,

as follows:

   a. $10 million, with a deductible of no more than $50,000, for a transfer

   agent with 25,000 or fewer transfer transactions per year as reported to the

   SEC.

   b. $25 million, with a deductible of no more than $100,000, for transfer

   agents with over 25,000 transfer transactions per year as reported to the

   SEC.

---

[8] For more information relating to DTC's OA, see Securities Exchange Act Release Nos. 34-45994 (May 29, 2002), 67 FR 39452 [File No. SR-DTC-2002-02]; 34-24818 (August 19, 1987), 52 FR 31833 [File No. DTC-87-10]; 34-25948 (July 27, 1988), 53 FR 29294 [File No. DTC-88-13]; 34-30625 (April 23, 1992), 57 FR 18534 [File No. DTC-92-06]; 34-35649 (April 26, 1995), 60 FR 21576 [File No. DTC-94-19]; and 34-39894 (April 21, 1998), 63 FR 23310 [File No. DTC-97-23].

Blanket insurance coverage shall identify DTC as a loss payee whose rights shall not be invalidated by any act or neglect of the insured.

8. The transfer agent must: (i) carry a minimum of $1 million in Errors and Omissions insurance, with a deductible of no more than $25,000 and show evidence of the policy on applying for FAST status, and (ii) have an "in-transit" insurance policy of $10 million or more and show evidence of the policy on applying for FAST status. The Errors and Omissions coverage shall identify DTC as an additional insured. The "in-transit" coverage shall identify DTC as a loss payee but shall not be invalidated by any act or neglect of the insured.

9. In order to facilitate consistent protection against losses relating to securities in a transfer agent's control, the transfer agent must notify DTC immediately (within five (5) business days) of notice of any threatened or actual lapse in insurance coverage or change in business practices, such as increasing volumes, or other business changes that would result in the transfer agent requiring additional insurance coverage as outlined above. Such notice shall be delivered to:

> DTC
> Inventory Management – 1SL
> 55 Water Street
> New York, New York 10041

And with a copy to:

> DTC
> General Counsel's Office
> 55 Water Street – 22nd Floor
> New York, New York 10041

10. The transfer agent must provide proof to DTC of the new or substitute policy for all required insurance at least 30 days prior to any expiration or change in insurance limits of a previous insurance policy.

11. To further facilitate Item No. 9 above, the terms of the insurance coverage noted above must state that the insurance provider must notify DTC within five (5) days of notice of any threatened or actual lapse in the above coverage requirements.

12. The transfer agent must establish and maintain electronic communications with DTC to balance FAST positions on a daily schedule. Electronic communications include direct connectivity with DTC in the manner required by DTC from time to time.

13. The transfer agent must provide, on an annual basis to DTC, within 10 business days of filing with the SEC, an accountant's report (pursuant to Exchange Act Rule 17Ad -13 (Annual Study of Evaluation of Internal Accounting Controls)) attesting to the soundness of controls to safeguard securities assets and reliability and integrity of computer systems, including confidentiality of customer account, or other non-public, information.

   In addition, the transfer agent must provide, within the same time frame as required for such report, a report from an external certified public accountant:

   a. certifying that the transfer agent is complying with all of DTC's requirements relating to FAST agents including, without limitation,: (a) those listed herein, (b) the Operational Criteria for FAST Transfer Agent Processing, (c) the OA, and (d) the Balance Certificate Agreement.

   b. certifying that the agent meets any SEC requirements for business continuity planning.

   c. containing an SSAE 10 report (or the equivalent), attesting to the soundness of the transfer agent's control in meeting the requirements set forth herein.

14. FAST agents must safeguard all the securities assets as stated under SEC Rule

17Ad-12, and with the additional DTC requirements including but not limited to:

   a. Maintaining a theft and fireproof safe of no less than 350 pounds, with a

      minimum anti-theft test rating of UL 687, and a minimum fire rating of

      UL 72.

   b. Maintaining a theft and fire central monitoring alarm system protecting the

      entire premises.

   c. Certificates not in use will be maintained in the "locked" safe.

   d. Certificates shall not be left unattended unless stored in the "locked" safe.

15. Personnel with access to the safe and the codes for the centralized monitoring

   system will be governed by SEC Rule 17f-2, which includes but is not limited to

   rules for fingerprinting staff that physically handle certificates.

16. The transfer agent must provide DTC with: (i) a copy of the two most recent SEC

   examination reports as well as any follow-up correspondence, and (ii) copies of

   any additional examination reports issued by the SEC.

17. During regular business hours, DTC reserves the right to visit and inspect the

   agent's facilities, books and records, but is not obligated to do so.

18. The transfer agent must participate in the Paperless Legal transfer program.[9]

19. The transfer agent may charge DTC transfer and ancillary fees that: (a) are

   contractually agreed to by the issuer, (b) are the same for all other registered

   holders, and (c) do not violate the regulations of the relevant securities exchange

   relating to transfer agent fees.

---

[9] "Legals" are the industry's name for stock transfers that must be accompanied by various paper legal documents, such as birth or death certificates necessary for transfers to be completed. The Paperless Legal program eliminates the need to forward the necessary legal documents, which remain with the institution requesting the transfer. The institution warrants (by attaching a medallion) that it has and will maintain the necessary legal documents to effectuate the transfer.

20. If, for any existing agent, three (3) or more reported FAST out-of-balances remain open for longer then 15 days, or one (1) FAST out-of-balance for 45 days, DTC reserves the right to prohibit security issues serviced by that agent from being added to FAST and/or to terminate that agent's continued participation in FAST.

21. Existing FAST agents shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements. If an agent is non-compliant with these requirements upon the expiration of such period, DTC shall have the sole discretion to terminate or continue the agent's FAST status.

22. An agent acting on behalf of a transfer agent, or an issuer acting on its own behalf, shall have the same rights and responsibilities under these requirements as if it were the transfer agent.

In addition, DTC is proposing the following restatement of the eligibility requirements for DRS Limited Participants[10] and the DRS eligibility requirements for DRS issues to promote consistency with the FAST program requirements as well as further ensure the soundness of the DRS system as follows:

*Proposed Amended and Restated Eligibility Requirements for DRS Limited Participants:*

In order to be eligible for membership as a DRS Limited Participant, a party must:

1. participate in the FAST program and abide by the rules outlined in the FAST requirements above,

2. execute a DTC Limited Participant Account agreement,

---

[10] DRS Limited Participants, by signing an agreement with DTC, are bound to certain the provisions of the DTC rules. See Securities Exchange Act Release No. 34-37931 (November 7, 1996) [File No. SR-DTC-96-15].

3. deliver transaction advices directly to investors relating to DRS Withdrawal-by-Transfer requests, and provide DTC with a file (in a format and using functionality as specified by DTC from time to time) containing the transaction advice delivery date,

4. complete training by DTC on DRS and Profile functionality,

5. participate in Profile surety or insurance programs to initiate Profile Modification System transactions[11],

6. make appropriate program changes to support and expand DRS processing capabilities,

7. deliver a statement to investors at least once a year and a transfer advice within 36 business hours of each DRS account transaction that affects the shareholder's position, or more often as required by the Commission's regulations, and

8. Existing DRS Limited Participants shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements. If an agent is non-compliant with these requirements upon the expiration of such period, DTC shall have the sole discretion to terminate or continue the agent's status as a DRS Limited Participants.

_Eligibility Requirements for DRS Issues:_

In order to be eligible as a DRS issue, a security must:

1. be transferred by an agent accepted as a DTC DRS Limited Participant,

---

[11] In DRS, instructions to transfer shares are sent by a broker-dealer that is a DTC participant or a transfer agent via the DRS Profile Modification System ("Profile"), which provides for screen based indemnification against false instructions from the party submitting instructions through DRS. The indemnity is supported by either a surety bond or an insurance policy.

2.  participate in the FAST program. Issues may not be added to DRS if "out of balance" positions exist,

3.  have a transfer agent or issuer that delivers a statement to investors at least once a year and a transaction advice will be delivered within the next 36 business hours of each DRS account transaction that affects the shareholders position, or more often as required by Commission regulations, and

4.  participate in the Paperless Legal Program.


### *Delineation of Responsibility with respect to FAST*

DTC is establishing a clearer demarcation of responsibility and liability with respect to the FAST program. Historically, the Commission has left to user-governed clearing agencies the question of how to allocate losses associated with, among other things, clearing agency functions.[12] In conjunction with its approval of these standards the Commission noted that while it had "called on registered clearing agencies to undertake, by rule, to deliver all fully-paid securities in their control to, or as directed by, the participant for whom the securities are held", given that registered clearing agencies had demonstrated a high level of responsibility in safeguarding securities and funds, a standard of care based on a strict standard of liability was not required either with respect to failures of the clearing agency or a sub-custodian. DTC notes that securities in the FAST program are held by a transfer agent and not within the immediate custody and control of DTC. As such, after a transfer agent is accepted to the FAST program, DTC is proposing the addition of a clarifying provision to Rule 6 to state that DTC will not be liable for the acts or omissions of

---

[12] Securities Exchange Act Release Nos. 34-20221 (September 23, 1983) and 34-22940 (February 24, 1986). In this regard, DTC adopted a uniform standard with respect to certain of its procedures, or Service Guides, such that DTC is not liable for any loss incurred by a participant other than one caused directly by

FAST Agents or other third parties, unless caused directly by DTC's the gross

negligence, willful misconduct, or violation of Federal securities laws for which there

is a private right of action. In addition, under no circumstance shall DTC be liable for

selecting or accepting any third party as an agent of DTC, including as a transfer

agent participating in the FAST Program (see Exhibit 5 for the proposed provision).

(b) Not applicable.

(c) Not applicable.

2.   Procedures of the Self-Regulatory Organization.

a)   DTC's Board of Directors has not taken, and is not required to take, action
on the proposed rule change.

3.   Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis
for, the Proposed Rule Change.

(a)   The purpose of this rule filing is to amend and restate requirements for
participation in DTC's FAST and DRS programs.

(b) The proposed rule change is consistent with the requirements of the Securities

Exchange Act of 1934, as amended (the "Act"), and the rules and regulations thereunder,

because it improves standards relating to the eligibility of agents and issues for its FAST

and DRS programs. As such, it assures the safeguarding of securities and funds which

are in the custody or control of DTC or for which it is responsible.

---

gross negligence or willful misconduct on the part of DTC. See Securities Exchange Act Release No. 34-44719 (August 17, 2001) [File No. SR-DTC-2001-01].

4.      Self-Regulatory Organization's Statement on Burden on Competition.

DTC does not believe that the proposed rule change will have any impact, or

impose any undue burden, on competition.

5.      Self-Regulatory Organization's Statement on Comments on the Proposed Rule

Change Received from Members, Participants, or Others.

Written comments relating to the proposed rule change have not yet been solicited

or received.  DTC will notify the Commission of any written comments received by

DTC.

6.      Extension of Time Period for Commission Action.

DTC does not consent to an extension of the time period specified in Section
19(b)(2) of the Act for Commission action.

7.      Basis for Summary Effectiveness Pursuant to Section 19(b)(3) or for Accelerated

Effectiveness Pursuant to Section 19(b)(2) or Section 19(b)(7)(D).

(a)     Not applicable.

(b)     Not applicable.

(c)     Not applicable.

(d)     Not applicable.

8.      Proposed Rule Change Based on Rules of Another Self-Regulatory

Organization or of the Commission.

The proposed rule change is not based on the rules of another self-regulatory

organization or the Commission.

9.    Exhibits

Exhibit 1 - Notice of proposed rule change for publication in the Federal Register.

Exhibit 2 –

(a) Form of Balance Certificate Agreement

(b) Operational Criteria for FAST Transfer Agent Processing

Exhibit 3 - n/a

Exhibit 4 - n/a

Exhibit 5 – Text of Proposed Rule Change

**EXHIBIT 1**

## SECURITIES AND EXCHANGE COMMISSION

**(Release No. 34-_____; File No. SR-DTC-2006-16)**

### SELF-REGULATORY ORGANIZATIONS

Proposed Rule Change by THE DEPOSITORY COMPANY ("DTC") relating to amending the rules of DTC to update, standardize, and restate the requirements for the Fast Automated Securities Transfer Program ("FAST"), restate the requirements for transfer agents participating in the direct registration system ("DRS"), and to delineate the responsibilities of DTC and the transfer agents with respect to the securities held by transfer agents as part of the FAST program.

Comments requested within _____ days after the date of this publication.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. 78s(b)(1), notice is hereby given that on _____, DTC filed with the Securities and Exchange Commission ("Commission") the proposed rule change as described in Items I, II, and III below, which Items have been prepared by DTC. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

I.  Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

The text of the proposed rule change is attached hereto as Exhibit 5.

II.  Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, DTC included statements concerning the purpose of and basis for the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. DTC has prepared summaries, set forth in sections (A), (B), and (C) below, of the most significant aspects of such statements.

A.    Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

(i)  By this filing, DTC is proposing to update, standardize, and restate the requirements for the FAST, restate the requirements for transfer agents participating in DRS[1], and to delineate the responsibilities of DTC and the transfer agents with respect to the securities held by transfer agents as part of the FAST program.

Prior to the establishment of the FAST program, transfers of securities to or from the name of DTC's nominee, Cede & Co, occurred as follows: (a) in the case of securities deposited with DTC, DTC sent the certificates to the transfer agent for registration of transfer into the name of Cede & Co., and the transfer agent returned the re-registered certificates to DTC, or (b) in the case of a withdrawal of securities from DTC, DTC sent securities registered in the name of Cede & Co. to the transfer agent for registration and transfer into a name designated by the withdrawing Participant and the transfer agent returned the new security to DTC for delivery to such Participant.  This process exposed securities to risk of loss during transit between DTC and transfer agents, and resulted in the expense of making physical deliveries of securities.

For securities that are part of the FAST program, the transfer agents hold the securities registered in the name of DTC's nominee, Cede & Co., in the form of balance certificates.  As additional securities are deposited or withdrawn from DTC, the transfer agent adjusts the denomination of the certificate as appropriate, and electronically confirms theses changes with DTC.  As such, the program reduces the movement of certificates between DTC and the transfer agents and therefore reduces the costs and risks associated with the creation, movement, and storing of certificates.[2]

The FAST program has grown substantially since first being introduced in 1975.[3]  The Commission's recent approval of changes to the Rules of the major securities exchanges is expected to further accelerate this growth.  Those Rules require, as a listing prerequisite, that issues become eligible for processing through DRS, and that becoming a FAST agent is a criterion for transfer agents' eligibility for participation in DRS.[4]  We therefore anticipate

---

[1] Transfer agents participating in DRS are referred to as DRS Limited Participants.

[2] For a description of DTC's current rules relating to FAST, see Securities Exchange Act Release Nos. 34-13342 (March 8, 1977) [File No. SR-DTC-76-3]; 34-14997 (July 26, 1978) [File No. SR-DTC-78-11]; 34-21401 (October 16, 1984) [File No. SR-DTC-84-8]; 34-31941 (March 3, 1993) [SR-DTC-92-15]; and 34-46956 (December 6, 2002) [File No. SR-DTC-2002-15].

[3] DTC introduced the FAST program in 1975 with 400 issues and 10 agents.  Currently, there are over 930,000 issues and approximately 90 agents.

[4] On August 8, 2006, the Commission concurrently approved similar rule changes in this regard proposed by the New York Stock Exchange LLC (the "NYSE"), the American Stock Exchange LLC, and The NASDAQ Stock Market LLC.  Securities Exchange Act Release Nos. 34-54289 (August 8, 2006) [File No. SR-NYSE-2006-29]; 34-54290 (August 8, 2006) [File No. SR-Amex-2006-40]; and 34-54288 (August 8, 2006) [File No. SR-NASDAQ-2006-008].

significant growth in the FAST program as DRS becomes more widely used and/or becomes mandatory.

DRS allows investors to hold a security as the registered owner in electronic form on the books of the issuer rather than: (1) indirectly through a financial intermediary that holds the security in "street name" or in an account with a depository or (2) in the form of a certificate. Through the utilization of FAST, DRS also allows for the transfer of the position from the books of the issuer to a financial intermediary through the facilities of DTC. In the alternative, an investor may request a paper share certificate if certificates are available from the issuer. [5]

Despite the FAST program's robust past growth and expected future growth, the transfer agent eligibility requirements for FAST have not substantially changed since its inception and do not: (i) take into account the increased volume and value of securities processed, (ii) reflect the current availability of improved technology and other safeguards which would enhance the safety and soundness of securities held in FAST in the name of Cede & Co. on behalf of participant accounts, and (iii) consider the availability of standardized audit reports to certify processes and controls.

As more fully described below, DTC has identified aspects of the program's requirements that need updating, including: (i) insurance requirements (to take into account transaction volumes and values conducted by agents), (ii) safekeeping requirements (to clarify and enhance security and fire protection standards and take into consideration technological advances that allow for economical security improvements), (iii) regulatory and bookkeeping requirements (to ensure compliance with applicable laws and regulations and utilize standardized audit reports certifying as to processes and controls), and (iv) fees (to clarify agents' responsibility in this regard). Taking the above into account, DTC proposes to amend and restate the requirements for FAST transfer agents as set forth below in order to: (1) improve the soundness and safety of securities assets held for DTC participant accounts, and (2) provide better defined requirements as more issuers and agents participate in the immobilization and dematerialization process. As a result, DTC proposes the following minimum requirements for transfer agents participating in FAST (note: the following requirements must be incorporated into the transfer agent's internal procedures, which are subject to SEC examination)[6]:

---

[5] For a description of DTC's rules relating to DRS, see Securities Exchange Act Release Nos. 34-37931 (November 7, 1996) [File No. SR-DTC-96-15]; 34-41862 (September 10, 1999) [File No. SR-DTC-99-16]; 34-42366 (January 28, 2000) [File No. SR-DTC-00-01]; 34-42704 (April 19, 2000) [File No. SR-DTC-00-04]; 34-43586 (November 17, 2000) [File No. SR-DTC-00-09]; 34-44969 (August 14, 2001) [File No. SR-DTC-2001-07]; 34-45232 (January 3, 2002) [SR-DTC-2001-18]; 34-45430 (February 11, 2002) [File No. SR-DTC-2002-01]; and 34-48885 (December 5, 2003) [File No. SR-DTC-2002-17]; 34-52422 (September 14, 2005) [File No. SR-DTC-2005-11].

[6] Please note that in addition to the following, these minimum requirements incorporate by reference the Balance Certificate Agreement between the Transfer Agent and DTC, the Operational Criteria for FAST Transfer Agent Processing, and all applicable terms in DTC's Operational Arrangements.

1. Transfer agent must be registered with the Commission (and provide DTC with evidence of such), and follow all applicable rules under the Securities Exchange Act of 1934 (the "Exchange Act") as well as all other applicable Federal and state laws, rules, and regulations. In addition, the transfer agent must provide DTC with a written notification within three (3) business days if its regulator has taken any action against the transfer agent with respect to an alleged violation of such laws, rules, or regulations.

2. The transfer agent must execute and fulfill the requirements of the appropriate form of Balance Certificate Agreement with DTC (in the appropriate form as set forth in Exhibit 2).[7]

3. By signing the Balance Certificate Agreement, the transfer agent represents and warrants to DTC, among other things, that it is following the rules and procedures specified by Office of Foreign Asset Control (OFAC) and is in compliance with all applicable laws and rules under the Exchange Act. The transfer agent must provide DTC with a written notification within three (3) business days if: (a) its regulator has notified the transfer agent with respect to any issues of non-compliance or alleged violations in this regard, or (b) if the transfer agent notifies its regulator with respect to any violations or issues of non-compliance in this regard.

4. When applying for FAST status, the transfer agent must include the name and CUSIP of a minimum of one issue it wishes to add to the FAST program. Issues eligible for the FAST program must be: (i) traded on an exchange registered under Section 6 of the Exchange Act, (ii) municipal securities, or (iii) transferred by a transfer agent that already acts as a FAST transfer agent for at least five (5) other issues that are traded on an exchange. The above provisions notwithstanding, DTC reserves the complete discretion to include or exclude any particular issue in the FAST program.

5. The transfer agent must sign and fulfill requirements of the Operational Criteria for the FAST Transfer Agent Processing (as set forth in Exhibit 2(b)) and must comply with all applicable provisions of DTC's Operational Arrangements (OA)[8], as amended from time to time.

---

[7] DTC currently maintains three forms of Balance Certificate Agreement: one for transfer agents, one for issuers acting as their own agent, and the third for parties using a processing agent. DTC is consolidating these forms into a single form as attached in Exhibit 2.

[8] For more information relating to DTC's OA please see Securities Exchange Act Release Nos. 34-45994 (May 29, 2002), 67 FR 39452 [File No. SR-DTC-2002-02]; 34-24818 (August 19, 1987), 52 FR 31833 [File No. DTC-87-10]; 34-25948 (July 27, 1988), 53 FR 29294 [File No. DTC-88-13]; 34-30625 (April 23, 1992), 57 FR 18534 [File No. DTC-92-06]; 34-35649 (April 26, 1995), 60 FR 21576 [File No. DTC-94-19]; and 34-39894 (April 21, 1998), 63 FR 23310 [File No. DTC-97-23].

6. In order to provide for the operational proficiency and efficiency of the program, on being accepted as a FAST transfer agent, the transfer agent must complete training by DTC on FAST functionality.

7. In order to protect against a risk of loss, the transfer agent must carry and provide evidence of a minimum of the following Bankers Blanket Bond Standard Form 24, or similar coverage, in proportion to transaction volume the agent processes, as follows:
   a. $10 million, with a deductible of no more than $50,000, for a transfer agent with 25,000 or fewer transfer transactions per year as reported to the SEC.
   b. $25 million, with a deductible of no more than $100,000, for transfer agents with over 25,000 transfer transactions per year as reported to the SEC.

Blanket insurance coverage shall identify DTC as a loss payee whose rights shall not be invalidated by any act or neglect of the insured.

8. The transfer agent must: (i) carry a minimum of $1 million in Errors and Omissions insurance, with a deductible of no more than $25,000 and show evidence of the policy on applying for FAST status, and (ii) have an "in-transit" insurance policy of $10 million or more and show evidence of the policy on applying for FAST status. The Errors and Omissions coverage shall identify DTC as an additional insured. The "in-transit" coverage shall identify DTC as a loss payee but shall not be invalidated by any act or neglect of the insured.

9. In order to facilitate consistent protection against losses relating to securities in a transfer agent's control, the transfer agent must notify DTC immediately (within five (5) business days) of notice of any threatened or actual lapse in insurance coverage or change in business practices, such as increasing volumes, or other business changes that would result in the transfer agent requiring additional insurance coverage as outlined above. Such notice shall be delivered to:

> DTC
> Inventory Management – 1SL
> 55 Water Street
> New York, New York 10041

And with a copy to:

> DTC
> General Counsel's Office
> 55 Water Street – 22nd Floor
> New York, New York 10041

10. The transfer agent must provide proof to DTC of the new or substitute policy for all required insurance at least 30 days prior to any expiration or change in insurance limits of a previous insurance policy.

11. To further facilitate Item No. 9 above, the terms of the insurance coverage noted above must state that the insurance provider must notify DTC within five (5) days of notice of any threatened or actual lapse in the above coverage requirements.

12. The transfer agent must establish and maintain electronic communications with DTC to balance FAST positions on a daily schedule. Electronic communications include direct connectivity with DTC in the manner required by DTC from time to time.

13. The transfer agent must provide, on an annual basis to DTC, within 10 business days of filing with the SEC, an accountant's report (pursuant to Exchange Act Rule 17Ad -13 (Annual Study of Evaluation of Internal Accounting Controls)) attesting to the soundness of controls to safeguard securities assets and reliability and integrity of computer systems, including confidentiality of customer account, or other non-public, information.

    In addition, the transfer agent must provide, within the same time frame as required for such report, a report from an external certified public accountant:
    a. certifying that the transfer agent is complying with all of DTC's requirements relating to FAST agents including, without limitation,: (a) those listed herein, (b) the Operational Criteria for FAST Transfer Agent Processing, (c) the OA, and (d) the Balance Certificate Agreement.
    b. certifying that the agent meets any SEC requirements for business continuity planning.
    c. containing an SSAE 10 report (or the equivalent), attesting to the soundness of the transfer agent's control in meeting the requirements set forth herein.

14. FAST agents must safeguard all the securities assets as stated under SEC Rule 17Ad-12, and with the additional DTC requirements including but not limited to:
    a. Maintaining a theft and fireproof safe of no less than 350 pounds, with a minimum anti-theft test rating of UL 687, and a minimum fire rating of UL 72.
    b. Maintaining a theft and fire central monitoring alarm system protecting the entire premises.
    c. Certificates not in use will be maintained in the "locked" safe.
    d. Certificates shall not be left unattended unless stored in the "locked" safe.

15. Personnel with access to the safe and the codes for the centralized monitoring system will be governed by SEC Rule 17f-2, which includes but is not limited to rules for fingerprinting staff that physically handle certificates.

16. The transfer agent must provide DTC with: (i) a copy of the two most recent SEC examination reports as well as any follow-up correspondence, and (ii) copies of any additional examination reports issued by the SEC.

17. During regular business hours, DTC reserves the right to visit and inspect the agent's facilities, books and records, but is not obligated to do so.

18. The transfer agent must participate in the Paperless Legal transfer program.[9]

19. The transfer agent may charge DTC transfer and ancillary fees that: (a) are contractually agreed to by the issuer, (b) are the same for all other registered holders, and (c) do not violate the regulations of the relevant securities exchange relating to transfer agent fees.

20. If, for any existing agent, three (3) or more reported FAST out-of-balances remain open for longer then 15 days, or one (1) FAST out-of-balance for 45 days, DTC reserves the right to prohibit security issues serviced by that agent from being added to FAST and/or to terminate that agent's continued participation in FAST.

21. Existing FAST agents shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements. If an agent is non-compliant with these requirements upon the expiration of such period, DTC shall have the sole discretion to terminate or continue the agent's FAST status.

22. An agent acting on behalf of a transfer agent, or an issuer acting on its own behalf, shall have the same rights and responsibilities under these requirements as if it were the transfer agent.

In addition, DTC is proposing the following restatement of the eligibility requirements for DRS Limited Participants[10] and the DRS eligibility requirements for DRS issues to promote consistency with the FAST program requirements as well as further ensure the soundness of the DRS system as follows:

---

[9] "Legals" are the industry's name for stock transfers that must be accompanied by various paper legal documents, such as birth or death certificates necessary for transfers to be completed. The Paperless Legal program eliminates the need to forward the necessary legal documents, which remain with the institution requesting the transfer. The institution warrants (by attaching a medallion) that it has and will maintain the necessary legal documents to effectuate the transfer.

[10] DRS Limited Participants, by signing an agreement with DTC, are bound to certain the provisions of the DTC rules. See Securities Exchange Act Release No. 34-37931 (November 7, 1996) [File No. SR-DTC-96-15].

*Proposed Amended and Restated Eligibility Requirements for DRS Limited Participants:*

In order to be eligible for membership as a DRS Limited Participant, a party must:

1. participate in the FAST program and abide by the rules outlined in the FAST requirements above,

2. execute a DTC Limited Participant Account agreement,

3. deliver transaction advices directly to investors relating to DRS Withdrawal-by-Transfer requests, and provide DTC with a file (in a format and using functionality as specified by DTC from time to time) containing the transaction advice delivery date,

4. complete training by DTC on DRS and Profile functionality,

5. participate in Profile surety or insurance programs to initiate Profile Modification System transactions[11],

6. make appropriate program changes to support and expand DRS processing capabilities,

7. deliver a statement to investors at least once a year and a transfer advice within 36 business hours of each DRS account transaction that affects the shareholder's position, or more often as required by the Commission's regulations, and

8. Existing DRS Limited Participants shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements. If an agent is non-compliant with these requirements upon the expiration of such period, DTC shall have the sole discretion to terminate or continue the agent's status as a DRS Limited Participants.

*Eligibility Requirements for DRS Issues:*

In order to be eligible as a DRS issue, a security must:

1. be transferred by an agent accepted as a DTC DRS Limited Participant,

---

[11] In DRS, instructions to transfer shares are sent by a broker-dealer that is a DTC participant or a transfer agent via the DRS Profile Modification System ("Profile"), which provides for screen based indemnification against false instructions from the party submitting instructions through DRS. The indemnity is supported by either a surety bond or an insurance policy.

2.  participate in the FAST program.  Issues may not be added to DRS if "out of balance" positions exist,

3.  have a transfer agent or issuer that delivers a statement to investors at least once a year and a transaction advice will be delivered within the next 36 business hours of each DRS account transaction that affects the shareholders position, or more often as required by Commission regulations, and

4.  participate in the Paperless Legal Program.

### *Delineation of Responsibility with respect to FAST*

DTC is establishing a clearer demarcation of responsibility and liability with respect to the FAST program.  Historically, the Commission has left to user-governed clearing agencies the question of how to allocate losses associated with, among other things, clearing agency functions.[12]  In conjunction with its approval of these standards the Commission noted that while it had "called on registered clearing agencies to undertake, by rule, to deliver all fully-paid securities in their control to, or as directed by, the participant for whom the securities are held", given that registered clearing agencies had demonstrated a high level of responsibility in safeguarding securities and funds, a standard of care based on a strict standard of liability was not required either with respect to failures of the clearing agency or a sub-custodian.  DTC notes that securities in the FAST program are held by a transfer agent and not within the immediate custody and control of DTC.  As such, after a transfer agent is accepted to the FAST program, DTC is proposing the addition of a clarifying provision to Rule 6 to state that DTC will not be liable for the acts or omissions of FAST Agents or other third parties, unless caused directly by DTC's the gross negligence, willful misconduct, or violation of Federal securities laws for which there is a private right of action.  In addition, under no circumstance shall DTC be liable for selecting or accepting any third party as an agent of DTC, including as a transfer agent participating in the FAST Program (see Exhibit 5 for the proposed provision).

(ii) The proposed rule change is consistent with the requirements of the Securities Exchange Act of 1934, as amended (the "Act"), and the rules and regulations thereunder, because it improves standards relating to the eligibility of agents and issues for its FAST and DRS programs.  As such, it assures the safeguarding of securities and funds which are in the custody or control of DTC or for which it is responsible.

---

[12] Securities Exchange Act Release Nos. 34-20221 (September 23, 1983) and 34-22940 (February 24, 1986).  In this regard, DTC adopted a uniform standard with respect to certain of its procedures, or Service Guides, such that DTC is not liable for any loss incurred by a participant other than one caused directly by gross negligence or willful misconduct on the part of DTC.  See Securities Exchange Act Release No. 34-44719 (August 17, 2001) [File No. SR-DTC-2001-01].

B.  Self-Regulatory Organization's Statement on Burden on Competition.

DTC does not believe that the proposed rule change will have any impact, or impose any burden, on competition.

C.  Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received from Members, Participants, or Others.

Written comments relating to the proposed rule change have not been solicited or received.

III.    Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

Within 35 days of the date of publication of this notice in the Federal Register or within such longer period (i) as the Commission may designate up to 90 days of such date if it finds such longer period to be appropriate and publishes its reasons for so finding or (ii) as to which the self-regulatory organization consents, the Commission will:

(A)    by order approve such proposed rule change, or

(B)    institute proceedings to determine whether the proposed change should be disapproved.

IV.    Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act.  Comments may be submitted by any of the following methods:

- Electronic comments may be submitted by using the Commission's Internet comment form (http://www.sec.gov/rules/sro.shtml), or by sending an e-mail to rule-comment@sec.gov.  Please include File No. SR-DTC-2006-16 on the subject line.

- Paper comments should be sent in triplicate to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE, Washington D.C. 20549-1090.

All submissions should refer to File Number SR-DTC-2006-16.  This file number should be included on the subject line if e-mail is used.  To help the Commission process and review your comments more efficiently, please use only one method.  The Commission will post all comments on the Commission's Internet Web site (http://www.sec.gov/rules/sro.shtml).    Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change

between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C §552, will be available for inspection and copying in the Commission's Public Reference Room, 100 F Street, NE, Washington D.C. 20549-9303. Copies of such filing also will be available for inspection and copying at DTC's principal office and on DTC's Web site at www.DTC.com. All comments received will be posted without change; the Commission does not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly. All submissions should refer to the file number above and should be submitted within _____ days after the date of publication.

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.

Nancy M. Morris

**Exhibit 2(a)**

**BALANCE CERTIFICATE AGREEMENT**

AGREEMENT dated as of by and between _____ (Transfer Agent) and The Depository Trust Company (DTC).

Transfer Agent and DTC desire to improve the mechanisms for the registration of transfer of certificates registered in the name of DTC's nominee, Cede & Co., for which Transfer Agent acts as transfer agent. In consideration of the premises and the mutual covenants herein contained, the parties agree as follows:

1. For all purposes of this Agreement:

(a) The term "Balance Certificate" shall mean a certificate registered in the name of Cede & Co. which evidences: (i) record ownership by Cede & Co. of the number of shares or units or the amount of obligations (such as face value for debt issues) of the issue shown from time to time on the records of the issuer thereof, or (ii) the duties of the issuer thereof to perform the obligations shown from time to time on the records of the issuer thereof, which records are maintained by Transfer Agent, as being evidenced by such certificate, which certificate shall be retained by Transfer Agent. Each Balance Certificate shall be registered:

(i)    If it is an equity security as follows: "Cede & Co. for the number of [insert description of interests represented by certificate] shown from time to time on the records of the issuer hereof as represented by this certificate."

(ii)    If it is a debt security, in a manner which obligates the issuer to make payment to Cede & Co. (e.g. "***** hereby promises to pay Cede & Co. *****") and which describes the sum to be to Cede & Co. as the "sum shown from time to time on the records of the issuer hereof as represented by this [insert description of instrument as used in the actual instrument e.g. this debenture or this bond]".

(b) The term "issue" shall mean a class or series of: (i) equity security issued by a person, which evidences a share, participation or other interest in property or in an enterprise, or (ii) instruments issued by a person which evidence the duties of that person to perform obligations, for which Transfer Agent acts as transfer agent, and which is listed on Exhibit A, as it may be amended in writing from time to time by the parties.

(c) The term "transfer agent" shall mean a person who engages on behalf of an issuer in, among other things, registering the transfer of certificates, including, but not limited to, an authenticating trustee or authenticating agent.

(d) The term "registrar" shall mean a person who engages on behalf of an issuer in monitoring the issuance of securities with a view to preventing unauthorized issuance.

(e) The terms "security" and "issuer" shall have the meanings specified in the New York Uniform Commercial Code.

(f) The term "certificate" shall mean a security.

(g) The term "nominee certificate" shall mean a security of an issue registered in the

name of Cede & Co.

(h) The term "non-nominee certificate" shall mean a security of an issue registered in a name other than Cede & Co.

2. From time to time DTC will deliver to Transfer Agent nominee certificates or non-nominee certificates. Transfer Agent shall accept delivery of such certificates and shall register the transfer thereof and otherwise act in respect thereof as provided herein.

3. (a) Immediately following execution of this Agreement or as soon thereafter as may be agreed for the convenience of the parties, DTC shall deliver to Transfer Agent nominee certificates and/or non-nominee certificates for each issue. Transfer Agent shall cancel all such certificates and issue in place of such certificates of each issue one or more Balance Certificates for such issue. All such Balance Certificates shall be retained by Transfer Agent. Transfer Agent shall confirm to DTC the number of shares or units or the amount of obligations evidenced by each Balance Certificate in the manner described in paragraph 4. Transfer Agent shall furnish DTC with a sample Balance Certificate for each issue if requested by the Corporation.

(b) On each day on which Transfer Agent is open for business and on which it receives from DTC (i) non-nominee certificates with instructions to register the transfer thereof into the name of Cede & Co. or nominee certificates and instructions to include the shares, units or obligations evidenced by such non-nominee certificates or nominee certificates in the Balance Certificate for the issue represented by such certificates, or (ii) instructions to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. or to issue a certificate in the name of Cede & Co. evidencing shares, units or obligations then evidenced by a Balance Certificate, Transfer Agent shall:

(1) increase or reduce the number of shares or units or the amount of obligations evidenced by the Balance Certificate as required so that it shall thereafter evidence a number of shares or units or amount of obligations equal to:

(x) the number of shares or units or amount of obligations evidenced by the balance Certificate prior to receipt of such instructions, *plus*

(y) the number of shares or units or amount of obligations evidenced by the certificates received from DTC, *less*

(z) the number of shares or units or amount of obligations subject to the instructions referred to in clause (ii) above; and

(2) register the transfer of shares, units or obligations and issue certificates registered in the name of Cede & Co. pursuant to any instructions referred to in clause (ii) above and deliver to or make available for pick-up by DTC certificates for such shares, units or obligations within the shorter of the period of time as either: (x) agreed to by the parties hereto, or (y) required by the rules of the U.S. Securities and Exchange Commission (the "Commission").

(c) Transfer agent shall cause all Balance Certificates to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for

registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

Transfer Agent agrees that the foregoing provisions of this subparagraph constitute as to the Transfer Agent a timely written notice of an adverse claim by DTC as to each such certificate regardless of whether the legend actually appears thereon.

Transfer Agent shall, from time to time at DTC's request, cause one or more certificates prepared for delivery to or pick-up by DTC which are registered in the name of Cede & Co. to be stamped with the following legend:

"Unless this certificate is presented by an authorized representative of The Depository Trust Company (55 Water Street, New York, New York) to the issuer or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of The Depository Trust Company and any payment is made to Cede & Co., ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL since the registered owner hereof, Cede & Co., has an interest herein."

4. Transfer Agent shall confirm to DTC via electronic means the number of shares or units or the amount of obligations evidenced by each Balance Certificate, on a daily or other periodic basis, as DTC may reasonably request.

5. As between DTC and Transfer Agent (including, without limitation, its creditors, lien holders and pledgees), all shares or units or the amount of any obligations evidenced by a Balance Certificate or any other certificate which comes into the possession of Transfer Agent pursuant to the provisions hereof shall be deemed to be the sole property of DTC. Transfer agent shall not by reason of any provision of this Agreement or the delivery to it of certificates in accordance with the provisions hereof obtain any legal or equitable right, title or interest in or to such certificates or the shares, units or obligations evidenced by such certificates.

6. Transfer Agent shall at all times hold all Balance Certificates in its secured area at

_____.

7. (a) Notwithstanding any event whatsoever, other than an event described in subparagraph (b) of this paragraph, in the proviso to paragraph 9 hereof or in paragraph 10 hereof, Transfer Agent shall, upon the request of DTC, deliver to or make available for pick-up by DTC a certificate or certificates evidencing all the shares, units or obligations evidenced by any Balance Certificate within 24 hours after receipt of such request, provided, however, that such certificate, or certificates shall not include the Balance Certificate, shall be registered in the name of Cede & Co. and shall specify the number of shares or units or the amount of obligations evidenced thereby without reference to any other document or record.

(b) Transfer Agent shall notify DTC immediately after it determines that any security received by it from DTC, deliverable by it to DTC or held by it pursuant to the provisions of this Agreement has been lost, apparently destroyed or wrongfully taken or is unaccounted for by

Page 30 of 36

Transfer Agent ("Missing Security"). In such event if the Missing Security is a Balance Certificate, Transfer Agent shall immediately reduce the number of shares or units or the amount of obligations attributable to the Missing Security to zero and issue in replacement thereof a new Balance Certificate; if the Missing Security is other than a Balance Certificate, Transfer Agent shall not be obligated to deliver the Missing Security or the equivalent thereof within the time limitations agreed upon pursuant to paragraphs 3(b)(2), 7(a) and/or 14 and DTC and Transfer Agent shall seek to obtain the replacement thereof in accordance with the custom and usage of the financial industry.

8. Transfer Agent represents and warrants that it is insured under an insurance policy in the form of Bankers Blanket Bond Standard Form 24, or similar coverage, in the minimum amount of $10,000,000, or such greater amount as required pursuant to DTC's minimum requirements for FAST transfer agents as such requirements are approved by the Commission (the "Minimum Requirements"), which insurance covers any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent has delivered to DTC a writing signed by its insurance underwriter(s) which evidences, to DTC's satisfaction, the effectiveness of such insurance coverage in such amount, and Transfer Agent covenants and agrees to maintain at its expense such insurance (or a comparable plan of insurance) in no less amount and with like coverage during the term of this Agreement, subject to its right to cancel, decrease or limit the same after giving written notice to DTC of any such cancellation, decrease or limitation at least 30 days prior to the effective date thereof. Transfer Agent shall prior to the first anniversary of the date of this Agreement and prior to each succeeding anniversary of this Agreement during its term deliver to DTC a writing signed by its insurance underwriter(s) which shall evidence the amount and coverage of Transfer Agent's insurance and shall state, to DTC's satisfaction, whether or not such insurance covers, in a manner equivalent to Bankers Blanket Bond Standard Form 24, any securities received from DTC and/or held by Transfer Agent on behalf of DTC under this Agreement. Transfer Agent agrees that whenever Transfer Agent is responsible pursuant to the terms of this Agreement for the shipment of securities, Transfer Agent will either provide adequate insurance coverage or require such coverage from the carrier of the securities, such coverage to cover losses of securities while in transit to DTC and until received by DTC, and that the amount of such coverage shall equal or exceed 110 percent of the fair market value of securities so shipped by Transfer Agent. Transfer Agent shall, at DTC's request furnish DTC with documentation evidencing the amount of coverage of the insurance provided by Transfer Agent for any such shipment of securities. In addition, Transfer Agent represents and warrants that it is in compliance with all insurance requirements as set forth in pursuant to the Minimum Requirements.

9. Transfer Agent agrees that it shall not for any reason, including the assertion of any claim, right or lien of any kind refuse or refrain from delivering any certificates to or as directed by DTC in accordance with the terms of this Agreement; provided, however, that if Transfer Agent shall be served with a notice of levy, seizure or similar notice, or order or judgment, issued or directed by a governmental agency or court, or an officer thereof, having jurisdiction over Transfer Agent, which on its face affects a Balance Certificate or other certificate in the possession of Transfer Agent pursuant to the provisions hereof, Transfer Agent may, pending further direction of such governmental agency or court, refuse or refrain from delivering or making available to DTC in contravention of such notice of levy, seizure or similar notice or order or judgment certificates evidencing shares, units or obligations not greater in number or amount than the shares, units or obligations which are affected by such notice of levy, seizure or similar notice, or order or judgment on the face thereof.

10. If Transfer Agent shall be obligated to deliver to or make available for pick-up by

DTC certificates pursuant to the provisions of paragraph 3(b)(2), paragraph 7(a) and/or paragraph 14 hereof which certificates shall in the aggregate have a current market value in excess of the maximum amount of the Bankers Blanket Bond specified in paragraph 8 hereof, Transfer Agent shall not be obligated to meet the time requirements specified in said paragraphs 3(b)(2), 7(a) and 14 but shall instead deliver or make available such certificates as promptly as possible without creating and maintaining prior to delivery to DTC certificates, other than any Balance Certificate, having a value in excess of said amount.

11. If Transfer Agent shall receive instructions from DTC to register the transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co., the receipt of such instructions shall constitute a presentation by DTC of the Balance Certificate to Transfer Agent under applicable law and DTC shall thereby be deemed to have made the same warranties as it would have made under applicable law if it had physically presented the Balance Certificate to Transfer Agent. DTC indemnifies and holds Transfer Agent harmless against all damages, losses, costs and expenses (including counsel fees) suffered or incurred by Transfer Agent by reason of Transfer Agent's registering a transfer of shares, units or obligations evidenced by a Balance Certificate to a name other than Cede & Co. pursuant to instructions received from DTC by Transfer Agent provided such instructions conform to the procedures in accordance with which DTC from time to time authorizes Transfer Agent to act.

12. Except as specifically provided herein, or otherwise agreed by the parties hereto, the provisions of applicable law shall govern all registrations of transfer of securities pursuant hereto and pursuant to the instructions of DTC.

13. Transfer Agent may at any time, without any resulting liability to itself, act under this Agreement in reliance upon the signature of any person which it believes in good faith to have authority to act for DTC with respect to this Agreement, but Transfer Agent shall not be required so to act, and may in its discretion at any time require such evidence of the authenticity of such signature and of the authority of the person acting for DTC as may be satisfactory to the Transfer Agent.

14. This Agreement (i) may be terminated by either party: (a) immediately, upon written notice to the other party of a breach of the terms of this Agreement, the Minimum Requirements, or any of the terms of the documents incorporated therein by reference, or (b) upon 30 business days' written notice to the other party without cause; (ii) shall terminate with respect to any issue upon Transfer Agent's ceasing to be a transfer agent therefor, in which event Transfer Agent shall give DTC prompt written notice thereof; (iii) may be terminated by Transfer Agent with respect to any issue for which Transfer Agent is the registrar and for which Transfer Agent ceases to be a registrar upon its giving written notice thereof to DTC, unless the issuer thereof shall not require that there be a registrar therefor or (iv) may be terminated by Transfer Agent with respect to any issue in respect of which Transfer Agent has entered into a special agreement with any registrar or co-registrar or co-transfer agent therefor, upon termination of such special agreement upon its giving written notice thereof to DTC. In the event of the termination of this Agreement or termination of this Agreement as to any issue by reason of the foregoing provisions of this paragraph or the amendment of Exhibit A, it shall be deemed that Transfer Agent has received as of the time of such termination a request by DTC within the meaning of paragraph 7(a) with regard to (i) all Balance Certificates subject hereto if this Agreement is terminated or (ii) the Balance Certificate for any issue in respect of which this Agreement shall terminate.

15. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

16. All notices, instructions, requests and other communications required or contemplated by this Agreement shall be in writing, shall be delivered by hand or sent, postage prepaid, by certified or registered mail, return receipt requested, and shall be addressed to Transfer Agent at:

[Insert Transfer Agent's address for notice]

and to DTC at:

DTC
Inventory Management – 1SL
55 Water Street
New York, New York 10041

And with a copy to:

DTC
General Counsel's Office – 22nd Floor
55 Water Street - 22nd Floor
New York, New York 10041

Notice given as aforesaid shall be deemed given upon the receipt thereof. Either of the parties may change the address to which notices shall be sent upon notice to the other in the manner hereinabove provided.

17. (a) Transfer Agent agrees to indemnify and hold harmless DTC from and against any and all losses, liabilities, claims, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against DTC by reason of Transfer Agent's negligent action or negligent failure to act; provided, however, that should Transfer Agent be held to be negligent hereunder and should DTC be held to have been contributorily negligent in connection therewith, then the aforementioned liability shall be shared between Transfer Agent and DTC in such proportion as maybe set forth in any decision of a court or other tribunal having jurisdiction, unless Transfer Agent and DTC shall agree in writing to share such liability in a different proportion.

(b) DTC agrees to indemnify and hold harmless Transfer Agent from and against any and all losses, liabilities, claims, taxes, assessments, penalties, charges and expenses (including counsel fees) suffered or incurred by or asserted or assessed against Transfer Agent as a result of following the instructions of DTC in connection with the performance of its duties under this Agreement where Transfer Agent has acted in good faith without negligence.

18. The Transfer Agent represents and warrants to DTC, among other things, that it is in compliance with: (a) all applicable provisions of the Securities Exchange Act of 1934, and the rules and regulations promulgated thereunder, and (b) with the rules and procedures specified by the Office of Foreign Asset Control (OFAC).

19. The Transfer Agent agrees to maintain full responsibility, and remain fully liable, for the actions of a processing agent, or others, employed by the Transfer Agent to act as agent for, and in the name of the Transfer Agent to perform the acts described herein, or in the Minimum Requirements (and such other requirements incorporated by reference thereto).

20. The Transfer Agent represents and warrants that it presently complies, and agrees that

it shall maintain compliance, with all requirements as set forth pursuant to this Agreement and the Minimum Requirements, including such requirements that are incorporated by reference. Unless otherwise specified in this Agreement, or the Minimum Requirements, Transfer Agent agrees to immediately notify DTC within two (2) calendar days of its failure to maintain such compliance.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_____          THE DEPOSITORY TRUST COMPANY

By:_____              By: _____
Name:                                     Name:
Title:                                    Title:
 Date:                                     Date:

Attest: _____             Attest: _____
Name:                                     Name:

Exhibit 2(b)

### Operational Criteria for FAST Transfer Agent Processing

The operational criteria listed below are in addition to the requirements contained in the Balance Certificate Agreement between DTC and the FAST transfer agent.

1.      When DTC forwards a Deposit or Withdrawal Shipment Control List ("SCL") for an issue to the FAST transfer agent for that issue, DTC expects the agent to add or remove those shares to or from DTC's balance position in due course. DTC's records reflect that the shares are "in transfer" until the agent confirms the SCL.

2.      Prior to confirming the SCL to DTC's balance, the transfer agent must make certain that all transfer requirements pertaining to the shares being added or removed to or from the balance have been met, including but not limited to checking for "stops". If the agent has found some deposited shares are unacceptable for transfer, the agent indicates via Fast Reject and Confirmation ("FRAC") which "line item(s)" is (are) unacceptable and adjusts the total share quantity accordingly. The rejected certificates are then returned with the SCL to DTC.

3.      Although agents are strongly urged not to confirm the SCL until all stops and other transfer irregularities have been thoroughly reviewed and the SCL adjusted if necessary, some agents indicate that a further review of deposited certificates may reveal problems that were not identified by the agent prior to returning the confirmation copy of the SCL. Therefore, DTC will accept late adjustments to the confirmed balance but only under the following conditions:

a)      If, within 72 hours of confirmation (i.e. within 72 hours after DTC receives the agent's on-line confirmation via FRAC), the agent returns the physical certificates they now find unacceptable, or

b)      If, within 72 hours of confirmation the agent provides DTC with a FRAC notification, and written documentation, for any confiscated deposit certificate(s) clearly identifying the Participant involved, the certificate number(s) and the reason for confiscation, or

c)      If both DTC and the agent mutually agree that a balance is incorrect and should be adjusted.

Once a deposit or withdrawal SCL has been confirmed and the securities it represents have been included by DTC on three consecutive Balance Confirmation Summary Reports (which means that the agent has not notified DTC of any adjustments described in subparagraphs a and b above), the issuance by DTC of the fourth Balance Confirmation Summary Report reflecting those deposited or withdrawn securities is deemed to be the equivalent of the delivery to DTC of a certificate registered in the name of Cede & Co. upon original issue or

registration of transfer by the issuer.

4.          The transfer agent must confirm the balance position for each FAST issue for which it is the agent by accessing the Fast Balance Confirmation System ("FBCS") and confirming the balance position via the Balance Confirmation Update option. An authorized individual must enter his/her name and job title. All differences should be clearly noted on FBCS. The specific SCL with which the agent disagrees must be identified by its SCL identification number, or by specific reference to the type of transaction that caused the discrepancy.

5.          The transfer agent must agree to provide record date protection on all SCL's dated record date or earlier. DTC uses this information to update its dividend and interest payment file to detect record date missed transfers which result in underpayments requiring research between the agent and DTC.

6.          If the transfer agent has an issue in the FAST program, but the agent is not the paying agent for that issue, the FAST agent acknowledges that DTC should receive the interest or dividend payment due on that issue based on DTC's confirmed FAST balance with the FAST agent, and will, upon notification by DTC of payment discrepancy, agree to actively pursue resolution of any discrepancy which exists between the record of DTC's FAST balance on its books and the records of the paying agent. If the FAST agent cannot agree to this criterion for certain issues, such issues must be removed from the FAST program.

7.          For Participants customer transfers (Withdrawals by Transfer – WTs), the transfer agent must agree to accept automated information from DTC in a DTC approved format and return automated information relating to completed transfers of customer securities in a DTC approved format. As part of the automation process DTC will no longer forward hard copy Transfer Assignment Control Forms (TACFs) to the agent. The agent must imprint on each transferred certificate the unique reference number assigned by each Participant to each transfer.

Please acknowledge your agreement to the above criteria by signing below.

_____
Signature

_____
Print Name

_____
Title

_____
Transfer Agent Name

Please print your name, your title, and the name of the FAST Transfer agent you represent.

## EXHIBIT 5

**Bold, underlined text** indicates text being added to the DTC rules.

### THE DEPOSITORY TRUST COMPANY

### RULES

\*\*\*

### Rule 6 Services

\*\*\*

[The following language is to be inserted at the end of this rule]

**Under no circumstances will the Corporation be liable for the acts, delays, omissions, bankruptcy, or insolvency of any third party, including without limitation, any depository, custodian, sub-custodian, clearing or settlement system, transfer agent, registrar, data communication service or delivery service ("Third Party"), unless caused directly by the Corporation's gross negligence, willful misconduct, or violation of Federal securities laws for which there is a private right of action.**

**Under no circumstance shall the Corporation be liable for selecting or accepting any Third Party as an agent of the Corporation, including as a transfer agent participating in the Fast Automated Securities Transfer (FAST) Program.**

\*\*\*