UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
OLDE MONMOUTH STOCK
TRANSFER CO., INC.,

               Plaintiff,

      vs.                                    07 CV 0990 (CSH)

DEPOSITORY TRUST & CLEARING
CORPORATION and DEPOSITORY
TRUST COMPANY,

               Defendants.
-------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO DISMISS COMPLAINT

PROSKAUER ROSE LLP
Gregg M. Mashberg (GM-4022)
Karen D. Coombs (KC-3538)
Dolores DiBella (DD-9637)
1585 Broadway
New York, NY 10036
(212) 969-3000
*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 4

I.  PLAINTIFF'S NEW ASSERTIONS DO NOT SUPPORT THE CLAIMS IN ITS
    COMPLAINT ............................................................................................................. 4

II. EVEN IF PROPERLY PLED, PLAINTIFF'S NEW ASSERTIONS WOULD FAIL TO
    STATE ANY ACTIONABLE CLAIM UNDER THE ANTITRUST LAWS .................... 6

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

CASES

*A.I.B. Express, Inc. v. FedEx Corp.*,
    358 F. Supp. 2d 239 (S.D.N.Y. 2004).................................................................................8

*Anderson v. Aset Corp.*,
    329 F. Supp. 2d 380 (W.D.N.Y. 2004)...............................................................................4

*Dawson v. Bumble & Bumble*,
    246 F. Supp. 2d 301 (S.D.N.Y. 2003)................................................................................5

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005)................................................................................4

*Fezzani v. Bear, Stearns & Co.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)............................................................................4-5

*Floors-N-More, Inc., v. Freight Liquidators*,
    3142 F.Supp. 2d 496 (S.D.N.Y. 2001)..............................................................................8

*Kahn v. iBiquity Digitial Corp.*,
    2006 U.S. Dist. LEXIS 89049 (S.D.N.Y. Dec. 7, 2006) ...................................................9

*Kalin v. Xanboo, Inc.*,
    2007 U.S. Dist. LEXIS 3342 (S.D.N.Y.  Jan. 12, 2007)................................................4, 9

*Nat'l Camp Ass'n v. Am. Camping Ass'n*,
    2000 U.S. Dist. LEXIS 18194 (S.D.N.Y. Dec. 15, 2000) .................................................8

*Verizon Comm'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)........................................................................................................12

OTHER AUTHORITIES

*Concept Release: Securities Transactions Settlement*,
    SEC Rel. No. 33-8398, 69 Fed. Reg. 12922 (Mar. 18, 2004)....................................10, 11

*Federal Rules of Evidence*,
    Fed. R. Evid. 201(b)........................................................................................................10

*Securities Exchange Act of 1934*,
    15 U.S.C. §§ 78q.........................................................................................................7, 10

*The Uniform Commercial Code*,
    N.Y. U.C.C. § 8-102(a)(14)...............................................................................................7

    N.Y. U.C.C. § 8-503, Comment 2 ...................................................................................11

Defendants The Depository Trust & Clearing Corporation and The Depository Trust Company ("DTC") submit this reply memorandum of law in further support of their motion to dismiss the Verified Complaint filed by Plaintiff Olde Monmouth Stock Transfer Co., Inc. ("OMST") on the grounds that it fails to state a claim on which relief may be granted.

## PRELIMINARY STATEMENT

The accusatory rhetoric in Plaintiff's opposition papers is matched only by the utter dearth of legal authority for its claim. Defendants are not competitors in Plaintiff's market. Defendants do not provide transfer agent services; they are consumers of those services and, as a matter of law, have a right to determine with whom they wish to contract for such services. Because Defendants are not acting to exclude competition from the market in which they themselves compete, Defendants' business decisions cannot be characterized as "anticompetitive" within the meaning of the Sherman Act. Accordingly, OMST cannot, as a matter of law, state an actionable claim for monopoly or attempted monopoly against Defendants.

In its Verified Complaint, OMST focused exclusively upon DTC's purported rejection of OMST's application to be appointed a FAST agent, alleging that:

- Defendants purportedly rejected OMST's application to enter into a contract with DTC to perform services (recordation of book-entry transfers) which would otherwise be the responsibility of DTC;[1]

- When OMST appealed the rejection of its application, Defendants allegedly did not act quickly enough for OMST's taste in reconsidering it; and

---

[1] As noted by DTC is its opening brief, the criteria for review and approval of FAST agent applications are currently under consideration by the U.S. Securities and Exchange Commission ("SEC"). *See,* DTC Mot. to Dism. at 25, n.14. Accordingly, DTC noted, to the extent that OMST seeks to challenge those standards or their application, its complaint is more properly directed to that agency than this Court. Plaintiff did not respond to this assertion in its Opposition.

- Defendants allegedly advised certain of OMST's customers that OMST had not been approved as a FAST agent.

In their previous motion papers, Defendants demonstrated that these allegations failed to state any actionable claim, under the antitrust laws or otherwise. Apparently recognizing the futile nature of the claims as filed, OMST now seeks, through its reply papers, to amend its complaint *sub silentio* and assert entirely different theories. Rather than the contentions in its complaint, OMST now submits a March 17, 2007 Declaration of Susanne Trimbath ("Trimbath Decl.") which in scattershot fashion:

- Accuses Defendants of having acted twelve years ago to prevent transfer agents from competing with securities intermediaries in assisting customers directly with the purchases, sales and transfers of stock;

- Makes unwarranted implications of unalleged "conspiracies" premised on the unsurprising assertion that many of DTCC's participants (*i.e.,* the nation's major banks and brokerage houses) are affiliated with some current FAST agents; and

- Mischaracterizes Defendants' goal of immobilization of paper certificates as somehow inconsistent with the functions performed by securities transfer agents such as Plaintiff.[2]

OMST's newly-minted, skewed arguments cannot save its complaint from dismissal. First, it is well-settled that a party may not rewrite or amend its pleadings through motion practice, and this Court should reject OMST's attempt to do so. Not one of OMST's allegations bears any relevance to whether DTC holds a monopoly in the market for transfer agent services. Not one of OMST's allegations bears any relevance to whether DTC's alleged rejection of

---

[2] As Ms. Trimbath concedes, she was an employee of DTC over 13 years ago. Trimbath Decl. ¶ 3. Thus, it is not surprising that, as discussed *infra*, much of Ms. Trimbath's declaration is based on very old information, or premised on what she claims to have been told by unidentified third parties in unspecified contexts. *See* Trimbath Decl. ¶ 23. Nor is it surprising that the allegations of Ms. Trimbath's declaration bear no relevance to OMST's complaint, given that she does not claim even to have reviewed that pleading.

2

Plaintiff's FAST agent application could have any effect on competition as a whole, such that it could constitute antitrust injury. And, not one of OMST's allegations bears any relevance to whether DTC attempted to induce third parties not to do business with OMST. Accordingly, those allegations are irrelevant as a matter of law. They may not be taken into account in determining whether OMST has stated an actionable claim.

Second, even if this Court were to overlook Plaintiff's improper submission and consider these new allegations, it should still dismiss the complaint as a matter of law. Accepting the new facts OMST seeks to assert as true, for purposes of this motion, they demonstrate only that other transfer agents (not including OMST) were purportedly unable to enter an *entirely different market* (*i.e.,* the market for providing direct services to consumers for the purchase and sale of stock, as securities intermediaries). OMST's new allegations regarding alleged efforts by the securities industry to become a "paperless" market (*i.e.,* the immobilization of physical certificates at DTC, and recordation of transfers of ownership by "book entry," including book entries made at the transfer agent level) do not show any nefarious intent aimed at OMST or any other transfer agent. And, of course, none of these allegations demonstrates "anticompetitive" conduct by a competitor in the market for transfer agent services – the *sine qua non* of an antitrust claim. Nothing in the Trimbath Declaration supports any cause of action by OMST against DTC – much less the cause of action OMST has chosen to file.[3]

At bottom, OMST's Verified Complaint demonstrates nothing more than pique over DTC's business determination not to appoint OMST as its agent, and the allegedly slow pace at which DTC is reconsidering that determination. Its attempt to use the antitrust laws as a lever to

---

[3] Moreover, because neither the allegations of the Verified Complaint nor the allegations set forth in Plaintiff's reply papers suffice to state an actionable claim *even if accepted as true*, it is clear that Plaintiff is not entitled to the purported "limited discovery" it demands. *See* OMST Opp. Mem. at 4, 7 n.2.

3

force DTC to engage in business with OMST so is ill-considered. The antitrust laws are not intended to litigate all business disputes. Because OMST has not even alleged tortious conduct, much less the sort of conduct that implicates restraint of trade, this Court should dismiss the complaint and direct OMST to bring any grievances it may have regarding the criteria for FAST agents to the attention of the U.S. Securities and Exchange Commission, as the agency with primary jurisdiction over the issue.

## ARGUMENT

### I.  PLAINTIFF'S NEW ASSERTIONS DO NOT SUPPORT THE CLAIMS IN ITS COMPLAINT

OMST's papers do not support or clarify the assertions in its complaint, nor do they respond to DTC's arguments in support of dismissal. Instead, OMST's papers contain entirely unrelated facts and new theories. It is well-settled law that a plaintiff may not use affidavits or memoranda of law as a vehicle for rewriting its complaint, and this Court can and should decline to address the new assertions in OMST's opposition papers on this ground alone. *See, e.g., Kalin v. Xanboo, Inc.,* 2007 U.S. Dist. LEXIS 3342, at *12-14 (S.D.N.Y. Jan. 12, 2007) (dismissing complaint pursuant to Rule 12(b)(6); court would not consider affidavit and new exhibit submitted by plaintiff in opposition to motion); *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) (plaintiff's attempt to allege securities accounting violations not alleged in the complaint rejected in accordance with "longstanding precedent…that parties cannot amend their pleadings through issues raised solely in their briefs"); *Anderson v. Aset Corp.,* 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004) (rejecting plaintiff's attempt in briefing on motion to dismiss to re-cast his complaint to avoid preemption; "the complaint says what it says, and a memorandum of law is not a proper vehicle for rewriting or amending the complaint"); *Fezzani v. Bear, Stearns & Co.,* 384 F. Supp. 2d 618, 647 (S.D.N.Y. 2004) (arguments in plaintiff's brief

that liability could be imposed based on co-conspirator liability were rejected where complaint contained no allegations of conspiracy); *Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301, 316 (S.D.N.Y. 2003) (entering summary judgment in favor of defendant notwithstanding plaintiff's purported clarification of her claims through briefing; plaintiff's "clarification effectively endeavors to rewrite or amend the Complaint through her opposition brief, a procedure not permitted by the Federal Rules").

Here, Plaintiff's Verified Complaint is premised exclusively on DTC's alleged rejection of OMST's application to become a FAST agent. *See* Compl. ¶¶ 22-33. Plaintiff alleges that registration as a FAST agent is required in order for it to provide Direct Registration System ("DRS") services to the issuers who are its customers, and that DRS will soon be a requirement for issuers who trade on the major exchanges. *Id.* ¶¶ 16-21. The Complaint is not a challenge to the DRS program itself. It contains no allegations regarding any non-FAST transfer agent services OMST or any other transfer agent may or may not seek to provide. Nor are there any assertions in the Complaint itself regarding DTC's consideration of the FAST applications of any other transfer agent. Rather, the entirety of OMST's action arises from DTC's alleged conduct in connection with OMST's own FAST application, and the entirety of OMST's alleged claims of "anticompetitive" conduct are premised on nothing more than its own alleged injury.

Yet OMST's opposition barely mentions the actual allegations before this Court. Apparently recognizing that, because DTC is not a competitor in the market for provisions of transfer agent services to issuers, there is, as a matter of law, no basis for an antitrust claim concerning such market, OMST abandons those allegations. Instead, it now asks this Court to assume the existence of an unpled conspiracy between DTC and the major banks and brokerage houses that make up its Participants, in order to suggest that those Participants seek to eliminate

5

OMST from competition with unidentified affiliates of those Participants. *See* OMST Opp. Mem. at 2. OMST asks this Court to consider allegations – nowhere to be found in its Complaint – that fifteen years ago the transfer agent industry sought to implement an entirely different form of direct registration system, apparently hoping that this Court will now consider whether the current DRS system was enacted 15 years ago for anticompetitive reasons.[4] *Id.* at 3. And, OMST asks this Court to consider a purported "trend" in decline of small transfer agents over the last 30 years, as though such assertion bore any relevance to the Complaint's allegations regarding OMST's single FAST application. *Id.*

We demonstrate below that, even were the Court to consider this jumble of unpled assertions, such assertions do not demonstrate any wrongful conduct, much less conduct actionable under antitrust laws. But this Court need not even reach the issue, as none of these assertions have anything to do with the Complaint itself. Thus, because Plaintiff has failed to support the allegations of its Complaint, and cannot state a claim based on those allegations as a matter of law, the Complaint should be dismissed.

## II.   EVEN IF PROPERLY PLED, PLAINTIFF'S NEW ASSERTIONS WOULD FAIL TO STATE ANY ACTIONABLE CLAIM UNDER THE ANTITRUST LAWS

The new assertions in Plaintiff's opposition papers do not support *any* actionable antitrust claims, much less the claims Plaintiff has actually brought. Accordingly, even were this Court to consider those assertions as an (improper) amendment to the Complaint, it should nonetheless dismiss the action as a matter of law.

Relying on the Trimbath Declaration, Plaintiff first asserts that "Defendants in fact <u>do</u> engage in direct competition with Olde Monmouth." OMST Opp. Mem., at 2 (emphasis in

---

[4]    Plaintiff does not address how such a claim, even if properly pled, would not be barred by applicable statutes of limitation, an issue DTC expressly reserves its right to raise should such a claim be made.

6

original); *see* Trimbath Decl. ¶ 10. But Trimbath and OMST do not even allege (nor could they) that DTC provides or has ever provided transfer agent services to issuers, *i.e.,* maintaining issuers' stock ledger books and processing withdrawals by transfer, cancelling and issuing new certificates, etc.[5]

Rather, Trimbath first addresses an initiative, DRS-TA, that was proposed by a subcommittee of transfer agents in 1992 – fifteen years ago. Trimbath Decl. ¶ 12. As explained by Trimbath, DRS-TA would have permitted transfer agents to buy, sell and transfer shares of particular issues directly on behalf of the shareholders of that issue. *Id.* ¶ 14. In other words, the proposed program was not an enhancement of traditional transfer agent services; rather, it proposed a method whereby transfer agents would expand the scope of their business into the separate market of securities intermediaries.[6] *See* Trimbath Decl. ¶ 16. Because this proposed program blurred the demarcations between transfer agents and securities intermediaries, it is hardly surprising that, as Trimbath grudgingly concedes, the international financial industry in fact *disapproved* of the proposed DRS-TA. *Id.* ¶ 11. There is no allegation that DTC had anything to do with the failure of DRS-TA.

Thus, even accepting Trimbath's characterization of the DRS program recently adopted by the major stock exchanges (for which Trimbath has invented the term "DRS-DTC") as having been adopted instead of the disapproved DRS-TA program, *it does not follow that DTC competes in the transfer agent market*. The current DRS program has nothing to do with the rejected

---

[5]  As noted in DTC's Motion to Dismiss, at p. 21, any stock transfer agent must as a matter of federal law be registered as such with the SEC. 15 U.S.C. § 78q-1(c). DTC is not so registered, nor has it sought such registration. Plaintiff does not allege anything to the contrary.

[6]  The Uniform Commercial Code defines securities intermediaries as clearing corporations or persons (including banks or brokers) that maintain securities accounts for others in the ordinary course of their business. *See* N.Y. U.C.C. § 8-102(a)(14). *Compare* Tulaney Decl. ¶¶ 9-11 (describing roles and duties of a transfer agent).

proposal on which Trimbath relies. And, of course, the FAST program which is the basis of Plaintiff's complaint is distinct from DRS, and has been in place at DTC for over 30 years, although OMST never applied to the program before 2006.

Accepting Trimbath's allegations regarding DRS-TA as true solely for purposes of this motion, those allegations would at most imply that years ago transfer agents sought to compete in the market for securities intermediaries and failed. OMST does not (and could not) allege that it has attempted to compete in this market, *compare A.I.B. Express, Inc. v. FedEx Corp.* 358 F. Supp. 2d 239, 249, (S.D.N.Y. 2004) (dismissing antitrust claim where defendant did not compete in plaintiff's relevant market). Nor does OMST allege that DTC's denial of its FAST application affects OMST's ability to compete in the securities intermediary market. *Compare Nat'l Camp Ass'n v. Am. Camping Ass'n*, 2000 U.S. Dist. LEXIS 18194, at *17-18 (S.D.N.Y. Dec. 15, 2000) (plaintiff failed to produce evidence that membership in defendant's organization was essential to its ability to compete effectively). Nor does it allege that OMST's failure to be appointed as a FAST agent has caused any harm to competition. *Compare Floors-N-More, Inc., v. Freight Liquidators,* 142 F. Supp. 2d 496, 501-02 (S.D.N.Y. 2001) (dismissing antitrust complaint where plaintiff could not demonstrate harm to the industry as a whole, even though plaintiff itself may have been injured by defendant's conduct).

Plaintiff next asserts that many of the major banks and brokerage houses that make up DTC's Participants "either are FAST-approved transfer agents or closely affiliated with companies that are FAST-approved transfer agents." Trimbath Decl. ¶ 19; *see* OMST Opp. Mem. at 2-3. Plaintiff apparently asks this Court to infer that DTC favors its own Participants for admission to FAST over other applications – an unwarranted inference in the first place,

8

given Plaintiff's concession that only one-half of the approved FAST agents are owned by or affiliated with DTC's Participants.  OMST Opp. Mem. at 7.

In any event, even assuming that some unspecified percentage of DTC's Participants compete with OMST in the market for transfer agent services, it does not follow that *DTC* competes with OMST, or that DTC could be subject to a Section 2 claim.  Plaintiff cites no authority (and Defendants are aware of none) that could impute competitor status to DTC merely on the basis that some members of its Board of Directors are employed by OMST's alleged competitors.[7]

Plaintiff next makes reference to what it terms an "irrefutable and unmistakable trend toward complete ownership of all issuers' outstanding shares in the name of Defendants' nominee, Cede & Co.," supplementing this with assertions that DTC seeks to move toward immobilization of physical stock certificates in what it terms a "Roach Motel."  OMST Opp. Mem. at 10, 11; *see* Trimbath Decl. ¶ 24.  Although it is unclear what inferences Plaintiff hopes the Court will draw from these assertions, to the extent that plaintiff believes them to demonstrate anticompetitive intent toward transfer agents, Plaintiff misapprehends the antitrust laws, as alleged anticompetitive intent standing alone is wholly insufficient absent a showing of dominant market share by the defendant.  Even more fundamentally, to the extent that Plaintiff believes these allegations to demonstrate any wrongful intent whatsoever, Plaintiff misapprehends the modern system for clearing and settling securities transactions as envisioned

---

[7]    Neither OMST's Verified Complaint, nor any of its papers submitted in connection with these pending motions, contain any factual allegations that could support either a claim of conspiracy between DTC and its Participants, or a claim for piercing DTC's corporate veil.  Both such claims require more than mere conclusory assertions (*see, e.g., Kalin v. Xanboo, Inc.,* 2007 U.S. Dist. LEXIS 3342 at *28-31 (dismissing complaint containing only conclusory allegations of alter ego); *Kahn v. iBiquity Digitial Corp.,* 2006 U.S. Dist. LEXIS 89049, at *15-18 (S.D.N.Y. Dec. 7, 2006) (dismissing conclusory allegations of antitrust conspiracy)), and Plaintiff has not even provided that.  Its attempt to substitute vague inferences should be rejected out of hand.

9

by Congress and implemented by the SEC. Immobilization and dematerialization of physical stock certificates has long been encouraged by the SEC. *See Concept Release: Securities Transactions Settlement*, SEC Rel. No. 33-8398, 69 Fed. Reg. 12922, 12931 (Mar. 18, 2004) (copy annexed as Exhibit A).[8]

In enacting Section 17A of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78q, *et seq.*, Congress' explicit goal was to facilitate the prompt and accurate clearance and settlement of securities transactions, including the transfer of record ownership and safeguarding of securities and funds related to clearance and settlement activities. 15 U.S.C. § 78q-1(a)(1)(A). The SEC, as the federal agency vested with authority to oversee and implement this goal, has thus found that:

> By centralizing and automating securities settlement, by reducing the movement of publicly traded securities in the U.S. markets, and by facilitating the prompt and accurate settlement of securities transactions, DTC serves a critical function in the National Clearance and Settlement System.

SEC Order, 68 Fed. Reg. 35037, 35041 (June 11, 2003) (annexed to the previously-submitted Tulaney Decl. as Exhibit A). Given the daily trading volume of billions of shares, it is clear that exchange of paper certificates for each such transaction would be impossibility, imposing enormous inefficiencies, delays and risks on the system. (Indeed, Section 17A was enacted in response to the "paperwork crisis" of the 1970s, caused by exactly those inefficiencies.) Rather, shares are deposited at DTC by its Participants, registered in the name of DTC's nominee, Cede & Co., and immobilized, permitting the millions of daily securities transactions to be settled by the book entry movement of positions in the DTC accounts of its Participants. Tulaney Decl. ¶¶

---

[8]    Because this document is a public statement of a federal agency, published in the Code of Federal Regulations, this Court may take judicial notice of its contents even on a motion to dismiss. Fed. R. Evid. 201(b).

4-6. This is precisely what Congress envisioned in enacting 17A, and represents the policy pursued by the SEC:

> Consistent with its Congressional directive, the [Securities and Exchange] Commission has long encouraged the use of alternatives to holding securities in certificated form in its effort to improve efficiencies and decrease risks associated with processing securities certificates. The Commission approved DTC's registration as a clearing agency operating as a depository in order to immobilize securities in a registered clearing agency and settle transactions by book-entry movements. Registration of DTC as a clearing agency *constituted an important step in achieving increased immobilization of securities in accordance with the goals established by Congress.*

*Concept Release: Securities Transactions Settlement, supra*, at 12931 (emphasis added); *see also id.* at 12933-34.

Dematerialization does not affect the plaintiff's putative market for transfer agent services. That the physical securities themselves are immobilized at DTC does *not* mean that DTC acts as a transfer agent, nor does it mean that transfer agents are being squeezed out of their industry. Regardless of whether DTC is the nominal owner of trillions of dollars worth of securities, it is the beneficial owners, *i.e.*, DTC's participants and their customers, who maintain the beneficial rights in those securities (*see* N.Y. U.C.C. § 8-503, Comment 2) – including the right to request withdrawals, obtain replacements, receive tender offers and all other services performed by transfer agents. OMST's reference to DTC's nominal ownership mixes apples and oranges – and is wholly immaterial to OMST's claims regarding the transfer agent industry.

Plaintiff next accuses DTC of "overreaching" with respect to the authority it has purportedly sought to assert over FAST agents in a proposed rule filing (since amended) concerning the FAST program. Trimbath Decl. ¶¶ 22-24; OMST Opp. Mem at 12. Plaintiff's reliance on this rule is puzzling, both because it has never been enacted and because DTC has filed an amended version of that rule with the SEC to be published for notice and comment –

11

reflecting that the SEC, rather than this Court, has primary jurisdiction over the issue of the proper standards for consideration of FAST agent applications. Moreover, Plaintiff's contention that DTC should not have supervisory authority over transfer agents is disingenuous at best: DTC does not assert that it has the authority to monitor the performance of transfer agents generally, but only that it may monitor the performance of FAST agent functions engaged in on DTC's behalf pursuant to a contract between the FAST agent and DTC. *See* Tulaney Decl., Ex. C (sample contract between DTC and a FAST agent). Of course, as a consumer of services pursuant to contract, DTC has the right to decide with whom it will do business, and the circumstances under which it will choose to do so. *See, e.g., Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (the antitrust laws do not restrict the right of a consumer of services "freely to exercise . . . independent discretion as to parties with whom he will deal").

Finally, OMST seeks to take DTC to task for stating that issues not listed on the major stock exchanges of the NYSE, AMEX or NASDAQ need not adopt DRS, and therefore need not be FAST-approved. OMST asserts that DRS-FAST is likely to become mandatory for issues that trade on smaller regional exchanges as well. Trimbath Decl. ¶ 25. This assertion, however, hardly warrants Plaintiff's accusation that Defendants reference to those three major stock exchanges (DTC Mot. at p.8) was "*brazen[] and false[].*" Trimbath Decl. ¶ 25 (emphasis in original). As is clear from the context of Defendants' statement, Defendants were pointing out that the issuers who are the overwhelming majority of OMST's customers trade on electronic bulletin boards (as opposed to *any* exchange), and thus have no need for DRS-FAST – a fact that OMST does not dispute.

Thus, OMST's new assertions do not establish that OMST itself – much less the market for transfer agent services in general – could suffer any anti-competitive harm from the denial of OMST's FAST application.

## CONCLUSION

For the reasons set forth above, and in their previously-filed papers, Defendants respectfully request that this Court dismiss OMST's complaint for failure to state a claim on which relief can be granted.

Dated: April 2, 2007

PROSKAUER ROSE LLP

By: _____
Gregg M. Mashberg (GM-4022)
Karen D. Coombs (KC-3538)
Dolores DiBella (DD-9637)

1585 Broadway
New York, NY 10036
(212) 969-3000
*Attorneys for Defendants*

13