UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

OLDE MONMOUTH STOCK TRANSFER CO., INC., :

                                Plaintiff,    :

        -- against --                         :

                                                    07 CV 0990 (CSH)

DEPOSITORY TRUST & CLEARING                   :
CORPORATION and DEPOSITORY TRUST
COMPANY,                                      :
                                Defendants.

                                              :

-------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS
## MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM


Plaintiff Olde Monmouth Stock Transfer Co., Inc.

("Olde Monmouth") respectfully submits this Memorandum of Law in

support of its motion, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss Defendants' Counterclaim for *prima

facie* tort in this action.


### PRELIMINARY STATEMENT


In what appears to have been little more than a

fleeting afterthought, Defendants half-heartedly have appended to

their Answer a counterclaim purportedly sounding in *prima facie*

tort -- a claim occasionally derided by the New York Court of

Appeals as an attempted "'catch-all' alternative for every cause

action which cannot stand on its [own] legs," Burns Jackson

Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 720 (1983).

Innumerable judicial decisions, however, instruct that the bedrock requirement of a properly pleaded claim of *prima facie* tort is an allegation that the conduct complained of must have been undertaken for no reason other than to inflict harm -- i.e., that there can be no other business, financial or self-preservation motivation for the challenged conduct. Accordingly, such precedent demonstrates that Defendants have improperly pled their counterclaim, inasmuch as they have failed to allege that Plaintiff's transfer fee increases were imposed *solely and exclusively* to inflict economic harm on DTC.

To the contrary in fact, Defendants acknowledge in their counterclaim (Defs. Counterclaim ¶¶ 4, 11) that Olde Monmouth's decision to increase its fees was motivated primarily by its desire to prompt DTC to accede to Plaintiff's longstanding requests for admission to Defendants' FAST Program, i.e., a business decision motivated by financial self-preservation.

Because Defendants' allegations in and of themselves contravene well-established pleading requirements, their counterclaim for *prima facie* tort is fatally defective and should be summarily dismissed with prejudice.

## FACTUAL BACKGROUND

Given the present procedural posture of this action, it is respectfully suggested that a lengthy recitation of

2

Defendants' many grievous acts that gave rise to Olde Monmouth's antitrust claims is unnecessary. Insofar as relevant to Plaintiff's instant dismissal motion, the facts may be briefly stated.

Virtually from the very moment that Defendants announced the imposition of their mandatory FAST Program on the securities industry, Olde Monmouth commenced a series of concerted efforts to apply for and secure participation in the new program. Plaintiff's efforts, which are set forth in greater detail in the Complaint in this action, included, in addition to the prompt submissions of all required formal application materials, innumerable telephone calls and written inquiries, all of which were variously rejected, rebuffed and ignored by Defendants over a period of several months.

Having grown increasingly frustrated by Defendants' repeated refusals to address Olde Monmouth's concerns about its desire to participate in the FAST Program, Plaintiff began gradually to increase the fees it charged for its stock transfer services.[1] Olde Monmouth's decision to raise its fees was not undertaken lightly or maliciously. Instead, it was borne of profound frustration and understandable impatience with Defendants' unjustifiable obstinacy with respect to Plaintiff's FAST Program application, and the new fees were imposed in the

---

[1]     There is no dispute that Olde Monmouth at all times has been free to establish whatever fee schedule it deems appropriate. Similarly, it is undisputed that Defendants freely, willingly and promptly remitted the increased fees without comment or complaint of any kind for an extended period of time.

3

hope that Defendants would take note of them and be prompted to engage in some type of constructive dialog concerning the status of Plaintiff's FAST application.[2]

When DTC finally did take exception to the increased fees, rather than reach out to Olde Monmouth for any meaningful discussion of its pending FAST Program application, DTC instead seized upon Plaintiff's new fee structure as a pretext for contacting Plaintiff's clients and attempting to disrupt their longstanding relationships with Olde Monmouth.  DTC's improper and unconscionable behavior vis-à-vis Plaintiff's customers will be vigorously and thoroughly explored during the future discovery ordered by the Court in this action.

Apparently as little more than a feeble strategic afterthought, Defendants now point to Plaintiff's enhanced transfer fees as the purported basis for a counterclaim of *prima facie* tort.  Because there is manifest precedent mandating the dismissal of such claims unless the acts complained of are undertaken **solely with disinterested malice,** i.e., without any possible business or financial purpose, the Defendants' counterclaim should be summarily dismissed.

---

[2]     The allegations contained in Plaintiff's Complaint provide additional details about Olde Monmouth's reluctant decision to increase its transfer service fees:

> Plaintiff's decision to raise its fees was motivated solely by its desire to prod DTC to discuss and process Olde Monmouth's FAST application and to compensate it for its loss of business and its inability to attract new clients as a direct result of DTC's unreasonable rejection of its FAST application.

(Cmplt. ¶ 32.)

4

## ARGUMENT

### Defendants' Counterclaim Should Be Dismissed For Failure Properly To State A Claim For *Prima Facie* Tort.

The *sine qua non* of a claim sounding in *prima facie* tort is an allegation that the offending conduct has been undertaken solely, and for absolutely no purpose other than, to inflict harm on the complaining party.  The mere existence of an articulable business or financial rationale of any kind for the challenged conduct necessarily dictates summary dismissal.  In the circumstances presently before the Court, because the Defendants clearly are unable, and have failed, to allege that Olde Monmouth's fee increases were imposed solely with the intent to harm DTC, overwhelming precedent mandates summary dismissal of Defendants' counterclaim with prejudice.

It is axiomatic that to state a viable claim for *prima facie* tort, a party must allege that the challenged action was undertaken **solely and exclusively** with malicious motivation -- and for no other purpose whatsoever -- a malicious and otherwise wholly unjustifiable motivation that Justice Holmes once characterized as "'disinterested malevolence,'" see Burns Jackson, 59 N.Y.2d at 333, 464 N.Y.S.2d at 721 (quoting American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U.S. 350, 358, 41 S. Ct. 499, 500 (1921)).  According to the seminal New York Court of Appeals case dealing with *prima facie* tort:

> [T]here is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, unless defendant acts from

5

"disinterested malevolence" . . . by which it is meant "that the genesis which will make a lawful act unlawful must be a malicious-one unmixed with any other and exclusively directed to injury and damage of another."

Id. (citations omitted).

Accordingly, there can be no recovery in *prima facie* tort unless such malevolence is the **one and only motivation** for the action complained of:  "'The sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff.  Where there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort.'"  Sharma v. Skaarup Ship Mgmt. Corp., 699 F. Supp. 440, 445 (S.D.N.Y. 1988) (quoting Marcella v. ARP Films, Inc., 778 F.2d 112, 119 (2d Cir. 1985)), aff'd, 916 F.2d 820 (2d Cir. 1990), cert. denied, 499 U.S. 907 (1991); cf. O'Brien v. Alexander, 898 F. Supp. 162, 174 (S.D.N.Y. 1995) ("It is immaterial that defendants' actions may have had other allegedly reprehensible motives, since plaintiff has failed to show that defendants' actions were motivated *solely* by malice.") (original emphasis), aff'd, 101 F.3d 1479 (2d Cir. 1996).

A review of Defendants' counterclaim easily and plainly reveals their obvious failure adequately to state a claim for *prima facie* tort, inasmuch as Defendants themselves concede, as they must, that Plaintiff acted from well-founded concerns about its financial security -- i.e., that Olde Monmouth's motivation for increasing its transfer agency fees was to prompt

6

"DTC to accede to [Plaintiff's] demands to be named as a FAST agent." (Defs. Counterclaim ¶ 4; see also id. ¶ 11.)

Plaintiff's economic need to participate in the FAST Program was undisputedly the primary motivation for changing its fee structure; its very continued viability as a business enterprise is dependent upon gaining acceptance into the FAST Program and this stark business reality unquestionably was the basis for its fee changes. Moreover, as this Court acknowledged in its recent Memorandum Opinion and Order of April 23, 2007: "Beginning in July 2006, Olde Monmouth also decided to raise the fees that it charged DTC *in an effort to pressure DTC to process and approve Olde Monmouth's FAST application.*" (Mem. Op. at 4 (emphasis added).)

It is therefore obvious that Olde Monmouth's fee structure was altered as a means of protecting its own business interests and it necessarily follows that immediate dismissal of Defendants' counterclaim is called for: "[I]f a defendant's motive is tainted by self interest, profit or business advantage, a *prima facie* tort action cannot be sustained." Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1239 (S.D.N.Y.) (citing Burns Jackson and American Bank & Trust Co.), aff'd, 43 F.3d 1458 (2d Cir. 1994).

The mere existence of such a business-related, self-preservation, or financial motive, which Defendants themselves acknowledge (Defs. Counterclaim ¶¶ 4, 11), requires dismissal of

7

their fatally defective counterclaim.[3]  See, e.g., Besicorp Ltd. v. Kahn, 290 A.D.2d 147, 150, 736 N.Y.S.2d 708 (3rd Dept.) (dismissal mandated where actions motivated by desire to maximize financial gain), leave to appeal denied, 98 N.Y.2d 601 (2002); Bainton v. Baran, 287 A.D.2d 317, 318, 731 N.Y.S.2d 161 (1st Dept. 2001) (dismissal mandated where "defendants acted in their self-interest, and not solely out of disinterested malevolence"); Niagara Mohawk Power Corp. v. Testone, 272 A.D.2d 910, 911-12, 708 N.Y.S.2d 527 (4th Dept. 2000) (dismissal mandated where defendants acted from "pecuniary motives"); Hessel v. Goldman, Sachs & Co., 281 A.D.2d 247, 248, 722 N.Y.S.2d 21, 24 (1st Dept.) (dismissal mandated where actions undertaken "to advance their own financial interests"), leave to appeal dismissed in part and denied in part, 97 N.Y.2d 623 (2001); Forken v. CIGNA Corp., 234 A.D.2d 992, 992, 651 N.Y.S.2d 824, 825 (4th Dept. 1996) (dismissal mandated where actions "undertaken to protect 'valid business interests'"); WFB Telecomm., Inc. v. NYNEX Corp., 188 A.D.2d 257, 258-59, 590 N.Y.S.2d 460 (1st Dept. 1992) (dismissal mandated where actions "motivated, at least in part, by legitimate business goals"), leave to appeal denied, 81 N.Y.2d 709 (1993); Holmes Protection of New York, Inc. v. Provident Loan Soc'y of New York, 179 A.D.2d 400, 400, 577 N.Y.S.2d 850 (1st Dept. 1992) (dismissal mandated where actions "motivated by business self-

---

[3]    Defendants' self-serving inclusion of random conclusory allegations that Olde Monmouth acted out of malice is insufficient to withstand the instant motion to dismiss.  E.g., Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000); O'Brien, 898 F. Supp. at 174.

interest"); Quail Ridge Assocs. v. Chemical Bank, 162 A.D.2d 917, 919, 558 N.Y.S.2d 655, 657-58 (3rd Dept.) (dismissal mandated where actions motivated by "valid business interests"), appeal dismissed, 76 N.Y.2d 936 (1990); Luxonomy Cars, Inc. v. Citibank, N.A., 65 A.D.2d 549, 550, 408 N.Y.S.2d 951 (2d Dept. 1978) (same).

Because the existence of Olde Monmouth's financial self-preservation as its motivation appears on the face of Defendants' allegations, their counterclaim necessarily merits summary dismissal. E.g., Sharma, 699 F. Supp. at 446; Simaee v. Levi, 22 A.D.3d 559, 561, 802 N.Y.S.2d 493 (2d Dept. 2005); see also Rodgers v. Grow-Kiewit Corp.-MK, 535 F. Supp. 814, 816 (S.D.N.Y.) ("In the absence of proof that the motivation was entirely malicious, plaintiff has no remedy at law."), aff'd, 714 F.2d 116 (2d Cir. 1982).

In accordance with such overwhelming controlling precedent, Defendants' counterclaim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Counterclaim should be dismissed with prejudice in its entirety.

Dated:   May 18, 2007

Respectfully submitted,

_____/ s /_____
By: Edward R. Gallion (EG-5755)
     Steven Spielvogel (SS-2295)

**GALLION & SPIELVOGEL**
1225 Franklin Avenue
Suite 325
Garden City, New York 11530
516.512.8899

*Attorneys for Plaintiff*
*Olde Monmouth Stock Transfer Co., Inc.*

10