UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X

OLDE MONMOUTH STOCK TRANSFER CO., INC., :

                              Plaintiff,      :

        -- against --            :

                                         07 CV 0990 (CSH)

DEPOSITORY TRUST & CLEARING        :
CORPORATION and DEPOSITORY TRUST
COMPANY,                    :
                      Defendants.

                                   :

--------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN
### SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS COMPLAINT

 

**GALLION & SPIELVOGEL**
Edward R. Gallion (ER-5755)
Steven Spielvogel (SS-2295)
1255 Franklin Avenue
Suite 325
Garden City, New York 11530
(516) 512-8899
*Attorneys for Plaintiff*

June 10, 2007

## TABLE OF CONTENTS

**PAGE**

**PRELIMINARY STATEMENT**................................................................................2

**FACTUAL BACKGROUND**................................................................................4

**ARGUMENT**................................................................................7

**Plaintiff's Motion to Amend its Complaint
Should be Granted**................................................................................7

**CONCLUSION**................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGES**

Apex Oil Co. v. DiMauro,
    641 F. Supp. 1246 (S.D.N.Y. 1986)..................................................12,13

Building Indus. Fund v. Local Union NO. 3, Int'l Bhd.
   of Elec. Workers, AFL-CIO,
    992 F. Supp. 162 (E.D.N.Y. 1996) ........................................ 12-13

Conley v. Gibson,
    355 U.S. 41 (1957) ........................................................... 7

District 65, UAW v. Harper & Rowe, Publishers, Inc.,
    576 F. Supp. 1468 (S.D.N.Y. 1983) ................................................8

Foman v. Davis,
    371 U.S. 178 (1963) ......................................................7,8

Frey & Son, Inc. v. Cudahy Packing Co.,
    256 U.S. 208 (1921) ......................................................12

Graboi v. Kibel,
    432 F. Supp. 572 (S.D.N.Y. 1977) ................................................8

Hanlin v. Michaelson,
    794 F.2d 834 (2d Cir. 1986) ................................................9

Henneberry v. Sumitomo Corp.,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006) ................................................10

Hospital Bldg. Co. v. Trustees of Rex Hosp.,
    425 U.S. 738 (1976) ......................................................10-11,11

In re Worldcom, Inc. Sec. Litig.,
    308 F. Supp. 2d 214 (S.D.N.Y. 2004) ................................................10

Interstate Circuit, Inc. v. United States,
    306 U.S. 208 (1939) ......................................................12

Invamed, Inc. v. Barr Labs., Inc.,
    22 F. Supp. 2d 210 (S.D.N.Y. 1998) ................................................ 11

Lobo Recording Corp. v. Waterland,
    197 F.R.D. 23 (E.D.N.Y. 2000) ................................................8

Milanese v. Rust-Oleum Corp.,
    244 F.3d 104 (2d Cir. 2001) ................................................10

Monsanto Co. v. Spray-Rite Serv. Corp.,
    465 U.S. 752 (1984) ..............................................................13

Norfolk Monument Co., Inc. v. Woodlawn Mem'l Gardens, Inc.,
    394 U.S. 700 (1969) ...................................................... 11,13

Oreck Corp. v. Whirlpool Corp.,
    639 F.2d 75 (2d Cir. 1980) ...............................................13

Pangburn v. Culbertson,
    200 F.3d 65 (2d. Cir. 1999) ............................................ 10

Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.,
    998 F.2d 1224 (3d Cir. 1993) ...........................................14

Poller v. Columbia Broad. Sys., Inc.,
    368 U.S. 464 (1962) ..............................................................11

Posadas de Mexico, S.A. de C.V. v. Dukes,
    757 F. Supp. 297 (S.D.N.Y. 1991) .................................8

Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,
    No. 03 Civ. 1895 (PAC), 2007 WL 39301 (S.D.N.Y. Jan. 8,
    2007) ....................................................................................13-14

State Teachers Retirement Bd. v. Fluor Corp.,
    654 F.2d 843 (2d Cir. 1981) .................................................9

Tenneco, Inc. v. Federal Trade Comm'n,
    689 F.2d 346 (2d Cir. 1982) ...........................................12

Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum,
    738 F. Supp. 1472 (S.D.N.Y. 1990) .............................13

United States v. Falstaff Brewing Corp.,
    410 U.S. 526 (1973) ..............................................................12

United States v. Greater Syracuse Bd. of Realtors, Inc.,
    438 F. Supp. 376 (N.D.N.Y. 1977) ..............................14

Venture Tech., Inc. v. Natural Fuel Gas Co.,
    685 F.2d 41 (2d Cir. 1982) ...............................................14

World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,
    425 F. Supp. 2d 484 (S.D.N.Y. 2006) .................... 11

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    395 U.S. 100 (1969) ..............................................................12

iii

## STATUTES

Fed. R. Civ. P. 12...............................................................................................12

Fed. R. Civ. P. 12(b)(6) ..................................................................................4,10

Fed.R.Civ.P. 15.................................................................2,7,8,9,10,12,15

Fed.R.Civ.P. 15(a) .......................................................................................7

## OTHER AUTHORITIES

*Moore's Federal Practice* § 15.02[1] (3d ed. 2005)...........................................7

Plaintiff Olde Monmouth Stock Transfer Co., Inc. ("Olde Monmouth") respectfully submits this Memorandum of Law in support of its motion, pursuant to Federal Rule of Civil Procedure 15, for leave to amend the Complaint in this action.

## PRELIMINARY STATEMENT

Plaintiff respectfully seeks leave of this Court to amend its Complaint in order to bring to the Court's attention, *inter alia*, facts that are of critical importance in demonstrating the existence of violations of federal antitrust statutes that have been perpetrated by Defendants DTCC and DTC, acting in concert with the subsidiaries of a number of other major national and international financial services institutions. These antitrust violations have been and are deliberately and unlawfully designed and executed to establish, increase and maintain monopolization of the market for the provision of stock transfer agency services.

This monopolization has occurred, and continues to occur, through the unlawful manipulation of the mandatory DRS Program that has been imposed upon the entire securities industry by DTCC and DTC, pursuant to which some 2.5 million issuers have been and will be forced to choose a stock transfer agent from among the mere handful of 35 agents that have been hand-selected and approved by DTC for eligibility for participation in the DRS Program.

In light of the fact that there are currently in existence somewhere between 900 and 1,400 registered stock transfer agents doing business in the United States, any of which equity issuers previously may have chosen to perform stock transfer agency services on their behalf, the enormous and drastic decrease in the number of approved agents to a mere 35, constitutes an unprecedented concentration and consolidation of stock transfer agency services that can be and has been achieved only through the improper redirection and diversion of such transfer agency services away from the many small independent stock transfer agents (such as Plaintiff Olde Monmouth) to those few hand-selected agents, many of them owned by DTC's shareholder/owner Participants, that have been chosen by DTC as members of its exclusive and rarefied DRS-eligible club.

This improper massive redirection and diversion of business away from small independent stock transfer agents has caused and continues to cause severe injury and damage to Olde Monmouth and similarly-situated stock transfer agents, consumers and issuers throughout the United States for the enormous benefit of DTCC, DTC and the other large financial institutions working in concert with them to thwart the antitrust laws.

Olde Monmouth respectfully submits that the facts presently known to and understood by it, as set forth in Plaintiff's proposed First Amended Complaint, more than adequately allege the existence of premeditated and unlawful monopolistic conduct undertaken by DTCC and DTC in cooperation

3

and careful coordination with other major national and international financial services institutions and their subsidiaries that Plaintiff seeks to add as Defendants to these proceedings.

## FACTUAL BACKGROUND

By Memorandum Opinion and Order, dated April 23, 2007 (the "Order"), this Court partially granted Defendants' Rule 12(b)(6) motion to dismiss the complaint in this action, leaving in place Plaintiff's Seventh Cause of Action for tortious interference, while dismissing the remaining six causes of action, all of which alleged violations of federal and state antitrust laws.

In its Order, the Court emphasized that its findings were based solely on those factual allegations contained within the actual four corners of the Complaint, rejecting Plaintiff's attempt to bring to the Court's attention, by way of affidavits submitted in opposition to Defendants' dismissal motion, certain facts of critical importance to Plaintiff's antitrust allegations that Plaintiff had learned subsequent to the initial filing of the Complaint.

The parties conferred with the Court by teleconference on June 1, 2007, after which a Scheduling Order of the same date was issued staying all further proceedings in this action pending adjudication of Plaintiff's instant motion to amend its complaint.

4

Plaintiff's proposed First Amended Complaint sets forth additional factual allegations that Olde Monmouth firmly believes and most respectfully submits are more than sufficient to demonstrate the actionable existence of unlawful and anticompetitive conspiratorial conduct by Defendants DTCC and DTC, acting in concert with other third parties that Plaintiff seeks to add as defendants, in clear violation of federal antitrust statutes.[1]

Review of the proposed First Amended Complaint will reveal, for example, that Plaintiff's newly included allegations concerning the manipulative and anticompetitive manner in which DTCC and DTC have administered the mandatory DRS Program by carefully limiting participation therein for the benefit of an extremely small number of hand-selected DRS-eligible stock transfer agents, many of which are affiliated with Defendants, squarely place before the Court sufficient indications of unlawful conspiratorial conduct that Olde Monmouth respectfully submits will survive any future dismissal attempts and merit Plaintiff the opportunity through discovery to explore the precise nature, membership and scope of this conspiracy.

More specifically, Plaintiff seeks to advance new allegations showing that the actual anticompetitive impact of Defendants' imposition of DRS requirements on the securities industry has been and continues to be the forced consolidation

---

[1] Plaintiff's proposed First Amended Complaint is annexed as Exhibit A to the Declaration of Edward R. Gallion, Esq., dated June 10, 2007 ("Gallion Decl."), which is submitted herewith.

5

and concentration within an extremely small number of DRS-approved stock transfer agents to the direct economic harm of, among other readily identifiable elements of the economy, small independent stock transfer agents, such as Plaintiff Olde Monmouth. Such massive forced redirection and mandatory funneling of stock transfer agency services for the 2.5 million issues that make use of DTCC's and DTC's facilities away from a pool of between 900 and 1,400 registered stock transfer agents to a small group of some 35 agents that have been hand-selected by DTC for DRS participation constitutes *prima facie* indicia of an unlawful conspiracy among Defendants and at least some number of the financial institutions that Plaintiff seeks to add as defendants to this action. Olde Monmouth respectfully submits that such an unprecedented widespread and forced reconfiguration of a pre-existing market can only have come about as a consequence of a concerted unlawful anticompetitive scheme to restrict competition in violation of applicable antitrust statutes.

Similarly, analysis of the proposed First Amended Complaint will establish that Olde Monmouth adequately has alleged that Defendant DTC does, indeed, compete against Plaintiff by, among other means, virtue of the stock transfer agency activities performed by DRS-approved transfer agents owned or otherwise controlled by the shareholder/owner Participants that hold substantial equity positions in Defendant DTC. In this regard, it bears emphasis that Defendants themselves have

6

characterized DRS-approved stock transfer agents as "perform[ing] important functions on DTC's behalf" and have described each such approved transfer agent as "act[ing] as an agent for DTC in maintaining the Cede & Co. balance certificates and confirming the balance daily."[2]

Plaintiff respectfully submits that the new allegations it has included in its Proposed Amended Complaint in connection with the relationship between Defendants and the financial institutions Plaintiff proposes to add as defendants to this action are sufficient to withstand scrutiny under the applicable analysis required by Rule 15.

## ARGUMENT

### Plaintiff's Motion to Amend its Complaint Should be Granted.

Rule 15, which permits amendment at any stage of the litigation, requires that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); see generally *Moore's Federal Practice* § 15.02[1], at 15-9 (3d ed. 2005) ("The Rule allows for liberal amendment in the interests of resolving cases on the merits") (footnote omitted); Conley v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 103 (1957).

The United States Supreme Court has held that Rule 15's "mandate is to be heeded" and leave to amend freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1963).

---

[2] See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunctive Relief and in Support of Defendants' Cross-Motion to Dismiss Complaint, dated March 9, 2007, at 7.

7

"Leave to file an amended complaint is therefore granted freely absent bad faith, undue delay or prejudice to the opposing party." District 65, UAW v. Harper & Rowe, Publishers, Inc., 576 F. Supp. 1468, 1474 (S.D.N.Y. 1983) (citation omitted); see also Foman, 371 U.S. at 182, 83 S. Ct. at 230 ("In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should, as the rules require, be 'freely given.'"); Posadas de Mexico, S.A. de C.V. v. Dukes, 757 F. Supp. 297, 300 (S.D.N.Y. 1991) (leave to amend is to be granted absent showing of bad faith, prejudice or futility); Graboi v. Kibel, 432 F. Supp. 572, 575 (S.D.N.Y. 1977).[3]

In the context of the instant motion, Defendants cannot plausibly assert that Olde Monmouth has failed to act diligently and in good faith in seeking to amend at this early stage of the proceedings in this action. Similarly, Defendants can complain of no delay on Plaintiff's part in making the current application. Plaintiff sought permission to submit its Rule 15 application before the commencement of any discovery in

---

[3] Indeed, even in those circumstances where a motion to amend is made late in the proceedings (which is certainly not the case here), it is still appropriate to grant the motion to amend absent a showing of bad faith by the moving party or undue prejudice to the non-moving party. See, e.g., Lobo Recording Corp. v. Waterland, 197 F.R.D. 23, 26 (E.D.N.Y. 2000). No such factor is present here.

8

this action and quite soon after the adjudication of its motion for injunctive relief and Defendants' dismissal motion.

Nor can Defendants seriously attack Plaintiff's Rule 15 application by claiming undue prejudice of any nature. Where, as here, "new claims are merely variations . . . arising from the same set of operative facts as the original complaint," there simply is no prejudice to the non-moving party and amendment should be permitted. Hanlin v. Michaelson, 794 F.2d 834, 841 (2d Cir. 1986); cf. State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (reversing lower court order denying motion to amend where the new claim "was obviously one of the objects of the discovery and related closely to the original claim.").

Indeed, in many ways the substance of a number of the factual allegations that Olde Monmouth seeks to add to its Complaint already have been disclosed to Defendants, inasmuch as some of this information was included in supplemental papers submitted on Plaintiff's behalf at earlier points in this litigation through the use of affidavits and memoranda of law. Under such circumstances, Defendants certainly may not be heard to complain of any type of prejudice should Plaintiff be permitted to amend its Complaint.

As the Court indicated during the June 1 teleconference, the futility inquiry required by Rule 15 appears to be the appropriate focus of Plaintiff's current application.

Opposition to a Rule 15 motion on grounds of "futility" may be granted **only** "where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of [its] amended claims." Pangburn v. Culbertson, 200 F.3d 65, 70-71 (2d. Cir. 1999). "Leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to sate a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). Accordingly, courts are to evaluate the sufficiency of proposed amended pleadings "through the prism of a Rule 12(b)(6) analysis," Henneberry v. Sumitomo Corp., 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006); see In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 214, 233 (S.D.N.Y. 2004) ("An amendment may be futile if, for example, it would not survive a motion to dismiss brought pursuant to Rule 12(b)(6).").

The wide latitude to be afforded plaintiffs in crafting their pleadings that is envisioned by Rule 12(b)(6) and Rule 15 is especially important in cases involving allegations of antitrust conspiracies and other prohibited anticompetitive conduct. In this regard, as the United States Supreme Court has expressly cautioned, "[i]n antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,'. . . dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746-47, 96 S. Ct. 1848

10

(1976) (quoting Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473, 82 S. Ct. 486 (1962)). The Court has described this dismissal standard as "concededly rigorous." Id.; see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 517 (S.D.N.Y. 2006) ("Before discovery, courts should dismiss antitrust complaints 'sparingly' where the proof of the alleged antitrust violation is largely in the hands of the defendants.") (citing Hospital Bldg. Co., 425 U.S. at 746-47)); Invamed, Inc. v. Barr Labs., Inc., 22 F. Supp. 2d 210, 216 (S.D.N.Y. 1998) ("In antitrust cases, 'where "the proof is largely in the hands of the alleged conspirators," dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'") (quoting Hospital Bldg. Co., 425 U.S. at 746 (quoting Poller, 368 U.S. at 473))).

Olde Monmouth respectfully submits that it is entitled to amend its pleadings and proceed to discovery on its antitrust claims, given the complexity of the scheme alleged and the large (and as yet indefinite) number of participants in Defendants' anticompetitive conduct. "'[S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.'" Norfolk Monument Co., Inc. v. Woodlawn Mem'l Gardens, Inc., 394 U.S. 700, 89 S. Ct. 1391 (1969) (quoting Poller, 368 U.S. at 473)).

As previously noted, the unprecedented reconfiguration

11

of the stock transfer agency industry that has occurred under DTC's manipulative administration of its mandatory DRS Program and has resulted in the massive redirection to, and consolidation within the hands of, such a small number of transfer agents that have been hand-selected by DTC in its wholly unfettered and unsupervised discretion standing alone constitutes sufficient indicia of illegal anticompetitive conduct, which, under controlling Supreme Court precedent, is adequate to satisfy the requirements of Rules 12 and 15. "[C]ircumstantial evidence is the lifeblood of antitrust law[.]" United States v. Falstaff Brewing Corp., 410 U.S. 526, 536, 93 S. Ct. 1096 (1973) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S. Ct. 1562 (1969); Interstate Circuit, Inc. v. United States, 306 U.S. 208, 221, 59 S. Ct. 467 (1939); Frey & Son, Inc. v. Cudahy Packing Co., 256 U.S. 208, 210, 41 S. Ct. 451 (1921)); see also Tenneco, Inc. v. Federal Trade Comm'n, 689 F.2d 346, 361 (2d Cir. 1982) (same).

It regularly is held that "[c]ircumstantial evidence alone . . . can be sufficient to support a finding of an antitrust conspiracy," Apex Oil Co. v. DiMauro, 641 F. Supp. 1246, 1258 (S.D.N.Y. 1986) (citing Interstate Circuit, Inc., 306 U.S. 208 (1939)), aff'd in part, rev'd in part, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987); see also Building Indus. Fund v. Local Union NO. 3, Int'l Bhd. of Elec. Workers, AFL-CIO, 992 F. Supp. 162, 181 (E.D.N.Y. 1996) ("Because direct proof of an illegal agreement is rarely

12

available, an antitrust conspiracy may be proved through the use of circumstantial evidence alone.") (citing, *inter alia*, <u>Transnor (Bermuda) Ltd.</u> v. <u>BP N. Am. Petroleum</u>, 738 F. Supp. 1472, 1483 (S.D.N.Y. 1990); <u>Apex Oil Co.</u>, 641 F. Supp. at 1258), <u>aff'd</u>, 141 F.3d 1151 (2d Cir. 1998)); <u>cf.</u> <u>Monsanto Co.</u> v. <u>Spray-Rite Serv. Corp.</u>, 465 U.S. 752, 764, 104 S. Ct. 1464 (1984) ("[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.") (internal quotations and citations omitted).

When properly viewed within the context of such case authority, the allegations of *prima facie* unlawful conspiratorial conduct that Olde Monmouth seeks to bring before the Court in amended pleadings are more than sufficient to justify leave to amend.  <u>See</u>, <u>e.g.</u>, <u>Oreck Corp.</u> v. <u>Whirlpool Corp.</u>, 639 F.2d 75, 79 (2d Cir. 1980) ("It is not necessary that such a combination be established by direct proof of oral or written agreements; it may be proven by inferences drawn from circumstantial evidence, including the acts and conduct of the alleged conspirators.") (citing <u>Norfolk Monument</u>, 394 U.S. at 704), <u>cert.</u> <u>denied</u>, 454 U.S. 1083 (1981); <u>Reading Int'l, Inc.</u> v. <u>Oaktree Capital Mgmt. LLC</u>, No. 03 Civ. 1895 (PAC), 2007 WL 39301, at *7 (S.D.N.Y. Jan. 8, 2007) ("It is correct that antitrust plaintiffs may (and often must) prove conspiracies by 'circumstantial evidence and the reasonable inferences drawn from such evidence,' rather than

13

through direct evidence.")  (quoting <u>Petruzzi's IGA Supermarkets,</u> <u>Inc.</u> v. <u>Darling-Del. Co.</u>, 998 F.2d 1224, 1230 (3d Cir.), <u>cert</u>. <u>denied</u>, <u>Moyer Packing Co.</u> v. <u>Petruzzi's IGA Supermarkets, Inc.</u>, 510 U.S. 994 (1993) and citing <u>Venture Tech., Inc.</u> v. <u>Natural</u> <u>Fuel Gas</u> Co., 685 F.2d 41, 45 (2d Cir.), <u>cert</u>. <u>denied</u>, <u>Schwimmer</u> v. <u>Sony Corp.</u>, 459 U.S. 1007 (1982)); <u>United States</u> v. <u>Greater</u> <u>Syracuse Bd. of Realtors, Inc.</u>, 438 F. Supp. 376, 380 (N.D.N.Y. 1977) ("While overt acts need not be alleged, nor proven, in a case such as this, it is nevertheless true that a great majority of antitrust combination and conspiracy cases are presented, of necessity, by use of circumstantial evidence.") (citations omitted)).

Olde Monmouth respectfully submits that, given such overwhelming authority, its proposed amendments to the Complaint in this action would not be futile and Plaintiff should be permitted to go forward with its proposed amended complaint. This Court should grant Plaintiff's instant application under Rule 15.

## CONCLUSION

For the foregoing reasons, Plaintiff Olde Monmouth respectfully submits that its motion to amend the Complaint in this action should be granted in all respects.

Dated:   June 10, 2007
         New York, New York

Respectfully submitted,

_____/s/_____
By: Edward R. Gallion (EG-5755)
    Steven Spielvogel (SS-2295)

**GALLION & SPIELVOGEL**
1225 Franklin Avenue
Suite 325
Garden City, New York 11530
516.512.8899

*Attorneys for Plaintiff*
*Olde Monmouth Stock Transfer Co., Inc.*

15