**EXHIBIT B**

address two separate instances of improper activity: (1) Manipulative conduct consisting of a single event (in addition to a series of events, as the current rule contemplates) and (2) manipulation based upon the entry of orders as opposed to that based solely upon the entry of trades. The proposal would also expand the rule to address conduct by persons associated with a participant firm, in addition to the firm's partners, directors, officers and registered employees.

## II. Discussion

After careful review, the Commission finds that CHX's proposal to amend its rule relating to price manipulation is consistent with the requirements of the Act and the rules and regulations thereunder applicable to a national securities exchange[4] and, in particular, the requirements of Section 6 of the Act[5] and the rules and regulations thereunder. The Commission believes that these changes would appropriately establish that improper price manipulation could occur upon the entry of orders at successively higher or lower prices, not just upon the execution of trades at successively higher or lower prices. Additionally, the Commission believes that these changes would appropriately establish that improper price manipulation could occur with a single trade or order at a price higher or lower than the market.

## III. Conclusion

*It is therefore ordered,* pursuant to Section 19(b)(2) of the Act,[6] that the proposed rule change (SR–CHX–2007–08) be, and it hereby is, approved.

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.[7]

**Florence E. Harmon,**

*Deputy Secretary.*

[FR Doc. E7–10554 Filed 5–31–07; 8:45 am]

BILLING CODE 8010–01–P

---

[4] In approving this proposed rule change, the Commission has considered the proposed rule's impact on efficiency, competition, and capital formation. 15 U.S.C. 78c(f).

[5] 15 U.S.C. 78f.

[6] 15 U.S.C. 78s(b)(2).

[7] 17 CFR 200.30–3(a)(12).

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–55816; File No. SR–DTC–2006–16]

**Self-Regulatory Organizations; The Depository Trust Company; Notice of Filing of Proposed Rule Change Amending FAST and DRS Limited Participant Requirements for Transfer Agents**

May 25, 2007.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act"),[1] notice is hereby given that on October 12, 2006, The Depository Trust Company ("DTC") filed with the Securities and Exchange Commission ("Commission") and on March 29, 2007, and May 3, 2007, amended the proposed rule change described in Items I, II, and III below, which items have been prepared primarily by the DTC.[2] The Commission is publishing this notice to solicit comments on the proposed rule change from interested parties.

### I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

DTC proposes to amend its rules to update, standardize, and restate the requirements for the Fast Automated Securities Transfer Program ("FAST"), to delineate the responsibilities of DTC and the transfer agents with respect to the securities held by transfer agents as part of the FAST program, and to restate the requirements for transfer agents participating in the Direct Registration System ("DRS").

### II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, the DTC included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. DTC has prepared summaries, set forth in sections (A), (B), and (C) below, of the most significant aspects of these statements.[3]

---

[1] 15 U.S.C. 78s(b)(1).

[2] The exact text of the DTC's proposed rule change is set forth in its filing, which can be found at *http://www.dtc.org/impNtc/mcr/index.html#2006.*

[3] The Commission has modified portions of the text of the summaries prepared by the DTC.

*(A) Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

Prior to the establishment of the FAST program, transfers of securities to or from DTC occurred by sending securities back and forth between DTC and transfer agents. In the case of securities being deposited with DTC, DTC sent the certificates to the transfer agent for registration into the name of DTC's nominee, Cede & Co., and the transfer agent returned the reregistered certificates to DTC. In the case of securities being withdrawn from DTC, DTC sent the certificates registered in the name of Cede & Co. to the transfer agent for reregistration into the name designated by the withdrawing DTC participant, and the transfer agent returned the reregistered security to DTC for delivery to the withdrawing participant. This process exposed securities to risk of loss during transit between DTC and transfer agents and resulted in the expense of making physical deliveries of securities.

Under the FAST program, transfer agents hold FAST-eligible securities registered in the name of Cede & Co. in the form of balance certificates. As additional securities are deposited or withdrawn from DTC, transfer agents adjust the denomination of the balance certificates as appropriate and electronically confirm theses changes with DTC. Such "FAST agents" are holding in custody those securities that would otherwise be held at DTC for the benefit of DTC's participants. As such, the FAST program reduces the movement of certificates between DTC and the transfer agents and therefore reduces the costs and risks associated with the creation, movement, and storing of certificates to DTC, DTC participants, issuers, and transfer agents.[4]

The FAST program has grown substantially since first being introduced in 1975.[5] Recent changes in the rules of the major securities exchanges are expected to further accelerate this growth.[6] Those exchange

---

[4] For a description of DTC's current rules relating to FAST, see Securities Exchange Act Release Nos. 34–13342 (March 8, 1977) [File No. SR–DTC–76–3]; 34–14997 (July 26, 1978) [File No. SR–DTC–78–11]; 34–21401 (October 16, 1984) [File No. SR–DTC–84–8]; 34–31941 (March 3, 1993) [SR–DTC–92–15]; and 34–46956 (December 6, 2002) [File No. SR–DTC–2002–15].

[5] DTC introduced the FAST program in 1975 with 400 issues and 10 agents. Currently, there are over 930,000 issues and approximately 90 agents in FAST.

[6] Securities Exchange Act Release Nos. 54289 (August 8, 2006), 71 FR 47278 (August 16, 2006) [File No. SR–NYSE–2006–29]; 54290 (August 8,

Federal Register / Vol. 72, No. 105 / Friday, June 1, 2007 / Notices    30649

rules require, as a listing prerequisite, that issues be eligible for processing through DRS. Since becoming a FAST agent is a criterion for transfer agents' eligibility for participation in DRS, DTC anticipates significant growth in the FAST program as DRS becomes more widely used or eventually becomes mandatory.

DRS allows investors to hold a security as the registered owner in electronic form on the books of the issuer rather than holding indirectly through a financial intermediary that holds the security in "street name" or holding through the use of a certificate. Through the use of FAST, DRS also allows for the transfer of a DRS position from the books of the issuer to a financial intermediary through the facilities of DTC.[7]

(1) Proposed Amendments to DTC's FAST Requirements

Despite the FAST program's robust past growth and expected future growth, the transfer agent eligibility requirements for FAST have not substantially changed since the implementation of FAST and do not: (i) Take into account the increased volume and value of securities processed by the transfer agents, (ii) reflect the current availability of improved technology and other safeguards which would enhance the safety and soundness of securities held at the transfer agents in the name of Cede & Co. on behalf of DTC participants, and (iii) require the use of standardized audit reports to certify transfer agents' processes and controls.

In light of the FAST program's growth, DTC has reexamined the requirements of the FAST program with a view toward ensuring that the assets in the custody of transfer agents, which ultimately belong to DTC's participants and their customers, are adequately

protected. As more fully described below, DTC has identified aspects of the FAST program's requirements that need updating, including: (i) Insurance requirements (to take into account transaction volumes and values conducted by transfer agents), (ii) safekeeping requirements (to clarify and to enhance security and fire protection standards and to take into consideration technological advances that allow for economical security improvements), (iii) regulatory and bookkeeping requirements (to ensure compliance with applicable laws and regulations and utilize standardized audit reports certifying as to transfer agents' processes and controls), and (iv) fees (to clarify transfer agents' responsibilities). Taking these aspects into account, DTC proposes to amend and to restate the requirements for FAST transfer agents as set forth below in order to improve the soundness and safety of securities assets held for DTC on behalf of DTC participants and to provide better defined requirements as more issuers and transfer agents participate in the immobilization and dematerialization of securities. As a result, DTC proposes the following minimum requirements for transfer agents participating in the FAST program.

1. Transfer agent must be registered with the Commission, except where the transfer agent's participation in the FAST program is limited to acting solely for municipal issues (transfer agents must provide DTC with evidence of such), and follow all applicable rules under the Exchange Act, as well as all other applicable federal and state laws, rules, and regulations, applicable to transfer agents, including OFAC regulations. In addition, the transfer agent must provide DTC with a written notification as soon as practicable, if its regulator has taken any regulatory action against the transfer agent with respect to an alleged violation of such laws, rules, or regulations. Any regulatory reports or information furnished to DTC, including that required pursuant to this Item No. 1 and Item No. 14 below, shall be held as confidential by DTC and will not be used for any purpose other than to manage the risk of DTC and its Participants. All other information furnished to DTC pursuant to the requirements set forth herein shall be held in at least the same degree of confidence as may be required by law or the rules and regulations of the Commission.[8]

2. The transfer agent must execute and fulfill the requirements of the appropriate form of Balance Certificate Agreement with DTC (in the appropriate form).[9]

3. When applying for FAST status, the transfer agent must include the name and CUSIP of a minimum of one issue it wishes to add to the FAST program. Issues eligible for the FAST program must be: (i) Traded on an exchange registered under Section 6 of the Exchange Act, (ii) municipal securities, or (iii) transferred by a transfer agent that already acts as a FAST transfer agent for at least five (5) other issues that are traded on an exchange. The above provisions notwithstanding, DTC reserves the complete discretion to include or exclude any particular issue in the FAST program.

4. The transfer agent must sign and fulfill requirements of the Operational Criteria for the FAST Transfer Agent Processing [10] and must comply with all applicable provisions of DTC's Operational Arrangements ("OA") [11] as amended from time to time.

5. In order to provide for the operational proficiency and efficiency of the program, on being accepted as a FAST transfer agent, the transfer agent must complete DTC's training on FAST functionality.

6. In order to protect against a risk of loss, the transfer agent must carry and provide evidence of a minimum of the following Bankers Blanket Bond Standard Form 24, or similar coverage, in proportion to transaction volume the agent processes, as follows:

a. $10 million with a deductible of no more than $50,000 for a transfer agent with 25,000 or fewer transfer transactions per year as reported to the Commission.

b. $25 million with a deductible of no more than $100,000 for a transfer agent with over 25,000 transfer transactions per year as reported to the Commission.

2006), 71 FR 47262 (August 16, 2006) [File No. SR–Amex–2006–40]; 54288 (August 8, 2006), 71 FR 47276 [August 16, 2006) [File No. SR–NASDAQ–2006–08]; 54410 (September 7, 2006), 71 FR 54316 (September 14, 2006) [File No. SR–NYSE Arca–2006–31]; 55482 (March 15, 2007), 72 FR 13544 (March 22, 2007) [File No. SR–Phlx–2006–69]; 55481 (March 15, 2007), 72 FR 13544 (March 22, 2007) [File No. SR–CHX–2006–33]; and 55480 (March 15, 2007), 72 FR 13544 (March 22, 2007) [File No. SR–BSE–2006–46].

[7] For a description of DTC's rules relating to DRS, see Securities Exchange Act Release Nos. 34–37931 (November 7, 1996) [File No. SR–DTC–96–15]; 34–41862 (September 10, 1999) [File No. SR–DTC–99–16]; 34–42366 (January 28, 2000) [File No. SR–DTC–00–01]; 34–42704 (April 19, 2000) [File No. SR–DTC–00–04]; 34–43586 (November 17, 2000) [File No. SR–DTC–00–09]; 34–44969 (August 14, 2001) [File No. SR–DTC–2001–07]; 34–45232 (January 3, 2002) [SR–DTC–2001–18]; 34–45430 (February 11, 2002) [File No. SR–DTC–2002–01]; and 34–48885 (December 5, 2003) [File No. SR–DTC–2002–17]; 34–52422 (September 14, 2005) [File No. SR–DTC–2005–11].

[8] The Commission notes that records relating to Commission examinations are highly confidential and are included herein only as one part of DTC's

risk management system. Review of Commission examination records is a supplement to DTC's risk management program.

[9] DTC currently maintains three forms of the Balance Certificate Agreement: one for transfer agents, one for issuers acting as their own agent, and one for parties using a processing agent. DTC is consolidating these forms into a single form, as attached as Exhibit 2 to its filing.

[10] The Operational Criteria for the FAST Transfer Agent Processing is attached as Exhibit 2(b) to DTC's filing.

[11] For more information relating to DTC's OA, see Securities Exchange Act Release Nos. 34–45994 (May 29, 2002), 67 FR 39452 [File No. SR–DTC–2002–02]; 34–24818 (August 19, 1987), 52 FR 31833 [File No. DTC–87–10]; 34–25948 (July 27, 1988), 53 FR 29294 [File No. DTC–88–13]; 34–30625 (April 23, 1992), 57 FR 18534 [File No. DTC–92–06]; 34–35649 (April 26, 1995), 60 FR 21576 [File No. DTC–94–19]; and 34–39894 (April 21, 1998), 63 FR 23310 [File No. DTC–97–23].

In addition, the transfer agent must: (i) Carry a minimum of $1 million in Errors and Omissions insurance with a deductible of no more than $25,000 and must show evidence of the policy on applying for FAST status and (ii) have a "mail" insurance policy of $10 million or more and show evidence of the policy on applying for FAST status. The Errors and Omissions coverage shall identify DTC as an additional insured. The "mail" coverage shall identify DTC as a loss payee but shall not be invalidated by any act or neglect of the insured.

In the event that a transfer agent can demonstrate that its existing coverage and/or capitalization would provide similar protections to DTC as the requirements set forth herein, it may apply to DTC for a waiver of the deductibles set out above. DTC shall have sole discretion as to whether or not to grant any such waiver.

7. In order to facilitate consistent protection against losses relating to securities in a transfer agent's control, the transfer agent must notify DTC as soon as practicable of notice of any actual lapse in insurance coverage or change in business practices, such as increasing volumes or other business changes that would result in the transfer agent requiring additional insurance coverage as outlined above. Such notice shall be delivered to:

DTC, Inventory Management—1SL, 55 Water Street, New York, New York 10041.

And with a copy to:

DTC, General Counsel's Office, 55 Water Street—22nd Floor, New York, New York 10041.

8. The transfer agent must provide proof to DTC of the new or substitute policy for all required insurance at least 30 days prior to any expiration or change in insurance limits of a previous insurance policy.

9. To further facilitate Item No. 7 above, the terms of the insurance coverage noted above must state that the insurance provider must notify DTC within five (5) days of notice of any threatened or actual lapse in the above coverage requirements.

10. The transfer agent must establish and maintain electronic communications with DTC to balance FAST positions on a daily schedule.

11. The transfer agent must provide on an annual basis to DTC within ten (10) business days of filing with the SEC an accountant's report (pursuant to Exchange Act Rule 17Ad–13, Annual Study of Evaluation of Internal Accounting Controls) attesting to the soundness of controls to safeguard securities assets and reliability and integrity of computer systems, including confidentiality of customer account or other non-public information. To the extent that a transfer agent obtains a SAS–70 audit report, the transfer agent shall provide DTC with a copy of the report within ten (10) business days of the transfer agent's receipt of the report. In addition, the transfer agent must provide, within the same time frame as required for such report, a report from an external certified public accountant:

a. Certifying that the transfer agent is complying with all of DTC's requirements relating to FAST agents including and without limitation to (a) those listed herein, (b) the Operational Criteria for FAST Transfer Agent Processing, (c) the Operational Agreement and (d) the Balance Certificate Agreement;

b. certifying that the agent meets any SEC requirements for business continuity planning; and

c. containing an SSAE 10 report (or the equivalent) attesting to the soundness of the transfer agent's control in meeting the requirements set forth herein; however an SSAE–10 need not be provided if the transfer agent has provided a SAS–70 audit report in accordance with the provisions of this paragraph 11.

12. FAST agents must safeguard all the securities assets as stated under SEC Rule 17Ad–12 and with at least the following additional DTC requirements:

a. Maintaining a theft and fireproof safe of no less than 350 pounds with a minimum anti-theft test rating of UL 687 and a minimum fire rating of UL 72;

b. maintaining a theft and fire central monitoring alarm system protecting the entire premises;

c. all certificates will be maintained in a secure location, accessible only by authorized personnel; and

d. certificates shall not be left unattended unless stored in a secure location or a "locked" safe.

13. Personnel with access to the safe and the codes for the centralized monitoring system will be governed by the Commission's Rule 17f–2, which includes but is not limited to rules for fingerprinting staff that physically handle certificates.

14. The transfer agent upon application must provide DTC with a copy of the two most recent Commission examination reports as well as any follow-up correspondence. In addition, the transfer agent on an ongoing basis must provide DTC with notice of any alleged material deficiencies documented by the Commission within 5 business days of the transfer agent being notified of such material deficiencies.

15. During regular business hours upon advance notice, DTC reserves the right to visit and inspect to the extent pertaining to their position the transfer agent's facilities, books, and records but is not obligated to do so.

16. The transfer agent may only charge DTC fees (*i.e.*, deposit, withdrawal, "rush," cancellation, registration, or other transfer fees) that: (a) Are contractually agreed to by the issuer, (b) are the same for all other registered holders, and (c) do not violate the regulations of the relevant securities exchange relating to transfer agent fees.

17. Existing FAST agents shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements, including the submission to DTC of a signed Balance Certificate Agreement, signed Operational Criteria, and all supporting documentation referenced herein. If an agent is not compliant with these requirements upon the expiration of such period, DTC shall have the right, using sole discretion, to terminate or to continue the agent's FAST status.

18. An agent acting on behalf of a transfer agent or an issuer acting on its own behalf shall have the same rights and responsibilities under these requirements as if it were the transfer agent.

**(2) Proposed Amended and Restated Eligibility Requirements for DRS Limited Participants**

DTC is proposing the following restatement of the eligibility requirements for DRS Limited Participants [12] and the DRS eligibility requirements for DRS issues to promote consistency with the FAST program requirements as well as to further ensure the soundness of the DRS system as follows. In order to be eligible to be a DRS Limited Participant, a transfer agent must:

1. Participate in the FAST program and abide by the rules outlined in the FAST requirements above.

2. Execute a DTC Limited Participant Account agreement.

3. Deliver transaction advices directly to investors relating to DRS Withdrawal-by-Transfer requests and provide DTC with a file (in a format and using functionality as specified by DTC from time to time) containing the transaction advice delivery date.

---

[12] DRS Limited Participants are transfer agents that participate in DRS through DTC. They are bound to certain provisions of the DTC rules. Securities Exchange Act Release No. 34–37931 (November 7, 1996) [File No. SR–DTC–96–15].

4. Complete DTC's program on training of DRS and Profile Modification System ("Profile") functionality.

5. Participate in the Profile surety or insurance programs to initiate Profile transactions.[13]

6. Implement program changes related to DTC systems modifications within a reasonable time upon receiving notification from DTC of such modifications.

7. Implement program changes to support and expand DRS processing capabilities as agreed to by the DRS Ad Hoc Committee.

8. Mail a transfer advice or statement to shareholders within three (3) business days of each DRS account transaction that affects the shareholder's position or more often as required by the Commission's regulations.

Existing DRS Limited Participants shall have a period of six (6) months from the date of the Commission's approval of this rule filing within which they must comply with these requirements. If an agent is not compliant with these requirements upon the expiration of such period, DTC shall have the right using its sole discretion to terminate or to continue the agent's status as a DRS Limited Participant.

(3) Eligibility Requirements for DRS Issues

In order for an issue to be eligible as a DRS issue, the following eligibility requirements must be met:

1. The issue must be transferred by a transfer agent accepted as a DTC DRS Limited Participant.

2. The issue must be included in the FAST program and may not be added to DRS if "out of balance" positions exist.

3. The issuer or transfer agent for the issue must mail a transaction advice or statement within three (3) business days of each DRS account transaction that affects the shareholders position or more often as required by Commission regulations.

(4) DTC's Proposed Standard of Care Obligations With Respect to FAST

DTC is proposing to establish a clearer demarcation of responsibility and liability with respect to the FAST program. Historically, DTC believes the Commission has left to user-governed clearing agencies the question of how to allocate losses associated with, among other things, clearing agency functions.[14] In conjunction with its approval of these standards, the Commission noted that while it had "called on registered clearing agencies to undertake, by rule, to deliver all fully-paid securities in their control to, or as directed by, the participant for whom the securities are held," given that registered clearing agencies had demonstrated a high level of responsibility in safeguarding securities and funds, a standard of care based on a strict standard of liability was not required either with respect to failures of the clearing agency or a sub-custodian. DTC notes that securities in the FAST program are held by a transfer agent and are not within the immediate custody and control of DTC. As such, after a transfer agent is accepted to the FAST program, DTC is proposing the addition of a clarifying provision to Rule 6 to state that DTC will not be liable for the acts or omissions of FAST Agents or other third parties, unless caused directly by DTC's gross negligence, willful misconduct, or violation of federal securities laws for which there is a private right of action. In addition, DTC proposes that under no circumstance shall DTC be liable for selecting or accepting any third party as an agent of DTC, including a transfer agent participating in the FAST Program.

DTC believes the proposed rule change is consistent with the requirements of Section 17A of the Act, as amended,[15] and the rules and regulations thereunder because it improves standards relating to the eligibility of transfer agents and issues for its FAST and DRS programs. As such, it assures the safeguarding of securities and funds which are in the custody or control of DTC or for which it is responsible.

(B) Self-Regulatory Organization's Statement on Burden on Competition

DTC does not believe that the proposed rule change will impose any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act. The Commission requests comments as to whether the rule change will effect competition.

(C) Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received From Members, Participants, or Others

DTC has neither solicited nor received written comments on the proposed rule change.

III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

Within thirty-five days of the date of publication of this notice in the Federal Register or within such longer period: (i) As the Commission may designate up to ninety days of such date if it finds such longer period to be appropriate and publishes its reasons for so finding or (ii) as to which the self-regulatory organization consents, the Commission will:

(A) By order approve such proposed rule change or

(B) institute proceedings to determine whether the proposed rule change should be disapproved.

IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

Electronic Comments

• Use the Commission's Internet comment form (*http://www.sec.gov/rules/sro.shtml*) or

• Send an e-mail to *rule-comments@sec.gov*. Please include File Number SR–DTC–2006–16 in the subject line.

Paper Comments

• Send paper comments in triplicate to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE., Washington, DC 20549–1090.

All submissions should refer to File Number SR–DTC–2006–16. This file number should be included on the subject line if e-mail is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's Internet Web site (*http://www.sec.gov/rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written

---

[13] In DRS, instructions to transfer shares are sent by a broker-dealer that is a DTC participant or by a transfer agent that is a DRS Limited Participant through Profile. Profile provides screen based indemnification against false instructions from the party submitting the instructions through DRS. The indemnity is supported by either a surety bond or an insurance policy.

[14] Securities Exchange Act Release Nos. 34–20221 (September 23, 1983) and 34–22940 (February 24, 1986). In this regard, DTC adopted a uniform standard with respect to certain of its procedures, or Service Guides, such that DTC is not liable for any loss incurred by a participant other than one caused directly by gross negligence or willful misconduct on the part of DTC. See Securities Exchange Act Release No. 34–44719 (August 17, 2001) [File No. SR–DTC–2001–01].

[15] 15 U.S.C. 78q–s.

communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Section, 100 F Street, NE., Washington, DC 20549. Copies of such filings also will be available for inspection and copying at the principal office of the DTC and on the DTC's Web site, *http://www.dtcc.com.* All comments received will be posted without change; the Commission does not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly. All submissions should refer to File Number SR–DTC–2006–16 and should be submitted on or before June 22, 2007.

For the Commission by the Division of Market Regulation, pursuant to delegated authority.[16]

**Florence E. Harmon,**

*Deputy Secretary.*

[FR Doc. E7–10553 Filed 5–31–07; 8:45 am]

BILLING CODE 8010–01–P

---

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–55815; File No. SR–NASDAQ–2007–027]

### Self-Regulatory Organizations; The NASDAQ Stock Market LLC; Notice of Filing of Proposed Rule Change and Amendment No. 1 Thereto To Amend the Generic Listing Standards for Portfolio Depositary Receipts and Index Fund Shares

May 25, 2007.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule 19b–4 thereunder,[2] notice is hereby given that on March 23, 2007, The NASDAQ Stock Market LLC ("Nasdaq" or "Exchange") filed with the Securities and Exchange Commission ("Commission") the proposed rule change as described in Items I, II, and III below, which Items have been substantially prepared by Nasdaq. On May 8, 2007, Nasdaq filed Amendment No. 1 to the proposed rule change.[3] The Commission is publishing this notice to solicit comments on the proposed rule change, as amended, from interested persons and is simultaneously

approving the proposal on an accelerated basis.

### I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

Nasdaq proposes to amend its existing rules to eliminate the requirement that the calculation methodology for the index underlying an exchange traded fund ("ETF") be a methodology specified by rule and to adopt generic listing standards for a series of ETFs based solely or in part on fixed income indexes or securities. The text of the proposed rule change is available at Nasdaq, the Commission's Public Reference Room, and *http://nasdaq.complinet.com.*

### II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, Nasdaq included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. Nasdaq has prepared summaries, set forth in Sections A, B, and C below, of the most significant aspects of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

1. Purpose

Rule 19b–4(e) under the Act[4] provides that the listing and trading of a new derivative securities product by a self-regulatory organization shall not be deemed a proposed rule change, pursuant to paragraph (c)(1) of Rule 19b–4,[5] if the Commission has approved, pursuant to Section 19(b) of the Act,[6] the self-regulatory organization's trading rules, procedures and listing standards for the product class that would include the new derivatives securities product, and the self-regulatory organization has a surveillance program for the product class.[7] Nasdaq has adopted generic listing standards to satisfy this rule for the listing and trading of portfolio depositary receipts ("PDRs")[8] and index fund shares ("IFSs")[9]

(collectively, exchange traded funds or "ETFs"), among others. The proposed rule change will eliminate from these generic listing standards the requirement that the calculation methodology for the index underlying an ETF be a methodology specified by rule. In addition, the proposed rule change will establish generic listing standards, trading rules, and procedures, including surveillance, to permit the listing and trading pursuant to Rule 19b–4(e) under the Act of ETFs based solely on fixed income indexes ("Fixed Income Indexes") or on a combination of equity and fixed income indexes ("Combination Indexes").

Index Methodology Change

Nasdaq rules currently permit Nasdaq to list an ETF without filing a proposed rule change if the ETF meets certain requirements.[10] Among those requirements is the requirement in Rules 4420(i)(3)(B) and 4420(j)(3)(B) that the index be calculated based on the market capitalization, modified market capitalization, price, equal-dollar or modified equal-dollar weighting or a methodology weighting components of the index based on any, some or all of the following: Sales, cash flow, book value and dividends. Nasdaq recently made a filing with the Commission to expand this list to accommodate new products and now proposes to remove this requirement to provide greater flexibility to index providers and ETF issuers to develop indexes that meet the investment objectives of investors. Further, removing these requirements will reduce the time required for products based on innovative index calculation methodologies to be brought to market. The indexes underlying ETFs would continue to be required to meet the other requirements of the generic listing standards. For example, domestic indexes require, without limitation, that the most heavily weighted component stock of an index not exceed 30% of the weight of the index, and the five most heavily weighted component stocks of an index not exceed 65% of the weight of the index,[11] and that an index include a minimum of 13 component stocks.[12] Similarly, the generic listing standards for international or global indexes require, without limitation, that the most heavily weighted component stock of an index not exceed 25% of the weight of the index, and the five most heavily weighted component stocks of

---

[16] 17 CFR 200.30–3(a)(12).

[1] 15 U.S.C. 78s(b)(1).

[2] 17 CFR 240.19b–4.

[3] Amendment No. 1 replaces and supersedes the original filing in its entirety.

[4] 17 CFR 240.19b–4(e).

[5] 17 CFR 240.19b–4(c)(1).

[6] 15 U.S.C. 78s(b).

[7] *See* Securities Exchange Act Release No. 40761 (December 8, 1998), 63 FR 70952 (December 22, 1998).

[8] Nasdaq Rule 4420(i).

[9] Nasdaq Rule 4420(j).

[10] Nasdaq Rules 4420(i) and 4420(j).

[11] Nasdaq Rules 4420(i)(3)(A)(i)c. and 4420(j)(3)(A)(i)c.

[12] Nasdaq Rules 4420(i)(3)(A)(i)d. and 4420(j)(3)(A)(i)d.